IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

|  |  |
|---|---|
| PEDRO RAMIREZ, JR., Individually and on Behalf of All Others Similarly Situated,<br><br>　　　　　　　Plaintiff,<br><br>　　　　v.<br><br>EXXON MOBIL CORPORATION, REX W. TILLERSON, ANDREW P. SWIGER, JEFFREY J. WOODBURY, and DAVID S. ROSENTHAL,<br><br>　　　　　　　Defendants. | Case No. 3:16-cv-3111-K<br><br>**ORAL ARGUMENT REQUESTED** |

**DEFENDANTS' MOTION TO STRIKE THE DECLARATION OF CHARLOTTE J. WRIGHT, PH.D., THE AFFIRMATION OF JOHN OLESKE, AND THE ALLEGATIONS OF THE CONSOLIDATED COMPLAINT THAT RELY ON THEM, WITH BRIEF IN SUPPORT**

Theodore V. Wells, Jr. (*pro hac vice*)
Daniel J. Kramer (*pro hac vice*)
Daniel J. Toal (*pro hac vice*)
Gregory F. Laufer (*pro hac vice*)
Jonathan H. Hurwitz (*pro hac vice*)
PAUL, WEISS, RIFKIND,
　WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Tel: (212) 373-3000
Fax: (212) 757-3990

Nina Cortell
Daniel H. Gold
HAYNES AND BOONE, LLP
2323 Victory Avenue, Suite 700
Dallas, TX 75219
Tel: (214) 651-5000
Fax: (214) 651-5940
*Counsel for Exxon Mobil Corporation, Andrew P. Swiger, Jeffrey J. Woodbury, and David S. Rosenthal*

D. Patrick Long
SQUIRE PATTON BOGGS
2000 McKinney Ave., Suite 1700
Dallas, TX 75201
Tel: (214) 758-1505
Fax: (214) 758-1550

*Counsel for Rex W. Tillerson*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ........................................................................................1

SUMMARY OF RELEVANT FACTS ...............................................................................2

    A.    The Wright Declaration ............................................................................2

    B.    The Oleske Affirmation .............................................................................4

ARGUMENT ......................................................................................................................5

    A.    The Wright Declaration and Dr. Wright's Opinions and Conclusions Are Inappropriate to Consider on a Motion to Dismiss, Violate Rule 10(c), and Cannot Satisfy Plaintiff's Pleading Burden under the PSLRA....................6

    B.    The Oleske Affirmation Cannot Be Considered on a Motion to Dismiss Because Mr. Oleske Has No Relevant Personal Knowledge and His Affirmation Offers Impermissible Legal Conclusions and Unadjudicated Allegations. ...................................................................................................9

CONCLUSION..................................................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*ABC Arbitrage Plaintiffs Group* v. *Tchuruk*,
    291 F.3d 336 (5th Cir. 2002) ..................................................................................9

*Cambridge Toxicology Grp., Inc.* v. *Exnicios*,
    495 F.3d 169 (5th Cir. 2007) ..................................................................................5

*City of Royal Oak Ret. Sys.* v. *Juniper Networks, Inc.*,
    No. 5:11-cv-04003-LHK, 2013 WL 2156358 (N.D. Cal. May 17, 2013) .....................7

*DeMarco* v. *DepoTech Corp.*,
    149 F. Supp. 2d 1212 (S.D. Cal. 2001)................................................................6, 7, 8

*DIJO, Inc.* v. *Hilton Hotels Corp.*,
    351 F.3d 679 (5th Cir. 2003) ..................................................................................9

*Fin. Acquisition Partners, LP* v. *Blackwell*,
    440 F.3d 278 (5th Cir. 2006) ..............................................................................1, 6, 7

*Fin. Acquisition Partners, LP* v. *Blackwell*,
    No. 3:02-cv-1586-K, 2004 WL 2203253 (N.D. Tex. Sept. 29, 2004)...................1, 6, 8

*Fisher* v. *Halliburton*,
    No. H-05-1731, 2009 WL 5216949 (S.D. Tex. Dec. 21, 2009) ...................................8

*Gibson* v. *Liberty Mut. Grp.*,
    No. 3:02-cv-2306-D, 2004, 2004 WL 942280 (N.D. Tex. Apr. 30, 2004)..................10

*Howard* v. *Securitas Sec. Servs., USA Inc.*,
    No. 08 C 2746, 2009 WL 140126 (N.D. Ill. Jan. 20, 2009) .........................................9

*In re Key Energy Services, Inc. Securities Litigation*,
    166 F. Supp. 3d 822 ..............................................................................................9

*Ledford* v. *Rapid-American Corp.*,
    No. 86-cv-9116 (JFK), 1988 WL 3428 (S.D.N.Y. Jan. 8, 1988)................................11

*Lipsky* v. *Commonwealth United Corp.*,
    551 F.2d 887 (2d Cir. 1976)...................................................................................10

*In re Merrill Lynch & Co., Inc. Research Reports Securities Litigation*,
    218 F.R.D. 76 (S.D.N.Y. 2003) ..............................................................................11

*Montgomery* v. *Buege*,
    No. 08-cv-385 WBS KJM, 2009 WL 1034518 (E.D. Cal. Apr.16, 2009)....................6

*United States* v. *Ritchie,*
    342 F.3d 903 (9th Cir. 2003) ........................................................................8

*Stuart* v. *Cadbury Adams USA, LLC,*
    No. 09-cv-6296-AHM, 2010 WL 1407303 (C.D. Cal. Apr. 5, 2010), *aff'd*, 458
    F. App'x 689 (9th Cir. 2011) ........................................................................8

**STATUTES**

15 U.S.C. § 78u-4, *et seq* ................................................................................1

**OTHER AUTHORITIES**

Fed. R. Evid. 602 ..........................................................................................9

Fed. R. Evid. 702 ..........................................................................................7

Fed. R. Civ. P. 12(f) ................................................................................1, 5, 10

Fed. R. Civ. P. 9(b) ........................................................................................7

Fed. R. Civ. P. 10(c) ................................................................................ 7, 8

iii

Exxon Mobil Corporation ("ExxonMobil" or the "Company"), Rex W. Tillerson, Andrew P. Swiger, Jeffrey J. Woodbury, and David S. Rosenthal respectfully submit this motion to strike (i) the Declaration of Dr. Charlotte J. Wright (the "Wright Declaration"); (ii) the Affirmation of John Oleske (the "Oleske Affirmation"), both of which are attached as exhibits to the Consolidated Complaint (the "Complaint"); and (iii) the allegations of the Complaint that rely upon or incorporate the allegations, opinions, and conclusions contained in the Wright Declaration and the Oleske Affirmation, pursuant to Rule 12(f) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. § 78u-4, *et seq*.

## PRELIMINARY STATEMENT

The Wright Declaration and the Oleske Affirmation are improper under well-settled law in this Circuit and elsewhere. The Court should strike both documents, and the allegations in the Complaint that rely on or incorporate them.

This Court has already held that securities fraud plaintiffs may not rely on expert opinions to bolster their complaints. *Fin. Acquisition Partners, LP* v. *Blackwell*, No. 3:02-cv-1586-K, 2004 WL 2203253, at *4 (N.D. Tex. Sept. 29, 2004) (granting motion to dismiss complaint and motion to strike expert declaration). And the Fifth Circuit agreed, explaining that "opinions cannot substitute for facts under the PSLRA." *Fin. Acquisition Partners, LP* v. *Blackwell*, 440 F.3d 278, 286 (5th Cir. 2006).

Yet substituting opinion for fact is precisely what plaintiff seeks to do in this case. Dr. Wright, plaintiff's purported accounting expert, was retained solely for this litigation. She has no personal knowledge of the facts at issue, and her declaration consists entirely of opinions about ExxonMobil's accounting determinations, opinions that she reached without reviewing its

accounting or other records. Under *Blackwell*, it is improper to consider Dr. Wright's declaration at this stage of the proceedings.

The Court also should strike the Oleske Affirmation because Mr. Oleske—a litigation attorney at the office of the New York Attorney General ("NYAG")—is not, and does not purport to be, a witness with personal knowledge of any relevant facts. His affirmation is, instead, an advocacy document. It consists of little more than conclusory allegations based upon the NYAG's incomplete and politically motivated investigation—an investigation that has resulted in no adjudication of any kind.

Finally, the Court should strike both the Wright Declaration and the Oleske Affirmation for the additional reason that both witnesses improperly offer legal conclusions and unsupported speculation about the defendants' state of mind.

## SUMMARY OF RELEVANT FACTS

### A.    The Wright Declaration

Dr. Charlotte J. Wright purports to be an expert in oil and gas accounting. Her declaration offers opinions about ExxonMobil's financial and accounting disclosures, and the Complaint incorporates those opinions wholesale. (*See* Wright Decl. ¶¶ 1, 6–12.) Plaintiff's counsel commissioned the Wright Declaration "solely for the purpose of court proceedings" in this case. (*Id.* ¶ 108.)

Dr. Wright's opinions are not based on her personal knowledge of ExxonMobil's accounting. She has none. Nor are her opinions based on an audit or review of ExxonMobil's financial records. She concededly did not conduct any. Her opinions are, instead, based on her own analyses and on a sample of publicly available documents that she or plaintiff's counsel selected for purposes of her declaration. For example, her conclusion that ExxonMobil's Canadian bitumen operations were operating at a loss is based entirely on her own attempted

calculations of a "break-even" price of products from that facility derived from a sample of publicly available documents. (*See id.* ¶¶ 40–54; *see also id.* ¶ 91 (stating that, while ExxonMobil "'does not view temporarily low prices or margins as a trigger event for conducting impairment tests,'" "[i]t is my opinion, however, that the Henry Hub price decline . . . was not a 'temporarily low price,' but rather 'a significant decrease in the market price'").) Her opinions also are based in large part on the unsubstantiated and inadmissible Oleske Affirmation. (*See, e.g., id.* ¶ 73 ("I have accepted as true the sworn testimony set forth in the Oleske Affirmation . . . ."); ¶ 86 & n.17 (concluding that ExxonMobil "failed to incorporate a GHG 'proxy cost' into the Company's proved reserve and/or asset impairment calculations," "based on the Oleske Affirmation's sworn testimony").)

Based on this admittedly incomplete information, Dr. Wright purports to opine that ExxonMobil's financial statements violated generally accepted accounting principles ("GAAP") and disclosure requirements imposed by the Securities and Exchange Commission ("SEC"). Specifically, she asserts that ExxonMobil violated GAAP and SEC disclosure requirements by (i) failing to disclose that as of February 24, 2016, when ExxonMobil filed its 2015 10-K, that its Canadian bitumen operations had been operating at a loss for three months (*id.* ¶ 7); (ii) failing to disclose sooner than it did that proved reserves at Kearl, Alberta would not qualify as proved reserves at year-end 2016 (*id.* ¶ 8); (iii) failing to recognize an impairment charge on certain of its Rocky Mountain dry gas operations in 2015 instead of (as ExxonMobil did) in 2016 (*id.* ¶ 12); and (iv) failing to disclose that it allegedly did not incorporate greenhouse gas ("GHG") emissions costs or proxy costs of carbon into its investment and asset valuation processes or its calculations of proved reserve or asset impairments (*id.* ¶¶ 9–10).

Dr. Wright's declaration also offers legal conclusions about ExxonMobil's public statements and speculation about whether the defendants acted knowingly. (*See, e.g., id.* ¶ 56 ("This disclosure was materially misleading, in light of my analysis above . . . ."); ¶ 72(a) ("Exxon knew about the virtually certain need to de-book the Kearl project's proved reserves . . . ."); ¶ 72(d) ("Exxon[Mobil] clearly would have known at the time . . . .").)

Plaintiff incorporates or expressly relies upon Dr. Wright's Declaration throughout the Complaint, including in paragraphs 9, 17, 22, 170–180, 185–194, 282, 286, 310, 314, 317, 319, and 342–371.

### B.    The Oleske Affirmation

The NYAG filed the Oleske Affirmation in New York Supreme Court on a discovery dispute arising from its investigation. (Oleske Aff. ¶¶ 1–2.) Mr. Oleske is a Senior Enforcement Counsel to the NYAG. He concededly has no personal knowledge of any facts relevant to this case. The matters on which he has no personal knowledge include, among other things, ExxonMobil's use of proxy costs of carbon or GHG emissions costs, its internal policies, and its impairment or reserve analyses. Instead, he bases the statements in his affirmation on his involvement as a lawyer in the NYAG investigation and on frequently unidentified "evidence" that he or others at the NYAG's office have allegedly reviewed. (Oleske Aff. ¶¶ 20–21, 23–26, 29–37, 40–41, 49–52 (expressing reliance on unspecified "evidence reviewed by the [NYAG] to date," rather than personal knowledge).)

The Complaint alleges, purportedly based on the Oleske Affirmation (*see* Compl. ¶¶ 25–27; Oleske Aff. ¶¶ 73–76), that ExxonMobil knowingly caused the destruction of emails relevant to this case, including emails sent or received by Mr. Tillerson via a secondary email account. Mr. Oleske, however, has no personal knowledge of ExxonMobil's document preservation, collection, or production efforts. And plaintiff's allegation that ExxonMobil intentionally

4

destroyed Mr. Tillerson's emails is contrary to the documents that the Oleske Affirmation itself incorporates and relies on. As those documents show, ExxonMobil believed that the secondary email account was subject to a litigation hold, but later discovered that it inadvertently had not been placed on hold due to a technical issue involving the interaction between the Company's long-standing litigation hold system and the secondary email account. (*See* Oleske Aff., Ex. 8 at 1–3.) Upon discovery, ExxonMobil promptly reported this issue to the NYAG and the New York Supreme Court and undertook extensive remediation efforts. (*See, e.g.*, Oleske Aff., Ex. 8 at 1–3; *id.*, Ex. 25 at 78–79, 81–83, 90–91.)

Finally, the Oleske Affirmation, like Dr. Wright's Declaration, improperly offers legal conclusions about whether defendants made misleading misstatements or omissions and speculation about whether they acted with scienter. (*See, e.g.*, *id.* ¶ 21 ("Exxon[Mobil] represented to investors and the public that it was incorporating higher costs of GHG regulation into its business decisions than documents indicate that it actually was using, thereby potentially misleading investors and the public about the extent to which it was protecting its business from regulatory risks related to climate change."); ¶ 23 ("It appears that this discrepancy was known at Exxon[Mobil]'s highest levels.").) It offers similar legal conclusions concerning ExxonMobil's document preservation, collection, and production processes. (*Id.* ¶¶ 70–92.)

The Complaint relies heavily on the Oleske Affirmation, including in paragraphs 7, 25–27, 137–145, 147, 191–192, 243–245, 250, 254, 259, 261, 264, 284, 361, 371, 389, 399, and 404.

## ARGUMENT

Under Federal Rule of Civil Procedure 12(f), courts in the Fifth Circuit will strike documents attached to complaints where they are immaterial or otherwise impermissible and disregard portions of complaints based on such documents. *See Cambridge Toxicology Grp., Inc.*

v. *Exnicios*, 495 F.3d 169, 178 (5th Cir. 2007) (affirming order granting motion to strike, explaining such motions should be granted where a pleading contains "immaterial" matter); *Blackwell*, 440 F.3d at 285–86. The Court should do the same here.

> **A.      The Wright Declaration and Dr. Wright's Opinions and Conclusions Are Inappropriate to Consider on a Motion to Dismiss, Violate Rule 10(c), and Cannot Satisfy Plaintiff's Pleading Burden under the PSLRA.**

The Wright Declaration suffers from all of the same flaws that led this Court and others to strike expert affidavits in prior cases.

In *Blackwell*, this Court granted a motion to strike an expert's affidavit attached to a complaint. In also granting the defendants' motion to dismiss, this Court disregarded the affidavit and the allegations of the complaint that relied on it. 2004 WL 2203253, at *4. The Court noted that considering an expert affidavit on a motion to dismiss would require it "to confront a 'myriad of complex evidentiary issues not generally capable of resolution at the [pleading] stage.'" *Blackwell*, 2004 WL 2203253, at *4 (quoting *DeMarco* v. *DepoTech Corp.*, 149 F. Supp. 2d 1212, 1221 (S.D. Cal. 2001)). Thus, it reasoned, considering the expert's affidavit "would put the court in the position of essentially considering a motion for summary judgment." *Id.* (citing *DeMarco*, 149 F. Supp. 2d at 1221–22). The Fifth Circuit affirmed. *Blackwell*, 440 F.3d at 285–86.

Other courts have likewise stricken or disregarded expert affidavits created for litigation and attached to complaints. In *Montgomery* v. *Buege*, No. 08-cv-385 WBS KJM, 2009 WL 1034518, at *4 (E.D. Cal. Apr.16, 2009), for example, the court emphasized that "the practice of attaching to a complaint the kind of exhibits at issue here needlessly complicates challenges to the sufficiency of pleadings." Likewise, in *DeMarco*, the court explained that "considering an expert affidavit would so complicate the procedural posture of a motion to dismiss that it would become virtually indistinguishable from a motion for summary judgment." *DeMarco*, 149 F.

6

Supp. 2d at 1221. The court in *DeMarco* also reasoned that, to determine whether an expert's opinion comports with Rule 702 of the Federal Rules of Evidence, a court would normally hold a *Daubert* hearing to determine its admissibility, which it held would be "improper at the pleading stage of any civil case." *Id.* (citing *Daubert* v. *Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592–93 (1993)).

As the Fifth Circuit recognized in affirming this Court in *Blackwell*, an expert's opinions also cannot be considered on a motion to dismiss because "opinions cannot substitute for facts under the PSLRA." *Blackwell*, 440 F.3d at 286. Other courts have agreed. In *DeMarco*, the court reasoned that attaching an expert affidavit to a complaint "in no way relieves a plaintiff of its burden to comply with the [PSLRA] and [Rule 9(b)]." *DeMarco*, 149 F. Supp. 2d at 1221–22. And in *City of Royal Oak Ret. Sys.* v. *Juniper Networks, Inc.*, No. 5:11-cv-04003-LHK, 2013 WL 2156358, at *7 (N.D. Cal. May 17, 2013), the court declined to consider an expert declaration based, in part, on the "particularly persuasive" argument that the affidavit did not relieve plaintiff of its burden of pleading facts as required by the PSLRA and Rule 9(b).

Under these decisions, Dr. Wright's declaration should be stricken, and the declaration and the portions of the Complaint that rely upon it should be disregarded. As discussed above, Dr. Wright's opinions are not facts that satisfy plaintiff's pleading burdens under PSLRA and Rule 9(b). And determining whether her opinions satisfy Rule 702 and *Daubert* would embroil the Court in determining evidentiary issues that are not suitable for resolution on a motion to dismiss.

Courts, including this Court in *Blackwell*, have also held that an expert declaration created solely for litigation, like the Wright Declaration, is not a "written instrument" that may be annexed to a complaint under Fed. R. Civ. P. 10(c). Rule 10(c) provides that a "copy of a

written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c). A "written instrument" is a document that "evidenc[es] legal rights or duties," such as a contract, note, or other writing on which a party's action is based. *DeMarco*, 149 F. Supp. 2d at 1220 (quotations omitted); *see also United States* v. *Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("Affidavits and declarations . . . are not allowed as pleading exhibits unless they form the basis of the complaint."). An expert declaration does not meet that definition because it is "merely a piece of evidentiary matter that does not exist independently of the complaint." *DeMarco*, 149 F. Supp. 2d at 1220 (holding that an expert affidavit was not one of the classes of documents found to be a "written instrument"); *see also Blackwell*, 2004 WL 2203253, at *4 (rejecting plaintiffs' argument that an expert affidavit was properly included with the complaint under Rule 10(c)); *Stuart* v. *Cadbury Adams USA, LLC*, No. 09-cv-6296-AHM (CWx), 2010 WL 1407303, at *4 (C.D. Cal. Apr. 5, 2010) (similar), *aff'd*, 458 F. App'x 689 (9th Cir. 2011).

Finally, the Court should strike Dr. Wright's opinions as to whether defendants made materially misleading misstatements or omissions (*see, e.g.*, Wright Decl. ¶ 56) or acted with scienter (*id.* ¶¶ 72(a), (d)) because they are improper legal conclusions and are based upon speculation about the defendants' state of mind. *See, e.g.*, *Fisher* v. *Halliburton*, No. H-05-1731, 2009 WL 5216949, at *3 (S.D. Tex. Dec. 21, 2009) (striking expert affidavits that impermissibly "contain[ed] multiple legal conclusions, evaluations of the mental state of the defendants' employees, and evaluations of the credibility of the testimony of [defendants'] employees").

**B.      The Oleske Affirmation Cannot Be Considered on a Motion to Dismiss Because Mr. Oleske Has No Relevant Personal Knowledge and His Affirmation Offers Impermissible Legal Conclusions and Unadjudicated Allegations.**

The Oleske Affirmation cannot be considered on a motion to dismiss because it does not satisfy plaintiff's PSLRA pleading burden, offers impermissible legal conclusions, and contains only unadjudicated allegations.

The courts have consistently stricken affidavits or other testimony by witnesses lacking relevant personal knowledge. For example, in *ABC Arbitrage Plaintiffs Group* v. *Tchuruk*, 291 F.3d 336, 358 (5th Cir. 2002), the Fifth Circuit affirmed the dismissal of a securities fraud claim where plaintiff failed to allege that certain of the complaint's allegations were based on personal knowledge. Likewise, in *DIJO, Inc.* v. *Hilton Hotels Corp.*, 351 F.3d 679, 686 (5th Cir. 2003), the Fifth Circuit held that the trial court abused its discretion by allowing a witness "who was never employed by or directly involved in a business" to testify about its lost profits, since such witnesses are "unlikely to have the type of first-hand knowledge necessary to provide reliable forecasts of future lost profits." And in *In re Key Energy Services, Inc. Securities Litigation*, 166 F. Supp. 3d 822, 862 (S.D. Tex. 2016), the court dismissed a securities fraud claim based on "mere[] opinions that [defendant's] internal controls were inadequate" rather than personal knowledge or communication with defendants.

These holdings are consistent with the fundamental principle enunciated in Rule 602 of the Federal Rules of Evidence that "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602; *see also Howard* v. *Securitas Sec. Servs., USA Inc.*, No. 08 C 2746, 2009 WL 140126, at *4 (N.D. Ill. Jan. 20, 2009) (granting motion to strike statements in declarations purporting to disclose the knowledge or motivation of a company or its managers where

9

declarants did not demonstrate that they had "the requisite personal knowledge to comment on such matters").

Under these principles, the Court should strike the Oleske Affirmation. Mr. Oleske was not involved in the preparation of ExxonMobil's public disclosures, financial statements, or internal project forecasting. He has no personal knowledge about the truth of the Company's public statements or any of the matters at issue in this action. (*See, e.g.*, Oleske Aff. ¶¶ 20–21, 23–26, 29–37, 40–41, 49–52 (basing beliefs on views of unspecified "evidence"); ¶ 53 ("[NYAG]'s window into Exxon[Mobil]'s impairment-related decisions is limited" because it did not review "documents from Exxon[Mobil] itself").)

The Oleske Affirmation also impermissibly offers legal conclusions, including whether defendants made materially misleading misstatements or omissions, and speculation about whether defendants acted with scienter. (*See, e.g.*, Oleske Aff. ¶ 21 (accusing ExxonMobil of misleading investors and the public); ¶ 23 (purporting to assert what was "known at Exxon[Mobil's] highest levels").) Courts routinely strike affidavits from witnesses purporting to offer legal conclusions. *See, e.g.*, *Gibson* v. *Liberty Mut. Grp.*, No. 3:02-cv-2306-D, 2004 WL 942280, at *3 (N.D. Tex. Apr. 30, 2004) (striking affidavit from lay witness that contained inadmissible legal conclusion), *aff'd*, 129 F. App'x 94 (5th Cir. 2005).

Finally, the Court should strike the Oleske Affirmation for the additional reason that it merely restates allegations made by the NYAG that have never been adjudicated. Courts have held that the repetition of allegations from an unadjudicated investigation is immaterial under Rule 12(f). As the Second Circuit emphasized in *Lipsky* v. *Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976), "neither a complaint nor references to a complaint which results in a consent judgment may properly be cited in the pleadings" because it is "not the result of an

10

actual adjudication of any of the issues." Thus, for example, in *In re Merrill Lynch & Co., Inc. Research Reports Securities Litigation*, 218 F.R.D. 76, 78–79 (S.D.N.Y. 2003), the court struck allegations from a complaint that referenced or relied on complaints filed in other actions that were not adjudicated on the merits. Similarly, in *Ledford* v. *Rapid-American Corp.*, No. 86-cv-9116 (JFK), 1988 WL 3428, at *1–2 (S.D.N.Y. Jan. 8, 1988), the court struck references to an attorney general's report following a preliminary investigation in a case that was never adjudicated on the merits. Here, the NYAG's investigation has not resulted in an adjudication of any wrongdoing.

## CONCLUSION

For the foregoing reasons, defendants respectfully request that the Court strike the Wright Declaration, the Oleske Affirmation, and the paragraphs of the Complaint that cite or rely on them.

Dated: September 26, 2017

Respectfully submitted,


/s/ Daniel J. Kramer
Theodore V. Wells, Jr. (*pro hac vice*)
Daniel J. Kramer (*pro hac vice*)
Daniel J. Toal (*pro hac vice*)
Gregory F. Laufer (*pro hac vice*)
Jonathan H. Hurwitz (*pro hac vice*)
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY  10019-6064
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
twells@paulweiss.com
dkramer@paulweiss.com
dtoal@paulweiss.com
glaufer@paulweiss.com
jhurwitz@paulweiss.com


/s/ Nina Cortell
Nina Cortell
Texas State Bar No. 04844500
Daniel H. Gold
Texas State Bar No. 24053230
HAYNES AND BOONE, LLP
2323 Victory Avenue, Suite 700
Dallas, TX 75219
Telephone: (214) 651-5000
Facsimile: (214) 651-5940
nina.cortell@haynesboone.com
daniel.gold@haynesboone.com


*Counsel for Exxon Mobil Corporation,*
*Andrew P. Swiger, Jeffrey J. Woodbury,*
*and David S. Rosenthal*

/s/ D. Patrick Long
D. Patrick Long
Texas State Bar No. 12515500
SQUIRE PATTON BOGGS
2000 McKinney Ave., Suite 1700
Dallas, TX 75201
Telephone: (214) 758-1505
Facsimile: (214) 758-1550
patrick.long@squirepb.com

*Counsel for Rex W. Tillerson*

12

**CERTIFICATE OF CONFERENCE**

I hereby certify that a good-faith effort was made to resolve the disputed issues that are the subject of the foregoing motion before filing the motion. On September 20 and 25, 2017, counsel for defendants (Jonathan H. Hurwitz) and lead plaintiff (Nathan R. Lindell) conferred by telephone regarding the issues presented in this motion, but no agreement could be reached.

*/s/ Daniel J. Kramer*
Daniel J. Kramer

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing Motion has been served by electronic CM/ECF filing, on this 26th day of September, 2017.

*/s/ Daniel J. Kramer*
Daniel J. Kramer