IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

|  |  |
|---|---|
| PEDRO RAMIREZ, JR., Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>        v.<br><br>EXXON MOBIL CORPORATION, REX W. TILLERSON, ANDREW P. SWIGER, JEFFREY J. WOODBURY, and DAVID S. ROSENTHAL,<br><br>        Defendants. | Case No. 3:16-cv-3111-K<br><br>**ORAL ARGUMENT REQUESTED** |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS THE
CONSOLIDATED COMPLAINT**

Theodore V. Wells, Jr. (*pro hac vice*)
Daniel J. Kramer (*pro hac vice*)
Daniel J. Toal (*pro hac vice*)
Gregory F. Laufer (*pro hac vice*)
Jonathan H. Hurwitz (*pro hac vice*)
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Tel: (212) 373-3000
Fax: (212) 757-3990

Nina Cortell
Daniel H. Gold
HAYNES AND BOONE, LLP
2323 Victory Avenue, Suite 700
Dallas, TX 75219
Tel: (214) 651-5000
Fax: (214) 651-5940

*Counsel for Exxon Mobil Corporation, Andrew
P. Swiger, Jeffrey J. Woodbury, and David S.
Rosenthal*

D. Patrick Long
Brian M. Gillett
SQUIRE PATTON BOGGS
2000 McKinney Ave., Suite 1700
Dallas, TX 75201
Tel: (214) 758-1505
Fax: (214) 758-1550

*Counsel for Rex W. Tillerson*

TABLE OF CONTENTS

**Page**

Table of Authorities ................................................................................................................. ii

Preliminary Statement ............................................................................................................. 1

Argument .................................................................................................................................. 2

I.    The Complaint Does Not Allege a Materially False or Misleading Statement or
      Actionable Omission. ..................................................................................................... 2

      A.    Plaintiff's Arguments about ExxonMobil's Use of Proxy Costs of Carbon
            and GHG Costs Rest on Mischaracterizing ExxonMobil's Disclosures. ............... 2

      B.    Plaintiff's Disagreement with ExxonMobil's Impairment Opinions Does
            Not Support a Claim about ExxonMobil's Rocky Mountain Dry Gas
            Operations. ............................................................................................................... 3

      C.    Plaintiff's Allegations about ExxonMobil's Proved Reserves Disclosures
            Fail to State a Claim Because Its Forward-Looking Disclosures Were
            Accompanied by Adequate Warnings and Complied with SEC
            Regulations. ............................................................................................................. 5

      D.    ExxonMobil Had No Duty to Disclose an Alleged Three-Month Loss at its
            Canadian Bitumen Operations. ................................................................................ 6

II.   The Complaint Does Not Adequately Plead Scienter. ................................................... 7

III.  The Complaint Does Not Adequately Plead Loss Causation. ...................................... 10

IV.   Plaintiff's Section 20(a) Claims Should Be Dismissed. .............................................. 10

V.    The Complaint Should Be Dismissed with Prejudice. ................................................. 10

Conclusion .............................................................................................................................. 10

i

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re CPI Card Grp. Inc. Sec. Litig.*,
No. 16-cv-4531 (LAK), 2017 WL 4941597 (S.D.N.Y. Oct. 30, 2017)....................................7

*Firefighters Pension & Relief Fund of the City of New Orleans* v. *Bulmahn*,
53 F. Supp. 3d 882 (E.D. La. 2014)....................................................................................5

*Goldstein* v. *MCI WorldCom*,
340 F.3d 238 (5th Cir. 2003) .............................................................................................10

*Ind. Elec. Workers' Pension Tr. Fund IBEW* v. *Shaw Grp., Inc.*,
537 F.3d 527 (5th Cir. 2008) ..............................................................................................7

*Kapps* v. *Torch Offshore, Inc.*,
379 F.3d 207 (5th Cir. 2004) ...........................................................................................6, 7

*Lormand* v. *US Unwired, Inc.*
565 F.3d 228 (5th Cir. 2009) .............................................................................................10

*Maguire Fin., LP* v. *PowerSecure Int'l, Inc.*,
__ F.3d __, 2017 WL 5710816 (4th Cir. Nov. 15, 2017) ..................................................8

*Marcus* v. *J.C. Penney Co., Inc.*,
No. 6:13-cv-736-MHS-KNM, 2015 WL 5766870 (E.D. Tex. Sept. 29, 2015)..................5

*In re Michaels Stores, Inc. Sec. Litig.*,
No. 3:03-cv-0246, 2004 WL 2851782 (N.D. Tex. Dec. 10, 2004)....................................6

*In re MicroStrategy, Inc. Sec. Litig.*,
115 F. Supp. 2d 620 (E.D. Va. 2000) .................................................................................8

*Nathenson* v. *Zonangen Inc.*,
267 F.3d 400 (5th Cir. 2001) ..............................................................................................9

*Neiman* v. *Bulmahn*,
854 F.3d 741 (5th Cir. 2017) ..............................................................................................9

*Omnicare, Inc.* v. *Laborers Dist. Council Constr. Indus. Pension Fund*,
135 S. Ct. 1318 (2015). (*See* Def. Br. 12–13.)................................................................4

*Panther Partners Inc.* v. *Ikanos Commc'ns, Inc.*,
681 F.3d 114 (2d Cir. 2012).................................................................................................7

*In re Questcor Sec. Litig.*,
No. 12-cv-01623 DMG, 2013 WL 5486762 (C.D. Cal. Oct. 1, 2013) ...............................9

*Schuh* v. *HCA Holdings, Inc.*,
    947 F. Supp. 2d 882 (M.D. Tenn. 2013).......................................................................7

*Tellabs, Inc.* v. *Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007).......................................................................................................7

*In re Triton Energy Ltd. Sec. Litig.*,
    No. 5:98-cv-256, 2001 WL 872019 (E.D. Tex. Mar. 30, 2001)..................................4

## PRELIMINARY STATEMENT

Plaintiff's effort to establish a fraudulent misstatement by defendants rests largely on inventing disclosures that ExxonMobil never made, and then arguing that its own invented disclosures were false or misleading. Plaintiff attributes to ExxonMobil the statement that proxy costs of carbon are the "singular tool" it used to address the risks of climate regulations, and that it used "the same proxy costs" for all purposes. But ExxonMobil never said that. On the contrary, ExxonMobil disclosed that it used multiple tools to account for these risks, and cautioned investors that, for competitive reasons, it did *not* detail the economic bases for its investment process. And the internal documents plaintiff cites show only that, consistent with its disclosures, ExxonMobil used different tools for different purposes, not, as plaintiff claims, that it fraudulently used different numbers than those it claimed to use. Plaintiff's reliance on mischaracterizing ExxonMobil's disclosures and documents shows that it cannot plead a claim.

In addition, in response to defendants' showing that the Complaint does not adequately plead scienter, plaintiff repeats the insufficient allegations that the Individual Defendants, because of their corporate positions, should have known that the Company's disclosures were inaccurate. In particular, plaintiff claims that ExxonMobil's management knew that ExxonMobil used different analytical tools for different purposes. But that is not fraud. And plaintiff fails to rebut defendants' showing that any inference of scienter is undermined by ExxonMobil's billion-dollar stock repurchases, the absence of insider stock sales, and its extensive risk disclosures.

Finally, plaintiff asserts that its burden of pleading loss causation is "minimal." But "minimal" is not "non-existent." Because the alleged disclosures did not call into question the truth of any alleged prior misstatement, they are not corrective disclosures as a matter of law, and plaintiff therefore does not sufficiently plead loss causation.

**ARGUMENT**

I.     **The Complaint Does Not Allege a Materially False or Misleading Statement or Actionable Omission.**

    A.     **Plaintiff's Arguments about ExxonMobil's Use of Proxy Costs of Carbon and GHG Costs Rest on Mischaracterizing ExxonMobil's Disclosures.**

As shown in defendants' motion, plaintiff's claim that ExxonMobil misrepresented the way it accounted for the potential impact of climate policies on its business rests on confusing two distinct analytical tools: (i) proxy costs of carbon, which estimate the impact of potential climate policies on energy demand; and (ii) greenhouse gas ("GHG") costs, which reflect costs that climate-related policies might impose directly on ExxonMobil for its own greenhouse gas emissions in developing or operating particular projects. (Def. Br. 4–6, 10–12.) ExxonMobil's disclosures show that there was no fraud or second set of books—as plaintiff alleges—but only the unremarkable fact that the Company used different analytical tools for different purposes.

In response, plaintiff claims that ExxonMobil's disclosures were misleading because they purportedly stated that the Company uses only a "singular tool" of proxy costs of carbon to account for climate regulations, and that it uses "the same proxy costs" for all purposes. (Pl. Br. 1–2, 4; *see id.* 9, 12.) But ExxonMobil said no such thing. Instead, it stated that it uses proxy costs of carbon to "reflect all types of actions and policies that governments may take" relating to carbon emissions, and that these proxy costs are "embedded in [its] *Outlook for Energy*." (Def. App. 26.) And it separately explained that the Company required business segments to use, "where appropriate, GHG costs" in the specific context of "seeking funding for capital investments." (*Id.* 26–27.) No reasonable reader would conclude from these statements that the Company used only a single analytical metric for all purposes, or that the brief, high-level discussion in those disclosures provided a comprehensive description of the Company's planning processes. And any doubt on this score is dispelled by the Company's express caution that it did

2

not disclose the "economic bases upon which [it] evaluate[s] investments due to competitive considerations." (Def. Br. 6, citing Def. App. 25.)

Defendants' argument does not rest on a "fact-based counter-narrative" or create a fact dispute that cannot be resolved on this motion. (Pl. Br. 1, 11.) Rather, the Complaint should be dismissed because it is based on a disclosure that ExxonMobil never made regarding use of a "singular tool," and it attacks that straw man by confusing proxy costs and GHG costs. Plaintiff cannot avoid dismissal by mischaracterizing the actual disclosures. (Def. Br. 11 (citing cases).)

Plaintiff's reliance on ExxonMobil documents annexed to the Oleske Affirmation to establish an alleged misstatement also is misplaced. (Pl. Br. 9–13.) Those documents show only that ExxonMobil—entirely appropriately—used different metrics for different purposes; conservatively addressed the potential risk of climate-change regulations on both demand (proxy costs) and costs (GHG costs); and discussed internally whether, as a policy matter, it should continue to follow the same approach. (Def. Br. 11.) Plaintiff's conclusory assertion that if these metrics were distinct there would be "no reason for Exxon[Mobil] employees to compare the two metrics" is a non sequitur, since as a matter of common sense different metrics can be compared for a host of purposes.[1] (Pl. Br. 12 (emphasis omitted).) ExxonMobil disclosed its use of both proxy costs and GHG costs and nowhere suggested that it used only one metric for all purposes.

**B.      Plaintiff's Disagreement with ExxonMobil's Impairment Opinions Does Not Support a Claim About ExxonMobil's Rocky Mountain Dry Gas Operations.**

Plaintiff's allegation that defendants committed fraud by not recognizing an impairment on ExxonMobil's gas assets in 2015 fails to state a claim because it rests on mere disagreement with ExxonMobil's opinions and does not satisfy the stringent standards for pleading securities

---

[1]   This is particularly true where, as here, both metrics seek to assess the implications of climate policies: one on the demand for oil and natural gas, the other on the costs of oil and gas production.

fraud based on statements of opinions under *Omnicare, Inc.* v. *Laborers District Council Construction Industry Pension Fund*, 135 S. Ct. 1318 (2015). (*See* Def. Br. 12–13.)

Plaintiff's argument that *Omnicare* does not apply because the Complaint purportedly alleges violations of GAAP is incorrect. Plaintiff relies on lower court opinions predating *Omnicare*. (Pl. Br. 15, citing *Barrie* v. *Intervoice-Brite, Inc.*, 397 F.3d 249 (5th Cir. 2005) & *In re Triton Energy Ltd. Sec. Litig.*, No. 5:98-cv-256, 2001 WL 872019 (E.D. Tex. Mar. 30, 2001).) In any event, those cases hold only that well-pled allegations of accounting improprieties may be sufficient to allege a misstatement, not that invoking GAAP excuses a plaintiff from satisfying *Omnicare*'s pleading requirements for disagreements with statements of opinion.

Plaintiff's effort to show that the Complaint satisfies *Omnicare* similarly falls far short. The Complaint's criticism of ExxonMobil's statement that its 2015 impairment assessment showed no trigger event is based solely on the opinion of plaintiff's expert about the "key impairment-related indicators for the [Rocky Mountain dry gas] Assets." (Pl. Br. 6–7, 15–16.) *Omnicare* does not permit a plaintiff to state a claim of fraud based on a Company's opinion statement merely because plaintiff's expert disagrees. (*See* Def. Br. 14.)

Likewise, plaintiff argues that ExxonMobil's cash-flow testing was inaccurate based on (i) its expert's impermissible (and inapt) opinions that ExxonMobil should have incorporated proxy costs of carbon into the analysis in the manner that plaintiff's expert contends is accurate, and (ii) the actions of ExxonMobil's competitors with respect to their own assets. (Pl. Br. 13–14, 16–17.) But, as discussed above, the Complaint alleges no facts suggesting that ExxonMobil failed to incorporate its proxy costs of carbon into its price outlooks, and thus into the cash flow analysis that underlies any impairment assessment. (Def. Br. 7.) Further, decisions by ExxonMobil's competitors to recognize impairments of different assets, purchased at different

4

times for different prices, do not show that ExxonMobil's impairment conclusions about its own assets were fraudulent. (*See id.* 14–15 (citing cases).)

Plaintiff also argues that the Company's recognition of an impairment in 2016 shows that it should have done so a year earlier, on the theory that energy prices rose during that year. (Pl. Br. 13.) But the Company expressly disclosed that it did not view "temporarily low prices or margins" as a basis for recognizing impairments. (Def. Br. 6–7.) And it further disclosed that the reason for recognizing an impairment in 2016 was due to, among other things, a reduction in its long-term internal price outlooks at that time, not a short-term price increase. (*Id.* 7.)

> ### C. Plaintiff's Allegations About ExxonMobil's Proved Reserves Disclosures Fail to State a Claim Because Its Forward-Looking Disclosures Were Accompanied by Adequate Warnings and Complied with SEC Regulations.

Plaintiff's contention that ExxonMobil's proved reserves disclosures were misleading fails to state a claim because ExxonMobil was not required to update those reserves during mid-year 2016 and its warnings about the potential for future de-bookings are protected by the safe harbor for forward-looking statements and the bespeaks caution doctrine. (*Id.* 15–16.)

Plaintiff does not address defendants' showing that ExxonMobil was only obligated to disclose proved reserves at the end of each fiscal year. Nor does plaintiff address *Firefighters Pension & Relief Fund of the City of New Orleans* v. *Bulmahn*, 53 F. Supp. 3d 882, 907 (E.D. La. 2014), in which the court rejected the contention, similar to plaintiff's here, that an energy company's proved reserves disclosures were misleading because they were not updated midyear after the discovery of facts showing that de-booking was probable. (Def. Br. 15.) Plaintiff's reliance on *Marcus* v. *J.C. Penney Co., Inc.*, No. 6:13-cv-736-MHS-KNM, 2015 WL 5766870, at *3 (E.D. Tex. Sept. 29, 2015), in an effort to avoid the safe harbor and bespeaks caution doctrine, is misplaced because that case stands only for the unremarkable proposition that general risk disclosures may be insufficient where specific risks have materialized. Here,

ExxonMobil did not provide boilerplate cautions about the possibility that proved reserves would be de-booked, but specifically and unequivocally warned that, unless prices rose, approximately 3.6 billion barrels of bitumen in its Canadian operations and 1 billion oil-equivalent barrels in other North American operations "will not qualify as proved reserves." (Def. Br. 15.) And *In re Michaels Stores, Inc. Securities Litigation*, No. 3:03-cv-0246, 2004 WL 2851782, at *4 (N.D. Tex. Dec. 10, 2004), which plaintiff cites, holds only that technical compliance with GAAP does not defeat a securities claim if the complaint otherwise alleges an actionable false statement. Here, plaintiff does not adequately plead either a false statement or a violation of the SEC standards governing proved reserves disclosures. (Def. Br. 15.)

Finally, ExxonMobil properly used existing carbon regulations and historical prices to estimate proved reserves, and plaintiff ignores that its proposed use of projected hypothetical proxy costs would violate binding SEC regulations. (*See id.* 12.)

### D.      ExxonMobil Had No Duty to Disclose an Alleged Three-Month Loss at its Canadian Bitumen Operations.

Plaintiff's argument that ExxonMobil was required to disclose an alleged three-month loss at its Canadian bitumen operations is directly contrary to the Fifth Circuit's opinion in *Kapps* v. *Torch Offshore, Inc.*, 379 F.3d 207 (5th Cir. 2004), which rejected the claim that a prospectus was somehow misleading merely because it did not disclose a five-month price decline for an incomplete fiscal period. (*See* Def. Br. 17.) Plaintiff tries to distinguish *Kapps* on the ground that the allegedly omitted information would have been apparent from public sources. (Pl. Br. 19.) But the Fifth Circuit explained that its holding was based on the company "correctly stat[ing]" that its contract prices increased by 133% over a two-year period and "not predict[ing] future return rates or suggest[ing] that the 1993 rate was expected to continue." *Kapps*, 379 F.3d at 220–21. Here, plaintiff does not dispute that ExxonMobil "correctly stated" the results of its

6

Canadian operations. Nor does plaintiff cite anything in ExxonMobil's disclosures predicting that those results would continue. Under *Kapps*, there is thus no actionable misstatement.

Plaintiff's claim also fails because an alleged three-month loss is not a "trend" required to be disclosed. (*See* Def. Br. 17.) The cases plaintiff cites are inapposite because none of them addressed an alleged operating loss for an incomplete fiscal period. *See Panther Partners Inc.* v. *Ikanos Commc'ns, Inc.*, 681 F.3d 114, 120 (2d Cir. 2012) (significant defect rate in defendant's products); *In re CPI Card Grp. Inc. Sec. Litig.*, No. 16-cv-4531 (LAK), 2017 WL 4941597, at *4 (S.D.N.Y. Oct. 30, 2017) (pre-IPO overstocking of chip cards); *Schuh* v. *HCA Holdings, Inc.*, 947 F. Supp. 2d 882, 892 (M.D. Tenn. 2013) (decline in Medicaid revenue per admission).

## II.    The Complaint Does Not Adequately Plead Scienter.

Plaintiff fails to rebut defendants' showing that the Complaint does not allege the required particularized facts supporting a strong inference of scienter. (Def. Br. 18–23.)

*First*, plaintiff quotes its conclusory allegations (including allegations that do not even involve any of the Individual Defendants), without explaining how they establish a strong inference of scienter. (Pl. Br. 21–22.) These allegations impermissibly seek an inference of scienter based on defendants' positions with ExxonMobil. Plaintiff's reference to a statement in an email that Mr. Tillerson "has seemed happy with the difference" between proxy costs of carbon and GHG costs (*id.* 21 (emphasis omitted)) similarly does not establish scienter, because that difference is wholly consistent with the Company's disclosures. That statement surely does not satisfy the standard in *Tellabs, Inc.* v. *Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007), that the inference of scienter be "at least as compelling" as any opposing inference.

Plaintiff's argument that its pleading burden is satisfied by alleging that the Individual Defendants should have known of allegedly misleading statements is inconsistent with Fifth Circuit case law. *See Ind. Elec. Workers' Pension Tr. Fund IBEW* v. *Shaw Grp., Inc.*, 537 F.3d

7

527, 534–35 (5th Cir. 2008) (explaining that mere failure to follow GAAP is insufficient to plead scienter, because those allegations do not rule out the alternative inference that the defendants were negligent in believing the statements to be true). As the Fourth Circuit recently held in affirming dismissal of a securities fraud claim for failure to plead scienter:

> [S]cienter and knowledge with respect to misrepresentation are distinct components of the requisite analytical framework. To conflate the two, as [plaintiff] would have us do, would read the scienter element out of the analysis in contravention of the PSLRA's exacting pleading standard . . . . [Plaintiff] alleges facts that permit an inference that [defendant] knew his statement was false, and then asks us to *infer from that inference* that [defendant] acted with scienter. We decline to do so because stacking inference upon inference in this manner violates the statute's mandate that the strong inference of scienter be supported by facts, not other inferences.

*Maguire Fin., LP* v. *PowerSecure Int'l, Inc.*, __ F.3d __, 2017 WL 5710816, at \*4–5 (4th Cir. Nov. 15, 2017) (emphasis in original). Here, too, the Complaint does not sufficiently plead that the challenged statements about the Company's valuation opinions and descriptions of its forecasting analyses were made with fraudulent intent.

*Second*, plaintiff contends that defendants were motivated to commit fraud to reduce the cost of a planned debt offering by retaining ExxonMobil's AAA Standard & Poor's credit rating. (Pl. Br. 23–24 & n.28.) But this is the type of commonplace motive that does not support an inference of scienter. (Def. Br. 19.) Plaintiff points to no factual allegations that a ratings downgrade would have increased ExxonMobil's borrowing costs, particularly where its debt had already been placed on credit watch with negative implications before the offering commenced. (*Id.*) And, unlike the lone case plaintiff cites, *In re MicroStrategy, Inc. Securities Litigation*, 115 F. Supp. 2d 620 (E.D. Va. 2000), there is no allegation here that, absent the alleged misstatements, the debt offering would have been impossible. *See id.* at 647–48.

*Third*, plaintiff's argument that Mr. Tillerson's purported statement that "[w]e don't do write-downs" demonstrates a mindset that ExxonMobil "was not constrained by the same

8

accounting rules" as its peers (Pl. Br. 24) ignores the full text of the alleged statement, as well as ExxonMobil's warnings about potential impairments, its recognition of a significant impairment as of 2016, and its routine disclosures about the process it used to estimate impairments. (Def. Br. 21–22.) The statement cannot reasonably be read to say that ExxonMobil would not recognize impairments when required, or that it felt free to disregard accounting rules. Instead, the statement on its face merely communicates "the message to our organization" that ExxonMobil would properly hold its executives accountable for managing projects profitably based on their actual costs and will "not . . . bail you out by writing it down." (¶ 90.)

*Finally*, any inference of scienter is negated by the Company's billion-dollar stock repurchases during the relevant period, the absence of any alleged insider stock sales, and the Company's extensive risk disclosures. (Def. Br. 22–23.) The cases on which plaintiff relies are inapposite. In *In re Questcor Securities Litigation*, No. 12-cv-01623 DMG (FMOx), 2013 WL 5486762, at *18 (C.D. Cal. Oct. 1, 2013), the court concluded that a company's repurchase *after* the proposed class period ended did not negate an inference of scienter. *Id.* Here, all of ExxonMobil's repurchases are alleged to have occurred *during* the proposed class period. (Def. Br. 22–23.) The two out-of-Circuit cases plaintiff cites hold only that the absence of alleged stock sales is not dispositive (Pl. Br. 24 n.29), and they do not overcome the law in this Circuit that the absence of insider stock sales "undermines" an inference of scienter. *Nathenson* v. *Zonangen Inc.*, 267 F.3d 400, 421 (5th Cir. 2001). Finally, plaintiff's argument that ExxonMobil's risk disclosures do not negate scienter because they were allegedly misleading (Pl. Br. 24) was rejected in *Neiman* v. *Bulmahn*, 854 F.3d 741 (5th Cir. 2017), where the Fifth Circuit held that disclosures of a company's worsening liquidity negated an inference of scienter despite allegations that the disclosures misrepresented that company's liquidity. *Id.* at 750.

**III.    The Complaint Does Not Adequately Plead Loss Causation.**

Plaintiff argues that its burden of pleading loss causation is "minimal," and that this burden is satisfied by alleged disclosures of "the truth regarding defendants' fraudulent conduct and the value of Exxon's reserves." (Pl. Br. 25.) But the Complaint alleges only reports of government investigations, not fraud, and reports of disappointing financial results and impairments, none of which calls into question any prior representations. Thus, as a matter of law, none of these reports constitutes a corrective disclosure sufficient to plead loss causation. (Def. Br. 23–24.) Contrary to plaintiff's assertion that loss causation cannot be addressed on a motion to dismiss, the Fifth Circuit has affirmed dismissal of a securities fraud claim in relevant part because alleged disclosures, which were unrelated to the allegedly false statements, "fail[ed] to plead loss causation." *Lormand* v. *US Unwired, Inc.* 565 F.3d 228, 260 (5th Cir. 2009).

**IV.    Plaintiff's Section 20(a) Claims Should Be Dismissed.**

Plaintiff does not dispute that the absence of a primary violation by ExxonMobil, as shown above, is fatal to Count II against the Individual Defendants. (Pl. Br. 8 n.8.)

**V.    The Complaint Should Be Dismissed With Prejudice.**

Plaintiff has not suggested any other facts that could cure the Complaint's defects. Leave to amend should be denied where, as here, plaintiffs do not show "how they would replead" if given the opportunity. *Goldstein* v. *MCI WorldCom*, 340 F.3d 238, 254–55 (5th Cir. 2003) (affirming denial of request to amend); Def. Br. 24–25.

## CONCLUSION

The Complaint falls far short of discharging plaintiff's pleading burden, and plaintiff offers no suggestion of how it would cure the Complaint's numerous fatal defects. Plaintiff's claims therefore should be dismissed with prejudice.

Dated: December 21, 2017

Respectfully submitted,


/s/ Daniel J. Kramer
Theodore V. Wells, Jr. (*pro hac vice*)
Daniel J. Kramer (*pro hac vice*)
Daniel J. Toal (*pro hac vice*)
Gregory F. Laufer (*pro hac vice*)
Jonathan H. Hurwitz (*pro hac vice*)
PAUL, WEISS, RIFKIND,
   WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY  10019-6064
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
twells@paulweiss.com
dkramer@paulweiss.com
dtoal@paulweiss.com
glaufer@paulweiss.com
jhurwitz@paulweiss.com


/s/ Nina Cortell
Nina Cortell
Texas State Bar No. 04844500
Daniel H. Gold
Texas State Bar No. 24053230
HAYNES AND BOONE, LLP
2323 Victory Avenue, Suite 700
Dallas, TX 75219
Telephone: (214) 651-5000
Facsimile: (214) 651-5940
nina.cortell@haynesboone.com
daniel.gold@haynesboone.com


*Counsel for Exxon Mobil Corporation,*
*Andrew P. Swiger, Jeffrey J. Woodbury,*
*and David S. Rosenthal*

/s/ D. Patrick Long
D. Patrick Long
Texas State Bar No. 12515500
Brian M. Gillett
Texas State Bar No. 24069785
SQUIRE PATTON BOGGS
2000 McKinney Ave., Suite 1700
Dallas, TX 75201
Telephone: (214) 758-1505
Facsimile: (214) 758-1550
patrick.long@squirepb.com
brian.gillett@squirepb.com

*Counsel for Rex W. Tillerson*

11

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing document has

been served by electronic CM/ECF filing, on this 21st day of December, 2017.


*/s/ Daniel J. Kramer*

Daniel J. Kramer