IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

|  |  |
|---|---|
| PEDRO RAMIREZ, JR., Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>EXXON MOBIL CORPORATION, REX W. TILLERSON, ANDREW P. SWIGER, JEFFREY J. WOODBURY, and DAVID S. ROSENTHAL,<br><br>Defendants. | Case No. 3:16-cv-3111-K<br><br>**ORAL ARGUMENT REQUESTED** |

**DEFENDANTS' MOTION FOR RECONSIDERATION OF ORDER PARTIALLY DENYING MOTION TO DISMISS OR, ALTERNATIVELY, TO CERTIFY FOR 28 U.S.C. § 1292(b) INTERLOCUTORY APPEAL AND BRIEF IN SUPPORT**

Theodore V. Wells, Jr. (*pro hac vice*)
Daniel J. Kramer (*pro hac vice*)
Daniel J. Toal (*pro hac vice*)
Jonathan H. Hurwitz (*pro hac vice*)
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Tel: (212) 373-3000
Fax: (212) 757-3990

Nina Cortell
Daniel H. Gold
HAYNES AND BOONE, LLP
2323 Victory Avenue, Suite 700
Dallas, TX 75219
Tel: (214) 651-5000
Fax: (214) 651-5940

*Counsel for Exxon Mobil Corporation, Andrew P. Swiger, Jeffrey J. Woodbury, and David S. Rosenthal*

D. Patrick Long
Brian M. Gillett
SQUIRE PATTON BOGGS
2000 McKinney Ave., Suite 1700
Dallas, TX 75201
Tel: (214) 758-1505
Fax: (214) 758-1550

*Counsel for Rex W. Tillerson*

# TABLE OF CONTENTS

**Page**

Table of Authorities ................................................................................................. ii

Preliminary Statement ............................................................................................. 1

Argument ................................................................................................................. 3

I.      The Court Should Reconsider the Order Because the Complaint Does Not Plead
        Particularized Facts Giving Rise to a Strong Inference of Scienter................................. 3

        A.      The Order Did Not Follow the PSLRA and Fifth Circuit Precedent
                Requiring that Plaintiff's Scienter Allegations Be Analyzed with Respect
                to Each Alleged Misstatement or Omission............................................. 4

        B.      The Order's Conclusion that the Complaint Adequately Pleads Scienter Is
                Contrary to Established Fifth Circuit Precedent. .................................... 5

                1.      The Order Identifies No Scienter Allegations Specific to Plaintiff's
                        Allegations about ExxonMobil's Rocky Mountain Dry Gas,
                        Canadian Bitumen, or Kearl Operations..................................... 5

                2.      The Order's Ruling that Plaintiff Adequately Alleged a Strong
                        Inference of Scienter Regarding Statements about Proxy Costs of
                        Carbon and GHG Costs Conflicts with Fifth Circuit Precedent. ........ 9

II.     Alternatively, the Court Should Certify the Order for Interlocutory Appeal Under
        28 U.S.C. § 1292(b). ................................................................................ 13

Conclusion .............................................................................................................. 17

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Abrams* v. *Baker Hughes Inc.*,
 292 F.3d 424 (5th Cir. 2002) ............................................................12

*Ainsworth* v. *Cargotec USA, Inc.*,
 No. 2:10-cv-236-KS-MTP, 2011 WL 6291812 (S.D. Miss. Dec. 15, 2011) ..........................16

*Austin* v. *Kroger Tex., L.P.*,
 864 F.3d 326 (5th Cir. 2017) ..............................................................3

*In re BP p.l.c. Sec. Litig.*,
 No. 4:10-cv-4214, 2015 WL 926199 (S.D. Tex. Mar. 4, 2015) ............................16

*Brody* v. *Zix Corp.*,
 No. 3:04-cv-1931-K, 2006 WL 2739352 (N.D. Tex. Sept. 26, 2006)....................11

*Cabral* v. *Brennan*,
 853 F.3d 763 (5th Cir. 2017) ..............................................................3

*Castellanos-Contreras* v. *Decatur Hotels, LLC*,
 622 F.3d 393 (5th Cir. 2010) ............................................................16

*Cent. Laborers' Pension Fund* v. *Integrated Elec. Servs. Inc.*,
 497 F.3d 546 (5th Cir. 2007) ............................................................11

*In re Denar Rests., LLC*,
 No. 4:09-cv-616-A, 2010 WL 150161 (N.D. Tex. Jan. 14, 2010)........................15

*Flaherty & Crumrine Preferred Income Fund, Inc.* v. *TXU Corp.*,
 565 F.3d 200 (5th Cir. 2009) ..........................................................1, 4

*Fry* v. *John Hancock Mut. Life Ins. Co.*,
 355 F. Supp. 1151 (N.D. Tex. 1973) ....................................................17

*Goldstein* v. *MCI WorldCom*,
 340 F.3d 238 (5th Cir. 2003) ........................................................8, 10

*Hadjipateras* v. *Pacifica, S.A.*,
 290 F.2d 697 (5th Cir. 1961) ........................................................14, 17

*Ind. Elec. Workers' Pension Trust Fund IBEW* v. *Shaw Grp., Inc.*,
 537 F.3d 527 (5th Cir. 2008) ....................................................7, 8, 14, 16

*Klinghoffer* v. *S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro In Amministrazione Straordinararia*,
921 F.2d 21 (2d Cir. 1990)...............................................................................................15

*Lormand* v. *US Unwired, Inc.*,
565 F.3d 228 (5th Cir. 2009) ......................................................................................12, 13

*Magruder* v. *Halliburton Co.*,
No. 3:05-cv-1156-M, 2009 WL 854656 (N.D. Tex. Mar. 31, 2009)....................................12

*Merrill Lynch, Pierce, Fenner & Smith Inc.* v. *Dabit*,
547 U.S. 71 (2006)......................................................................................................4, 14

*Neiman* v. *Bulmahn*,
854 F.3d 741 (5th Cir. 2017) .............................................................................3, 4, 10, 12

*Odle* v. *Wal-Mart Stores, Inc.*,
No. 3:11-cv-2954-O, 2013 WL 66035 (N.D. Tex. Jan. 7, 2013)........................................16

*Southland Sec. Corp.* v. *INSpire Ins. Sols. Inc.*,
365 F.3d 353 (5th Cir. 2004) .........................................................................................13

*Tellabs, Inc.* v. *Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007)........................................................................................................4

*Thompson* v. *Shaw Group, Inc.*,
No. 04-cv-1685, 2006 WL 2038025 (E.D. La. July 18, 2006) .............................................14

*Total Benefit Servs., Inc.* v. *Grp. Ins. Admin., Inc.*,
No. 92-cv-2386, 1993 WL 98675 (E.D. La. Mar. 25, 1993) ...............................................15

*Town of Davie Police Pension Plan* v. *Pier 1 Imports, Inc.*,
273 F. Supp. 3d 650 (N.D. Tex. 2017) .................................................................................4

*Williams* v. *WMX Techs., Inc.*,
112 F.3d 175 (5th Cir. 1997) .................................................................................14, 15, 16

*Williams* v. *WMX Techs., Inc.*,
No. 4:95-cv-00573 (S.D. Tex. Mar. 5, 2006), Dkt. No. 77....................................................15

**STATUTES**

15 U.S.C. § 78u-4(b)(2)(A)............................................................................................1, 4

28 U.S.C. § 1292(b) ................................................................................................ passim

**OTHER AUTHORITIES**

16 Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u>
    § 3930 (3d ed. 2016) ................................................................................................15, 16, 17

Federal Rule of Civil Procedure 54(b)............................................................................................3

Defendants Exxon Mobil Corporation ("ExxonMobil" or the "Company"), Rex W. Tillerson, Andrew P. Swiger, Jeffrey J. Woodbury, and David S. Rosenthal (collectively, "Defendants") respectfully move the Court to reconsider its Memorandum Opinion and Order partially denying Defendants' motion to dismiss (the "Order," Dkt. No. 62) or, alternatively, to certify the Order for immediate interlocutory appellate review under 28 U.S.C. § 1292(b).

## PRELIMINARY STATEMENT

Defendants respectfully submit that the Court should reconsider the Order and dismiss the Complaint, because the Order evaluated Plaintiff's allegations of scienter in a manner inconsistent with the requirements of the Private Securities Litigation Reform Act of 1995 ("PSLRA") and Fifth Circuit precedent.[1]

*First*, the Order did not address whether Plaintiff's allegations were sufficient to plead scienter with respect to each category of alleged misstatements, as required by the PSLRA. Under the PSLRA, a plaintiff must plead scienter "with respect to each act or omission" on which its claims are based. *See* 15 U.S.C. § 78u-4(b)(2)(A) ("[T]he complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."); *Flaherty & Crumrine Preferred Income Fund, Inc.* v. *TXU Corp.*, 565 F.3d 200, 208 (5th Cir. 2009) (explaining that courts "must evaluate the scienter allegations pertinent to each [alleged misrepresentation or omission]"). The Order does not reflect this required analysis. **(Point I.A, below.)**

*Second*, applying the statutorily required, representation-by-representation analysis makes clear that the Complaint does not satisfy the PSLRA's requirements for pleading scienter

---

[1] Defendants respectfully disagree with the Court's Order on other grounds, but limit their motion for reconsideration to the scienter issue, which is case dispositive.

as to each Defendant.  To begin with, *none* of the scienter allegations discussed in the Order

relates specifically to Plaintiff's allegations about (i) the alleged impairment of Rocky Mountain

dry gas assets; (ii) the likelihood that proved reserves at ExxonMobil's Kearl operations would

have to be de-booked; or (iii) operating losses in its Canadian bitumen operations.  The sole

allegation of scienter cited in the Order that can arguably relate to these issues is the allegation

that Defendants were motivated to commit fraud to maintain ExxonMobil's AAA credit rating in

advance of a planned debt offering.  The Order confirmed that allegation is insufficient standing

alone to plead scienter.  The Complaint otherwise fails to plead scienter as to any of these alleged

misrepresentations.  Indeed, the more plausible inferences from the few relevant facts Plaintiff

alleges are that Defendants acted in good faith concerning determinations ExxonMobil

employees made about complex and technical GAAP and SEC disclosure requirements.  These

competing inferences of non-fraudulent intent are strengthened by the Complaint's other

allegations, especially ExxonMobil's billion-dollar stock repurchases during the Class Period

and the lack of insider trading allegations.  The PSLRA thus requires that Plaintiff's claims based

on the non-proxy-cost categories of alleged misstatements and omissions be dismissed.

The Order also should have dismissed, pursuant to directly applicable Fifth Circuit

precedent, the remaining alleged misrepresentations at issue—namely, those concerning

ExxonMobil's use of a proxy cost of carbon and GHG costs.  The Order relied principally on

allegations that two individual defendants (Tillerson and Swiger) sat on the Company's

Management Committee and, in that capacity, received briefings and engaged in discussions

about the Company's use of proxy carbon costs and GHG costs.  But Fifth Circuit law,

reaffirmed last year, holds that to plead scienter based on alleged internal reporting inconsistent

with the challenged public statements, "the complaint must have 'corroborating details regarding

the contents of allegedly contrary reports, their authors and recipients.'" *Neiman* v. *Bulmahn*, 854 F.3d 741, 748 (5th Cir. 2017) (quoting *Abrams* v. *Baker Hughes Inc.*, 292 F.3d 424, 432 (5th Cir. 2002)).  Here, the Complaint pleads no such corroborating details showing the contents of the purported briefings or discussions or demonstrating that they were inconsistent with any of the Company's public statements.  The other allegations on which the Order relied are similarly insufficient.  **(Point I.B, below.)**

Alternatively, the Court should certify the Order for interlocutory appeal, pursuant to 28 U.S.C. § 1292(b).  If the Fifth Circuit agrees with Defendants, then the parties and this Court will have avoided expending time and resources needlessly on class certification proceedings, merits discovery, and further pre-trial motion practice.  If the Fifth Circuit declines the appeal, nothing will have been lost, and this case will continue to proceed in due course.  **(Point II, below.)**

ARGUMENT

I.     **The Court Should Reconsider the Order Because the Complaint Does Not Plead Particularized Facts Giving Rise to a Strong Inference of Scienter.**

Federal Rule of Civil Procedure 54(b) provides that "any order or other decision, however designated, that adjudicates fewer than all the claims . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."  The Court has discretion to reconsider the Order "for any reason it deems sufficient."  *Austin* v. *Kroger Tex., L.P.*, 864 F.3d 326, 336 (5th Cir. 2017) (internal quotations and citation omitted).  Thus, as the Fifth Circuit has emphasized, "under Rule 54(b), 'the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law.'" *Cabral* v. *Brennan*, 853 F.3d 763, 766 n.3 (5th Cir. 2017) (quoting *Lavespere* v. *Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 185 (5th Cir. 1990).

**A.     The Order Did Not Follow the PSLRA and Fifth Circuit Precedent Requiring that Plaintiff's Scienter Allegations Be Analyzed with Respect to Each Alleged Misstatement or Omission.**

As the Order discussed, to plead a violation of Section 10(b) and Rule 10b-5, plaintiffs must allege particularized facts giving rise to a "strong inference" that each of the defendants acted with scienter that is "at least as compelling as any opposing inference" of non-fraudulent intent. Order at 29–30; *Tellabs, Inc.* v. *Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007). Recognizing that federal securities class actions present "a danger of vexatiousness different in degree and in kind from that which accompanies litigation in general," Congress enacted the PSLRA in 1995 "to curb [certain] perceived abuses" in such lawsuits. *Merrill Lynch, Pierce, Fenner & Smith Inc.* v. *Dabit*, 547 U.S. 71, 80–81 (2006). Among other things, the PSLRA "impose[d] heightened pleading requirements in actions brought pursuant to § 10(b) and Rule 10b-5." *Id.* at 81.

The PSLRA expressly requires an evaluation of whether the Complaint satisfies this pleading standard with respect to *each alleged misrepresentation or omission*. *See* 15 U.S.C. § 78u-4(b)(2)(A) (requiring scienter to be pleaded with particularity as to "each act or omission alleged to violate this chapter"). Thus, as the Fifth Circuit has emphasized, "'for each act or omission alleged to be false or misleading, plaintiffs must state with particularity facts giving rise to a strong inference that the defendant acted with the requisite state of mind.'" *Neiman*, 854 F.3d at 746 (quoting *Ind. Elec. Workers' Pension Trust Fund IBEW* v. *Shaw Grp., Inc.*, 537 F.3d 527, 533 (5th Cir. 2008)); *see also Flaherty & Crumrine Preferred Income Fund, Inc.*, 565 F.3d at 208 (requiring court to evaluate scienter allegations as to each alleged misrepresentation or omission as to each defendant); *Town of Davie Police Pension Plan* v. *Pier 1 Imports, Inc.*, 273 F. Supp. 3d 650, 660 (N.D. Tex. 2017) (holding that the PSLRA requires plaintiffs pleading

4

fraud to plead particularized facts giving rise to a strong inference that the defendant acted with the requisite state of mind "for each act or omission alleged to be false or misleading").

The Order does not apply this standard or conduct this analysis. (*See* Order at 29–42.) The portion of the Order discussing scienter analyzes Plaintiff's allegations in a vacuum without reference to each category of alleged misstatement. That approach is contrary to the PSLRA's requirement that the Order evaluate Plaintiff's allegations of scienter on a representation-by-representation basis as to each Defendant. For this reason, the Order warrants reconsideration.

### B.   The Order's Conclusion that the Complaint Adequately Pleads Scienter Is Contrary to Established Fifth Circuit Precedent.

Under the PSLRA's representation-by-representation, defendant-by-defendant standard, the Complaint does not adequately plead scienter as to any of the alleged misrepresentations at issue. None of the scienter allegations referenced in the Order pertain specifically to any of the challenged representations about ExxonMobil's Rocky Mountain dry gas operations, Canadian bitumen operations, or Kearl operations' proved reserves. And the allegations relating to its challenged representations about proxy costs and GHG costs are insufficient to establish scienter.

### 1.   The Order Identifies No Scienter Allegations Specific to Plaintiff's Allegations about ExxonMobil's Rocky Mountain Dry Gas, Canadian Bitumen, or Kearl Operations.

Virtually all of the scienter allegations discussed in the Order pertained only to Plaintiff's allegations about statements concerning ExxonMobil's use of proxy costs of carbon, and none of them relate specifically to Plaintiff's allegations about alleged impairments of ExxonMobil's Rocky Mountain dry gas assets, a purported three-month loss at its Canadian bitumen operations, or potential de-booking of proved reserves at its Kearl operations. Indeed, none of the allegations cited in the Order even purported to show any knowledge by the individual

Defendants about those matters, much less that they purportedly knew the Company's statements were false.

On the contrary, the Order's analysis of scienter relies almost exclusively on allegations pertaining only to ExxonMobil's public statements about proxy costs of carbon and GHG costs. In concluding that the Complaint adequately alleged scienter, the Order relied on the following allegations about proxy costs/GHG costs:

- Allegations that Tillerson and Swiger were members of the Company's Management Committee, which allegedly reviewed and discussed the 2014 Outlook for Energy and "received in depth information on ExxonMobil['s] proxy cost of carbon and its use in investments and business operations." (Order at 31.)

- Allegation that Rosenthal "was directly involved in drafting the [2014 Managing the Risks report ("2014 MTR report")], which [Plaintiff] alleges fraudulently stated the proxy cost used in making business and investment decisions." (*Id.* at 35.)

- Allegations concerning emails attached to the Complaint allegedly indicating that management "knew of the differing proxy costs and that Defendant Tillerson was aware of and 'happy with' the different costs." (*Id.* at 36–37.)

- Allegation that Rosenthal removed "'the impairment footnote'" from the [2014 MTR report] because "'[t]hat word gives the folks on the third floor heartburn,'" and thus "allegedly knew the publicly reported proxy costs . . . were misleading . . . ." (*Id.* at 41.)

- Allegations that Tillerson and Swiger signed SEC filings while possessing knowledge that the filings contained material misstatements or omissions regarding "proxy costs of carbon" due to their service on the Management Committee. (*Id.* at 35.)

- Allegation that Rosenthal signed SEC filings while possessing knowledge that they contained material misstatements or omissions concerning "the proxy cost used in making business and investment decisions" due to alleged knowledge from drafting the 2014 MTR report. (*Id.*)

None of these allegations supports an inference, much less a cogent and strong inference, of scienter concerning any of the other alleged misstatements at issue.

Plaintiff's allegation that Defendants were motivated to commit fraud in order to maintain ExxonMobil's AAA credit rating before completing a March 2016 public debt offering is the only scienter allegation referenced in the Order that does not relate specifically to proxy/GHG costs.  That allegation does not support the required strong inference of scienter.  As the Court recognized, this alleged motive to maintain ExxonMobil's AAA credit rating alone, at most, "creates a slight inference of scienter, but does not rise to the required 'strong inference.'" (Order at 40 (quoting *Owens* v. *Jastrow*, 789 F.3d 529, 546 (5th Cir. 2015).)

The conclusion that motive allegations may be sufficient to allege scienter "when a company is particularly motivated to maintain or improve its credit rating to receive 'crucial' funds" (Order at 32) is misplaced.  As the Order acknowledged, scienter cannot rest solely on motives universal to corporate executives.  (*Id.* (citing *Shaw Group*, 537 F.3d at 544 (rejecting allegation that executives "feared an impact on [the company's] debt covenants and a consequent downgrade of its credit rating").)  The Order reasoned, however, that, under *Shaw Group*, the Complaint here adequately pleaded scienter because it alleged that "maintaining the AAA credit rating was uniquely important to ExxonMobil in its Debt Offering and thereby paying the high-priority dividends." (*Id*. at 33.)  The Complaint, however, nowhere alleges that maintaining an AAA credit rating was critical to completing the debt offering, or that the offering could not have been completed if ExxonMobil's credit was downgraded.  Nor could Plaintiff plausibly assert such an allegation, where at the time of the challenged statements the Company was already on a negative credit watch, and an AA+ rating (one step down from AAA, and the rating that ExxonMobil currently holds) is stronger than that of every other major oil company.

The conclusion that Plaintiff's motive allegations sufficiently plead scienter is also inconsistent with controlling Fifth Circuit law.  In *Shaw Group*, 537 F.3d at 544 (cited in Order

7

at 32–33), the court held that scienter was not established on the basis of allegations that

defendants were motivated to keep the company's stock price inflated and to maintain its credit

ratings to increase the value of the company's stock in making acquisitions.  The only Fifth

Circuit case in which allegations of such a motive were held to be sufficient, *Goldstein* v. *MCI

WorldCom*, 340 F.3d 238 (5th Cir. 2003) (characterized by the court in *Shaw Group*, 537 F.3d at

544, as an "outlier"), the plaintiffs alleged that maintaining an artificial stock price was necessary

"to ensure that [a $129 billion stock-for-stock] deal was completed on the most favorable terms

possible to WorldCom," a deal that the CEO characterized as a "crucial event" for WorldCom's

future, and on which the CEO personally stood to lose tens of millions of dollars if the deal did

not go through.  *Goldstein*, 340 F.3d at 243, 250.  No similar allegations have been or could be

alleged here.

         In these circumstances, the Complaint's allegations do not establish a strong inference of

scienter with respect to alleged misstatements about ExxonMobil's Rocky Mountain dry gas,

Canadian bitumen, and Kearl operations.  On the contrary, the more plausible inference is that

Defendants acted in good faith with respect to determinations about complex and technical

GAAP and SEC disclosure requirements made by ExxonMobil personnel.  (*See* Order at 30

("The particularity requirement . . . requires the court to 'take into account plausible inferences

opposing as well as supporting a strong inference of scienter.'") (quoting *Lormand* v. *US

Unwired, Inc.*, 565 F.3d 228, 239 (5th Cir. 2009)).  Thus, for example, in light of the Court's

finding that the alleged three-month loss at the Company's Canadian bitumen operations was not

a trend requiring disclosure under Item 303 of Regulation S-K (Order at 24), the most plausible

inference is that Defendants concluded in good faith that there was no obligation to disclose such

granular information about a single investment.  These inferences are strengthened by other

allegations in the Complaint, including ExxonMobil's billion-dollar stock repurchases during the Class Period and the lack of insider trading allegations, as the Order recognized.  (*See* Order at 35–36.)

For these reasons, the Court should reconsider the Order and grant Defendants' motion to dismiss all claims as to all Defendants relating to alleged misrepresentations about ExxonMobil's Rocky Mountain dry gas, Canadian bitumen, and Kearl operations.

> **2.      The Order's Ruling that Plaintiff Adequately Alleged a Strong Inference of Scienter Regarding Statements about Proxy Costs of Carbon and GHG Costs Conflicts with Fifth Circuit Precedent.**

The ruling that a strong inference of scienter had been adequately alleged as to all Defendants (other than Woodbury) with respect to ExxonMobil's public statements about its use of proxy costs of carbon should also be reconsidered because it conflicts with Fifth Circuit precedent and the PSLRA.  In finding scienter adequately pleaded as to these purported misstatements and omissions, the Order relied on (i) Tillerson and Swiger's position on ExxonMobil's Management Committee and, with respect to Tillerson, the ExxonMobil board of directors (the "Board"); (ii) Defendants' alleged motive to maintain ExxonMobil's AAA credit rating ahead of a March 2016 public debt offering (discussed above); (iii) the fact that Tillerson, Swiger, and Rosenthal signed SEC filings; (iv) Rosenthal's involvement in drafting the 2014 MTR report and requesting the removal of a footnote—the contents of which the Complaint does not specify; and (v) internal emails among ExxonMobil employees from April 2011 stating that Rex Tillerson "seemed happy with the difference" between alleged internal and external proxy costs of carbon at that time.  (Order at 31–42.)  That scienter analysis conflicts with post-*Tellabs* Fifth Circuit precedent.

*First*, Plaintiff's allegations that Tillerson and Swiger knew ExxonMobil's public statements about its use of proxy costs of carbon were false or materially misleading because

they sat on the Management Committee or, with respect to Tillerson, the ExxonMobil Board are insufficient to establish a strong inference of scienter.  The Order reasons that Tillerson and Swiger reviewed the Company's 2014 MTR report and 2014 Outlook for Energy report and received unspecified "in-depth information on [ExxonMobil's] proxy cost of carbon and its use in investments and business operations."  (Order at 31.)

The Fifth Circuit requires that for allegations concerning internal corporate reports alone to support a strong inference of scienter, the complaint must plead facts showing that the reports were inconsistent with the Company's public statements, as well as facts showing that the reports are "connected to the speaking executive in a persuasive way."  *Neiman*, 854 F.3d at 748 (holding plaintiffs failed to plead a strong inference of scienter based on allegations that an executive "received weekly emails containing production reports" because the complaint "[did] not directly allege" that the executive read the relevant section of the reports before making his statements).  As the Fifth Circuit has repeatedly emphasized:

> An unsupported general claim about the existence of confidential corporate reports that reveal information contrary to reported accounts is insufficient to survive a motion to dismiss. Such allegations must have corroborating details regarding the contents of allegedly contrary reports, their authors and recipients.

*Goldstein*, 340 F.3d at 253–54 (quoting *Abrams*, 292 F.3d at 432) (affirming dismissal for failure to plead scienter on the ground that "plaintiffs point to no specific internal or external report available at the time of the alleged misstatements that would contradict them").

This standard is directly applicable here.  Neither the Order nor the Complaint identifies any specific briefings or discussions, much less how Tillerson and Swiger supposedly knew from those briefings or discussions that ExxonMobil's alleged proxy-cost misstatements and omissions were purportedly false or misleading.

10

*Brody* v. *Zix Corp.*, No. 3:04-cv-1931-K, 2006 WL 2739352 (N.D. Tex. Sept. 26, 2006) (Order at 32)—which was decided before *Tellabs*—is inapposite because the complaint in that case included specific allegations about the content of information available to defendants that is absent here.  In *Brody*, this Court held that the plaintiff adequately alleged an inference of scienter where the complaint alleged, "based on the testimony of confidential witnesses, that Defendants regularly received computer tracking reports from internal reporting systems which would have alerted them to the fact that their statements to analysts . . . were materially misleading." *Brody*, 2006 WL 2739352, at *7.  The complaint in that case "specifie[d] each of the three tracking systems which were used, naming the systems and what each tracked, and what the confidential sources allege Defendants knew based on these reports." *Id.*  Here, by contrast, no such specific briefings or reports are alleged.

*Second*, as discussed above, Defendants' alleged motive to maintain ExxonMobil's AAA credit rating is insufficient to plead a strong inference of scienter.  (*See* pp. 7–8, above.)

*Third*, that a defendant signed SEC filings is similarly insufficient to plead a strong inference of scienter under clear Fifth Circuit law.  *See Cent. Laborers' Pension Fund* v. *Integrated Elec. Servs. Inc.*, 497 F.3d 546, 555 (5th Cir. 2007) (holding SEC certifications did not permit an inference of scienter absent allegations that defendants had reason to know the financial statements contained material misstatements or omissions "due to the presence of glaring accounting irregularities or other red flags.") (internal quotations and citation omitted).  The Order concluded that Tillerson, Swiger, and Rosenthal's signing of SEC filings supported a "strong inference" of scienter because they knew the financial statements were materially misleading from "in-depth briefings" and discussions regarding "the proxy costs of carbon" and, as to Rosenthal, his involvement in drafting the 2014 MTR report.  (Order at 34–35.)  But, as

11

previously discussed, there are no corroborating allegations regarding the specific information

known to these defendants nor any showing that they would have read such information. *See*

*Abrams*, 292 F.3d at 432; *Neiman*, 854 F.3d at 748.

*Fourth*, for the same reasons, Rosenthal's alleged involvement in removing a footnote

regarding "impairment" from the 2014 MTR report does not give rise to a strong inference of

scienter because the Complaint does not allege that Rosenthal had an improper motive for

removing the footnote, does not allege that removing the footnote rendered the report

misleading, and does not even allege what the omitted footnote said. No inference of fraudulent

intent can be drawn from the routine act of allegedly deleting the footnote from the report.

*Fifth*, the Order's reliance on the April 2011 internal email chain suggesting that

Tillerson "seemed happy with the difference" between alleged internal and external proxy costs

of carbon is misplaced. For emails and other internal documents to plead a strong inference of

scienter, the Fifth Circuit requires that they be "contemporaneous" and show "that the defendants

had a wrongful state of mind *at the time of their representations*." *Lormand*, 565 F.3d at 254

(emphasis added) (holding a strong inference of scienter was adequately pleaded based on

internal emails from during and shortly after the class period); *see Magruder* v. *Halliburton Co.*,

No. 3:05-cv-1156-M, 2009 WL 854656, at *19 (N.D. Tex. Mar. 31, 2009) ("Because the

Complaint identifies no *contemporaneous and specific* facts that relate to [the defendant] and his

knowledge . . . this Court cannot find that the Complaint alleges facts giving rise to a strong

inference of scienter.") (emphasis added). The Complaint does not tie this email chain—which

predates the Class Period by *approximately three years*—to any contemporaneous facts about

Tillerson's specific knowledge during the relevant period, *i.e.*, at the time he allegedly made

misstatements or omissions. Moreover, the email chain recounts only a non-executive

employee's impression of his belief that Tillerson "seemed happy" with the difference, but provides no basis for that impression.

The Order's reliance on the April 2011 internal email chain is contrary to *Lormand*, which is the Fifth Circuit precedent on which the Order relied.  (Order at 37 (citing *Lormand*, 565 F.3d at 254).)  Moreover, the April 2011 email chain is unlike the emails relied on in *Lormand* because Tillerson was not a sender or recipient of any of the emails.  *Lormand*, 565 F.3d at 237, 253 (citing emails during and shortly after class period in which CEO was the author or recipient).  In addition, unlike the April 2011 chain, the emails in *Lormand* contained "admissions from the defendants themselves regarding their state of mind at the time of their representations."  *Id.* at 254.

For all these reasons, Defendants respectfully request that the Court reconsider its Order with respect to its scienter analysis concerning the alleged proxy-cost misstatements and omissions.  Because the Complaint's scienter allegations as to these alleged misstatements and omissions are deficient, the Court should dismiss Plaintiff's Section 10(b) and Rule 10b-5 claims as to ExxonMobil, Tillerson, Swiger, and Rosenthal, and Section 20(a) claims as to Tillerson, Swiger, Rosenthal, and Woodbury for failure to plead a primary violation by ExxonMobil.  *See Southland Sec. Corp.* v. *INSpire Ins. Sols. Inc.*, 365 F.3d 353, 383 (5th Cir. 2004).

## II.     Alternatively, the Court Should Certify the Order for Interlocutory Appeal Under 28 U.S.C. § 1292(b).

A district court may certify an interlocutory order for immediate appellate review if it "involves [1] a controlling question of law [2] as to which there is substantial ground for difference of opinion and . . . [3] an immediate appeal from the order may materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b).  The Fifth Circuit has emphasized that Section 1292(b) provides "a considerable flexibility," allowing a district court to guard

13

against the "waste of precious judicial time while the case grinds through to a final judgment" where there are legal issues that, if decided differently by the Court of Appeals, could avoid substantial cost for both the Court and the parties. *Hadjipateras* v. *Pacifica, S.A.*, 290 F.2d 697, 703 (5th Cir. 1961).

The Supreme Court has specifically recognized the considerable drain of resources securities class actions can have on parties and the judicial system. *See Merrill Lynch, Pierce, Fenner & Smith Inc.*, 547 U.S. at 81 (reiterating potential for abuse present in securities litigation, including "nuisance filings, targeting of deep-pocket defendants, [and] vexatious discovery requests"). The Fifth Circuit has accordingly permitted immediate appeals from the denial (or even partial denial) of motions to dismiss securities class actions. *See Shaw Group*, 537 F.3d 527; *Williams* v. *WMX Techs., Inc.*, 112 F.3d 175 (5th Cir. 1997).

In *Shaw Group*, the defendants moved the district court to certify its denial of a motion to dismiss for interlocutory review under § 1292(b), arguing there was a reasonable difference of opinion as to whether the allegations of the complaint were sufficient to, among other things, plead scienter under the heightened pleading standard applicable to securities claims. *Thompson* v. *Shaw Group, Inc.*, No. 04-cv-1685, 2006 WL 2038025, at *1 (E.D. La. July 18, 2006). Finding that "reasonable minds might disagree on the issue of whether the Plaintiffs ha[d] satisfied their pleading burden," the district court certified the order for interlocutory appeal so as to "conserve judicial resources" that would be wasted upon a potential appellate ruling in defendants' favor after "years of discovery" and "enormous expenses incurred by the parties." *Id.* The Fifth Circuit accepted the interlocutory appeal and ultimately reversed and remanded with instructions to dismiss the case. *Shaw Group*, 537 F.3d at 545.

14

Similarly, in *Williams* v. *WMX Technologies*, the district court denied a motion to dismiss that argued the plaintiffs failed to plead fraud with the required particularity.  112 F.3d at 176–177.  The court then granted a request for interlocutory appeal, recognizing that as "a potential class action securities fraud case that will involve lengthy litigation and vast amounts of discovery and expenditures," interlocutory appeal would materially advance the termination of the litigation.  *Williams* v. *WMX Techs., Inc.*, No. 4:95-cv-00573 (S.D. Tex. Mar. 5, 2006), Dkt. No. 77 at 2.  After accepting the interlocutory appeal, the Fifth Circuit reversed and remanded with instructions to dismiss the case.  *Williams*, 112 F.3d at 180.

Each of the relevant considerations weighs in favor of 1292(b) certification here so that the Fifth Circuit can address whether the Complaint adequately alleges scienter.

*First*, the issues addressed in Section I above are "controlling question[s] of law" because a contrary ruling on the scienter analysis on appeal would be dispositive of the litigation in its entirety.  *See, e.g.*, *In re Denar Rests., LLC*, No. 4:09-cv-616-A, 2010 WL 150161, at *12 (N.D. Tex. Jan. 14, 2010) (concluding issue was a controlling question of law where it would be "outcome-determinative"); *Total Benefit Servs., Inc.* v. *Grp. Ins. Admin., Inc.*, No. 92-cv-2386, 1993 WL 98675, at *2 (E.D. La. Mar. 25, 1993) (same).  "Although the resolution of an issue need not necessarily terminate an action in order to be 'controlling,' it is clear that a question of law is 'controlling' if reversal of the district court's order would terminate the action." *Klinghoffer* v. *S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro In Amministrazione Straordinararia*, 921 F.2d 21, 24 (2d Cir. 1990) (citations omitted); *see also* 16 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3930 (3d ed. 2016) ("There is no doubt that a question is 'controlling' if its incorrect disposition would require reversal of a final judgment, either for further proceedings or for a dismissal that might have

been ordered without the ensuing district-court proceedings.").  The Fifth Circuit has often

accepted for appeal decisions denying motions to dismiss in similar circumstances.  *See, e.g.*,

*Shaw Group*, 537 F.3d at 531; *Williams*, 112 F.3d at 177.

    *Second*, a "substantial ground for difference of opinion" exists because, given the Fifth

Circuit authority cited above, a reasonable jurist could reach a different result than this Court on

Defendants' motion to dismiss with respect to Plaintiff's scienter allegations.  *See Castellanos-*

*Contreras* v. *Decatur Hotels, LLC*, 622 F.3d 393, 398–399 (5th Cir. 2010) ("Suffice it to say that

this is a question about which reasonable jurists can—and, in the case of this court, do—

debate."); *Ainsworth* v. *Cargotec USA, Inc.*, No. 2:10-cv-236-KS-MTP, 2011 WL 6291812, at *4

(S.D. Miss. Dec. 15, 2011) ("Phrased differently, the Court must consider whether it is a

question about which reasonable jurists can . . . debate.") (internal quotations and citation

omitted).  As Judge O'Connor recognized in certifying a decision for interlocutory appeal, this

Court can "believe[] its previous decision [on] Defendant's motion to dismiss was correct [and]

still find[] that there is substantial ground for difference of opinion."  *Odle* v. *Wal-Mart Stores,*

*Inc.*, No. 3:11-cv-2954-O, 2013 WL 66035, at *3 (N.D. Tex. Jan. 7, 2013); *see also In re BP*

*p.l.c. Sec. Litig.*, No. 4:10-cv-4214, 2015 WL 926199, at *3 (S.D. Tex. Mar. 4, 2015) (certifying

an interlocutory appeal where the district court "believe[d] . . . its decision will be affirmed.  But

there is a non-zero chance that the Fifth Circuit will reach a different conclusion.").  In addition,

leading commentators have noted that "certification may be justified at a relatively low threshold

of doubt" where, as here, a "proceeding[] that threaten[s] to endure for several years depend[s]

on an initial question of . . . limitations, or the like."  Wright & Miller, *supra*, § 3930.

    *Third*, interlocutory appeal may materially advance the disposition of this litigation

because, if Defendants are correct on the scienter issues, the entire case would be dismissed,

avoiding further litigation expense and use of judicial resources.  If they are correct on some of

the scienter issues, the number of matters for discovery, including expert discovery, and trial

preparation would be substantially reduced.  *See Hadjipateras*, 290 F.2d at 701 (reasoning that

"there can be no question that [the interlocutory appeal]" may materially advance the disposition

of the litigation where "if appellants-respondents are correct . . . the whole case ends once and

for all"); Wright & Miller, *supra*, § 3930 ("§ 1292(b) is designed to permit interlocutory appeals

only for the purpose of minimizing the total burdens of litigation on parties and the judicial

system by accelerating or at least simplifying trial court proceedings.").  Neither the Court nor

the parties should incur the substantial expenditure of time and resources of pre-trial proceedings

when an interlocutory appeal of a controlling legal issue could dispose of this entire case.  *See,

e.g.*, *Fry* v. *John Hancock Mut. Life Ins. Co.*, 355 F. Supp. 1151, 1155 (N.D. Tex. 1973)

(certifying Section 1292(b) denial of motion to dismiss, noting "that the instant case will involve

discovery procedures extraordinary in extent and in expense").  At the very least, a ruling in

favor of Defendants on Plaintiff's claims relating to ExxonMobil's Rocky Mountain dry gas,

Canadian bitumen, and Kearl operations will substantially narrow the scope of the case.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court reconsider its

Order and grant Defendants' motion to dismiss because the Complaint does not adequately

allege the requisite strong inference of scienter as to each Defendant with respect to each

category of alleged misstatements and omissions.  Alternatively, Defendants respectfully request

that the Court certify its Order for immediate interlocutory appellate review under Section

1292(b) by amending the Order to include findings that it involves a controlling question of law,

as to which there is substantial ground for difference of opinion, and that an immediate appeal

may materially advance the ultimate disposition of this litigation.

Dated: September 11, 2018

Respectfully submitted,


/s/ Daniel J. Kramer
Theodore V. Wells, Jr. (*pro hac vice*)
Daniel J. Kramer (*pro hac vice*)
Daniel J. Toal (*pro hac vice*)
Jonathan H. Hurwitz (*pro hac vice*)
PAUL, WEISS, RIFKIND,
   WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY  10019-6064
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
twells@paulweiss.com
dkramer@paulweiss.com
dtoal@paulweiss.com
jhurwitz@paulweiss.com


/s/ Nina Cortell
Nina Cortell
Texas State Bar No. 04844500
Daniel H. Gold
Texas State Bar No. 24053230
HAYNES AND BOONE, LLP
2323 Victory Avenue, Suite 700
Dallas, TX 75219
Telephone: (214) 651-5000
Facsimile: (214) 651-5940
nina.cortell@haynesboone.com
daniel.gold@haynesboone.com

*Counsel for Exxon Mobil Corporation,*
*Andrew P. Swiger, Jeffrey J. Woodbury,*
*and David S. Rosenthal*

/s/ D. Patrick Long
D. Patrick Long
Texas State Bar No. 12515500
Brian M. Gillett
Texas State Bar No. 24069785
SQUIRE PATTON BOGGS
2000 McKinney Ave., Suite 1700
Dallas, TX 75201
Telephone: (214) 758-1505
Facsimile: (214) 758-1550
patrick.long@squirepb.com
brian.gillett@squirepb.com

*Counsel for Rex W. Tillerson*

## CERTIFICATE OF CONFERENCE

I hereby certify that Daniel J. Toal conferred on September 10, 2018 with Lead Plaintiff's counsel Nathan R. Lindell regarding the relief sought in this motion.  Lead Plaintiff is opposed.


*/s/ Daniel J. Kramer*
Daniel J. Kramer

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been served by electronic CM/ECF filing, on this 11th day of September, 2018.


*/s/ Daniel J. Kramer*
Daniel J. Kramer