UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF TEXAS

DALLAS DIVISION

| | | |
|---|---|---|
| PEDRO RAMIREZ, JR., Individually and on Behalf of All Others Similarly Situated, | § § § § § | Civil Action No. 3:16-cv-03111-K |
| | | CLASS ACTION |
| Plaintiff, | § § | |
| vs. | § § | |
| EXXON MOBIL CORPORATION, et al., | § § § | |
| Defendants. | § § § | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION FOR RECONSIDERATION**

1482050_1

**TABLE OF CONTENTS**

Page

I.    Introduction.................................................................................................................1

II.   The Court Should Deny Defendants' Request to Reconsider the Order ...........................4

      A.    Defendants Have Proffered No Sufficient Reason for Reconsideration..................4

      B.    Even When Considered on the Merits, the Motion Should Be Denied ...................6

            1.    The Fifth Circuit Does Not Require Different Sets of Scienter
                  Allegations for Each Statement ...................................................................7

                  a.    Exxon Did Not Include Any Proxy Cost at All into Its
                        Rocky Mountain Dry Gas Impairment Analysis Before
                        2016..........................................................................................8

                  b.    Exxon Applied a Much Lower Proxy Cost than What Was
                        Publicly Stated When Assessing the Profitability of Its
                        Canadian Bitumen Operations and Proved Reserve Status
                        of Its Assets at Kearl Lake .............................................................12

            2.    The Allegations the Court Specifically Referenced in the Scienter
                  Section of the Order Raise a Strong Inference of Scienter Against
                  Exxon, Tillerson, Swiger and Rosenthal.....................................................14

III.  The Court Should Deny Defendants' Request for Certification Under 28 U.S.C.
      §1292(b) Because None of the Requirements Are Satisfied .............................................19

      A.    Defendants Do Not Identify a Controlling Question of Law as to Which
            There Is Substantial Ground for Difference of Opinion .......................................20

      B.    Defendants Fail to Establish that Interlocutory Review Would Materially
            Advance this Case's Conclusion..........................................................................23

IV.   Conclusion ................................................................................................................24

1482050_1

**TABLE OF AUTHORITIES**

**Page**

**CASES**

*Abbiw v. Franks Int'l, LLC*,
No. 6:16-501, 2018 WL 1221085
(W.D. La. Mar. 7, 2018) .......................................................................................................5

*Alaska Elec. Pension Fund v. Asar*,
898 F.3d 648 (5th Cir. 2018) ...................................................................................2, 7, 8, 15

*Austin v. Kroger Texas, L.P.*,
864 F.3d 326 (5th Cir. 2017) ...............................................................................................1, 5

*Brody v. Zix Corp.*,
No. 3:04-CV1931-K, 2006 WL 2739352
(N.D. Tex. Sept. 26, 2006).................................................................................................10, 15

*City of Pontiac Gen. Emps.' Ret. Sys. v. Southern Co.*,
No. 1:17-CV-241-MHC, 2018 WL 3814304
(N.D. Ga. Aug. 10, 2018).....................................................................................................6, 23

*Clark-Dietz & Assocs.-Eng'rs, Inc. v. Basic Constr. Co.*,
702 F.2d 67 (5th Cir. 1983) ............................................................................................20, 21, 24

*Dos Santos v. Bell Helicopter Textron, Inc. Dist.*,
651 F. Supp. 2d 550 (N.D. Tex. 2009) .................................................................................4

*DuPree v. Kaye*,
No. 3:07-CV-0768-B, 2008 WL 294532
(N.D. Tex. Feb. 4, 2008)....................................................................................................22

*Fener v. Belo Corp.*,
No. 3:04-CV-1836-D, 2007 WL 4165709
(N.D. Tex. Nov. 26, 2007)..................................................................................................23

*Goldstein v. MCI WorldCom*,
340 F.3d 238 (5th Cir. 2003) ...............................................................................................16

*Haack v. Max Internet Commc'ns, Inc.*,
No. 3:00-CV-1662-G, 2002 WL 511514
(N.D. Tex. Apr. 2, 2002).....................................................................................................13

*In re BP p.l.c. Sec. Litig.*,
No. 4:10-MD-2185, 2016 WL 3090779
(S.D. Tex. May 31, 2016) ...................................................................................................10

1482050_1

**Page**

*In re Daou Sys., Inc.*,
   411 F.3d 1006 (9th Cir. 2005) ...............................................................................................10

*In re Heddendorf*,
   263 F.2d 887 (1st Cir. 1959)...................................................................................................20

*In re MicroStrategy, Inc. Sec. Litig.*,
   115 F. Supp. 2d 620 (E.D. Va. 2000) ....................................................................................16

*In re New Century*,
   588 F. Supp. 2d 1206 (C.D. Cal. 2008) .........................................................................8, 10, 11

*In re Read-Rite Corp. Sec. Litig.*,
   335 F.3d 843 (9th Cir. 2003) .................................................................................................10

*In re Viropharma Inc. Sec. Litig.*,
   21 F. Supp. 3d 458 (E.D. Pa. 2014) .......................................................................................19

*Ind. Elec. Workers' Pension Tr. Fund IBEW v. Shaw Grp., Inc.*,
   537 F.3d 527 (5th Cir. 2008) .................................................................................................21

*Lee v. Active Power, Inc.*,
   No. A-13-CA-797-SS, 2014 WL 4337860
   (W.D. Tex. Sept. 2, 2014).....................................................................................4, 21, 22, 23

*Lormand v. US Unwired, Inc.*,
   565 F.3d 228 (5th Cir. 2009) .............................................................................................7, 18

*Mayfield v. DeSoto Parish Police Jury*,
   No. 15-2374, 2017 WL 2295908
   (W.D. La. May 25, 2017)..........................................................................................................5

*McFarlin v. Conseco Serv., LLC*,
   381 F.3d 1251 (11th Cir. 2004) .............................................................................................21

*Monroe Cty. Emps.' Ret. Sys. v. Hanger, Inc.*,
   No. A-14-CA-1026-SS, 2017 WL 384072 (W.D. Tex. Jan. 26, 2017),
   *rev'd on other grounds by Alaska Elec. Pension Fund v. Asar*,
   898 F.3d 648 (5th Cir. 2018) .................................................................................................13

*Neiman v. Bulmahn*,
   854 F.3d 741 (5th Cir. 2017) ...................................................................................7, 15, 16, 21

*Pollock & Riley, Inc. v. Pearl Brewing Co.*,
   498 F.2d 1240 (5th Cir. 1974) ...............................................................................................23

- iii -

**Page**

*Ryan v. Flowserve Corp.*,
     444 F. Supp. 2d 718 (N.D. Tex. 2006) ...........................................................................20, 21

*Sec. & Exch. Comm'n v. Arcturus Corp.*,
     No. 3:13-CV-4861-K, 2016 WL 3654430
     (N.D. Tex. July 8, 2016) ...............................................................................................1, 4

*Sec. & Exch. Comm'n v. Narayan*,
     No. 3:16-cv-1417-M, 2017 WL 4652063
     (N.D. Tex. Aug. 28, 2017) ...................................................................................................17

*Software Rights Archive, LLC v. Google Inc.*,
     No. 2:07-CV-511, 2009 WL 1797996
     (E.D. Tex. June 24, 2009)....................................................................................................20

*Southland Sec. Comp. v. INSpire Sol., Inc.*,
     365 F.3d 353 (5th Cir. 2004) ..............................................................................................17

*Spitzberg v. Houston Am. Energy Corp.*,
     758 F.3d 676 (5th Cir. 2014) .............................................................................................6, 7

*St. Denis J. Villere & Co. v. Caprock Commc'ns Corp.*,
     No. 3:00CV1613-N, 2003 WL 21339286
     (N.D. Tex. June 4, 2003).............................................................................................23, 24

*Tellabs, Inc. v. Makor Issues & Rights Ltd.*,
     551 U.S. 308 (2007)............................................................................................... *passim*

*Thibodeaux v. Vamos Oil & Gas Co.*,
     487 F.3d 288 (5th Cir. 2007) ..............................................................................................20

*Williams v. WMX Techs., Inc.*,
     112 F.3d 175 (5th Cir. 1997) ..............................................................................................23

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
     §78j(b).................................................................................................................................13
     §78t(a).................................................................................................................................13
     §78u-4(b)(2)(A) ............................................................................................................2, 6, 8

28 U.S.C.
     §1292(b)............................................................................................................... *passim*

Federal Rules of Civil Procedure
     Rule 15.................................................................................................................................24

1482050_1

Lead Plaintiff Greater Pennsylvania Carpenters Pension Fund ("plaintiff") respectfully submits this memorandum of law in opposition to Defendants' Motion for Reconsideration of Order Partially Denying Motion to Dismiss or, Alternatively, to Certify for 28 U.S.C. §1292(b) Interlocutory Appeal and Brief Support ("Motion") (ECF No. 69).[1]

## I.    Introduction

After considering over 1,000 pages of complaint, briefs, appendices and applicable law, the Court issued a comprehensive 47-page Memorandum Opinion and Order ("Order") (ECF No. 62) largely denying defendants' motion to dismiss the Consolidated Complaint for Violations of the Federal Securities Laws ("Complaint) (ECF No. 36).  In that Order, the Court conducted a painstaking, defendant-by-defendant analysis of scienter, finding state of mind adequately alleged against Exxon, Tillerson, Swiger and Rosenthal, but not as to Woodbury.

Defendants now ask the Court to reconsider that Order, claiming that notwithstanding its careful analysis, the Court got it wrong.  But defendants predicate their request for reconsideration exclusively on arguments they did not – but could have – asserted in their motion to dismiss.  Case law dictates that "interlocutory presentation of new arguments" should be permitted only "***as the case evolves***."  *Austin v. Kroger Texas, L.P.*, 864 F.3d 326, 337 (5th Cir. 2017).[2]  Where, as here, no such evolution has occurred, a motion for reconsideration is nothing more than a poorly disguised attempt to re-litigate an unfavorable decision.  The parties' and the Court's time should not be squandered on what is in essence a second motion to dismiss.  For this reason, the Motion should be summarily denied without reaching the merits of defendants' arguments.  *See, e.g.*, *Sec. & Exch.*

---

[1]    The defendants in this action are Exxon Mobil Corporation ("Exxon" or the "Company"), Rex W. Tillerson ("Tillerson"), Andrew P. Swiger ("Swiger"), Jeffrey J. Woodbury ("Woodbury") and David S. Rosenthal ("Rosenthal") (collectively, "defendants").

[2]    Emphasis is added and citations are omitted unless otherwise indicated.

1482050_1

*Comm'n v. Arcturus Corp.*, No. 3:13-CV-4861-K, 2016 WL 3654430, at *1 (N.D. Tex. July 8, 2016) (Kinkeade, J.).

But even if the Court considers defendants' new assertions on the merits, they suffer from the same defect that proved fatal to the arguments defendants actually did present in their motion to dismiss. Specifically, defendants urge the Court, as they did previously, to consider allegations of scienter in isolation, claiming that each allegation, ***by itself***, does not create a strong inference. But this time, defendants go even further, not only parsing out the scienter allegations, but also illogically sorting the challenged misrepresentations into two purportedly distinct categories: those that deal specifically with Exxon's impairment and write-down decisions relating to its Rocky Mountain dry gas ("RMDG") and Canadian bitumen assets, and those that deal with Exxon's proxy cost of carbon.

Defendants' attempt to silo the Complaint's allegations ignores the law, the allegations of the Complaint and the Court's Order itself. While the Private Securities Litigation Reform Act of 1995 ("PSLRA") mandates that scienter be pleaded with respect to "each act or omission," 15 U.S.C. §78u-4(b)(2)(A), the Fifth Circuit has "***never required different sets of scienter allegations for each statement***," *Alaska Elec. Pension Fund v. Asar*, 898 F.3d 648, 660 (5th Cir. 2018). Instead, the Fifth Circuit requires only that plaintiff "provid[e] a basis . . . for inferring . . . scienter . . . which logically connects to [defendants'] statements about [that basis]." *Id.*

The Complaint more than adequately provides this logical connection between the impairment and write-down decisions on one hand and the proxy cost on the other. For example, the Complaint specifically alleges that defendants were able to avoid recording a $3.3 billion pre-tax impairment charge of its RMDG assets contemporaneous with Exxon's competitors ***because*** they did not include ***any*** proxy cost at all in Exxon's impairment analysis prior to 2016. ¶¶146-147, 371.[3]

---

[3] Paragraph references ("¶__" and "¶¶__") are to the Complaint.

- 2 -

1482050_1

The Complaint also alleges that defendants applied a far lower proxy cost to Exxon's Canadian bitumen operations than publicly represented in order to make those operations appear more profitable than they actually were. ¶¶138, 142-143, 360. In its Order, the Court recognized these connections, specifically finding, as part of the basis for its holding that Exxon's impairment determinations were materially misleading, that Exxon publicly stated it "complied with GAAP in making all impairment determinations, *meaning it applied a proxy cost of carbon*." Order at 22. The Court was correct to consider all allegations of scienter in finding state of mind adequately pleaded as to statements about the dry gas impairment and Canadian bitumen write-down decisions.

The Court was also correct in finding that the scienter allegations must be considered collectively. Defendants attempt to explain why each allegation of scienter does not, *by itself*, create a strong inference of scienter. But Supreme Court and Fifth Circuit precedent strictly prohibit piecemeal examination of the Complaint. Instead, the Court must "consider[] 'whether *all* of the facts alleged, *taken collectively*, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard.'" Order at 14 (quoting *Tellabs, Inc. v. Makor Issues & Rights Ltd.*, 551 U.S. 308, 323 (2007)) (emphasis in original and added). The Court rejected defendants' piecemeal approach at the motion to dismiss stage, and the same result should follow here.

Defendants' alternative request that the Court certify its Order for immediate review by the appellate court pursuant to 28 U.S.C. §1292(b) fares no better. On its face, §1292(b) requires defendants to identify a controlling question of law as to which there is a substantial ground for difference of opinion. Rather than heed this requirement, defendants do the opposite, failing to identify any issue *at all*, leaving plaintiff and the Court to guess what issue(s) they seek review of.

Moreover, there are no issues raised by the Motion capable of satisfying §1292(b)'s requirements, because whether "allegations support a strong inference [that defendants] acted with

- 3 -

[scienter] . . . is not a question of *law*, but rather a mixed question of law and alleged fact." *Lee v. Active Power, Inc.*, No. A-13-CA-797-SS, 2014 WL 4337860, at *4 (W.D. Tex. Sept. 2, 2014) (emphasis in original). Defendants do not claim there has been a change in the governing law that necessitates clarification by the Circuit. Instead, defendants simply "disagree with the Court's application of the factual allegations to the law. ***This dissatisfaction does not, however, turn the issue into a question of law or constitute grounds for an interlocutory appeal***." *Id.*

For these reasons and those expressed more fully below, plaintiff respectfully requests that the Court deny defendants' Motion in its entirety.

## II.     The Court Should Deny Defendants' Request to Reconsider the Order

### A.     Defendants Have Proffered No Sufficient Reason for Reconsideration

Defendants' attack on the Court's scienter analysis is two-pronged. They first ignore the allegations of the Complaint and illogically contend that the scienter allegations must be divided between those that relate to Exxon's decisions to impair its RMDG assets or write down its Canadian bitumen reserves, and those that relate to Exxon's proxy cost. Motion at 4-5. Defendants then go on to conclude that no allegation of scienter, except those relating to Exxon's AAA credit rating, are specific to the former category, while the allegations of scienter specific to the latter do not raise a strong inference. *Id.* at 10-17.

If these arguments appear new to the Court, that's because they largely are. This fact alone should be dispositive. The Motion, filed mere weeks after the Order was issued, raises arguments that defendants could have, but did not, address in their briefing on the motion to dismiss. This Court has repeatedly rejected attempts to use motions for reconsideration to "'advanc[e] theories of the case that could have been presented earlier." *See, e.g.*, *Arcturus Corp.*, 2016 WL 3654430, at *1 (Kinkeade, J.); *Dos Santos v. Bell Helicopter Textron, Inc. Dist.*, 651 F. Supp. 2d 550, 553 (N.D. Tex. 2009) (same). The Court should do so again here.

- 4 -

1482050_1

The Fifth Circuit's recent decision in *Austin*, 864 F.3d 326, does not alter this conclusion. In *Austin*, the court noted that "Rule 59(e), understandably, sets a high threshold for parties to raise a new argument for the first time after judgment has already been entered," while further noting that "'the interlocutory presentation of new arguments *as the case evolves* can be more flexible, reflecting the "inherent power of the rendering district court to afford such relief from interlocutory judgments as justice requires.'"" 864 F.3d at 336-37. The *Austin* court did not, however, require that district courts consider new arguments raised for the first time in a Rule 54(b) motion. Rather, the court merely clarified that there is no "strict prohibition" against the consideration of new arguments on a Rule 54(b) motion and that district courts have "the discretion to reconsider" interlocutory orders for "reason[s] it deems sufficient." *Id.*

In so holding, *Austin* did *not* authorize movants to sandbag their opponents and the Court, briefing a motion while withholding arguments for later use in the event the motion is not resolved their way. For this reason, post-*Austin* courts have continued to "'look[] to the kinds of consideration under [Rules 59(e)and 60(b)] for guidance'" when faced with a Rule 54(b) request. *Mayfield v. DeSoto Parish Police Jury*, No. 15-2374, 2017 WL 2295908, at *1 (W.D. La. May 25, 2017). Indeed, courts have recognized that their discretion to reconsider interlocutory orders should be "'*exercised sparingly* in order to forestall the perpetual reexamination of orders and the resulting burdens and delays.'" *Abbiw v. Franks Int'l, LLC*, No. 6:16-501, 2018 WL 1221085, at *2 (W.D. La. Mar. 7, 2018).

Under the circumstances of this case, defendants' Motion should be summarily denied. The Motion was filed just a few weeks after the Court issued its Order, during which time neither the facts nor the governing law has "evolve[d]." *Austin*, 864 F.3d at 337. Moreover, defendants have proffered no sufficient reason for the Court to revisit its prior ruling. While defendants complain that the Court got it wrong, "'[a] motion for reconsideration is *not* an opportunity for the moving

- 5 -

party . . . to instruct the court on how the court 'could have done it better' the first time.'" *Monroe Cty. Emps.' Ret. Sys. v. Southern Co.*, No. 1:17-CV-241-MHC, 2018 WL 3814304, at *4 (N.D. Ga. Aug. 10, 2018) (denying motion to reconsider predicated on new arguments challenging the accuracy of the court's scienter analysis). Indeed, reconsidering new arguments now could inadvertently invite defendants to bring a subsequent motion challenging any of the "other grounds" on which they disagree with the Court's Order. Motion at 1 n.1.

At bottom, defendants' request is nothing more than a second motion to dismiss masquerading as a request for reconsideration. Revisiting the Order under such circumstances would stretch the "more flexible" Rule 54(b) past its breaking point. It would also unnecessarily burden the Court, requiring yet another analysis of the sufficiency of the Complaint. The Court should not be obligated to undertake this task after spending nearly eight months considering the parties' arguments the first time around. This is particularly true where the Motion is defective on its face, analyzing each allegation of scienter in isolation, which is plainly incorrect under Supreme Court and Fifth Circuit precedent. *See infra* §II.B.2. For all these reasons, the Court should deny defendants' request to reconsider the Order.

### B. Even When Considered on the Merits, the Motion Should Be Denied

The foregoing amply demonstrates why defendants' request for reconsideration can and should be summarily denied. But even if the Court entertains defendants' Motion, defendants' arguments fail on the merits as well.

The PSLRA requires plaintiffs to plead facts that "giv[e] rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. §78u-4(b)(2)(A). In this Circuit, "'[t]he required state of mind for scienter is an intent to deceive, manipulate, or defraud or severe recklessness.'" *Spitzberg v. Houston Am. Energy Corp.*, 758 F.3d 676, 684 (5th Cir. 2014). Although scienter must be pleaded "with respect to each act or omission," the Fifth Circuit has

1482050_1

"*never required different sets of scienter allegations for each statement*."  *Alaska Elec. Pension Fund*, 898 F.3d at 660.

When evaluating the sufficiency of scienter allegations, the Court must "assess all the allegations holistically." *Tellabs*, 551 U.S. at 326.  This requires the Court to "'consider the entire complaint.'" *Neiman v. Bulmahn*, 854 F.3d 741, 747 (5th Cir. 2017).  In other words, "[t]he inquiry is whether all of the facts alleged, *taken collectively*, give rise to a strong plausible inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 251 (5th Cir. 2009).  When the parties present competing inferences for the court to consider in connection with scienter, "'*a tie favors the plaintiff*' on a motion to dismiss." *Spitzberg*, 758 F.3d at 686.

Defendants first argue that the Court violated Fifth Circuit authority by failing to analyze the scienter allegations with respect to each misrepresentation or omission.  Motion at 4-9.  Defendants then go on to analyze each allegation of scienter in isolation, concluding that no allegation, by itself, gives rise to a strong inference.  *Id.* at 9-13.  As explained *infra*, defendants are wrong on both counts.

### 1.      The Fifth Circuit Does Not Require Different Sets of Scienter Allegations for Each Statement

Defendants first claim that "[v]irtually all" of the allegations relied on by the Court in conducting its scienter analysis concern Exxon's use of proxy costs of carbon.  Motion at 5.  According to defendants, because these allegations do not "relate specifically" to the impairment and write-down decisions, they play no role in assessing whether plaintiff has alleged a strong inference of scienter as to those decisions.  *See id.*  Defendants are both factually and legally incorrect.

As an initial matter, contrary to defendants' tortured reading of the statute, the PSLRA's requirement that plaintiffs plead scienter "with respect to *each act or omission*" is *not* synonymous

- 7 -

1482050_1

with defendants' proffered requirement that plaintiff plead scienter with respect to "each alleged *misrepresentation*." 15 U.S.C. §78u-4(b)(2)(A); Motion at 4. This is because the Fifth Circuit has "***never required different sets of scienter allegations for each statement***." *Alaska Elec. Pension Fund*, 898 F.3d at 660; *see also In re New Century*, 588 F. Supp. 2d 1206, 1228 (C.D. Cal. 2008) (refusing to read "'each act or omission'" as mandating that "allegations will only be relevant to scienter for one statement or one type of statement"). Indeed, even defendants *themselves* do not conduct a statement-by-statement analysis of the Complaint's scienter allegations, instead illogically lumping the alleged misrepresentations into two purportedly separate categories: those that relate to Exxon's dry gas and Canadian bitumen impairment and write-down decisions on one hand, and those that relate to Exxon's proxy costs on the other.

Rather than requiring a statement-by-statement analysis of a plaintiff's scienter allegations, this Circuit simply requires that the complaint "provid[e] a basis . . . for inferring [defendants'] scienter . . . which logically connects to their statements about [that basis]." *Alaska Elec. Pension Fund*, 898 F.3d at 660. Here, plaintiff has done exactly that. In arguing otherwise, defendants' Motion ignores the indisputable connection between the Complaint's allegations concerning defendants' purported use of carbon proxy costs and the allegations concerning Exxon's massive impairment and write down of its RMDG assets and Canadian bitumen operations. In addition, defendants ignore that the Complaint alleges several facts *unrelated* to Exxon's purported use of carbon proxy costs that further demonstrate defendants' scienter.

> **a.      Exxon Did Not Include Any Proxy Cost at All into Its Rocky Mountain Dry Gas Impairment Analysis Before 2016**

On March 31, 2014, under pressure from shareholders for transparency into the potential risks that climate change posed to Exxon's business, Exxon released two reports entitled "Energy and Carbon – Managing the Risks" ("MTR Report") and "Energy and Climate." ¶¶3, 6. In these

- 8 -

1482050_1

reports, Exxon explained that it accounted for "the potential for future climate-related controls" by employing a "proxy cost of carbon." ¶5. Exxon claimed this proxy cost is "embedded" in the Company's Outlook, and must be used by "all business units . . . in evaluating capital expenditures and developing business plans." ¶130.[4] As early as 2010, Exxon forecasted in the Outlook that the cost of $CO_2$ emissions in developed countries like the United States and Canada would reach $30 per ton by 2020 and $60 per ton by 2030. ¶132. In 2012, the Company expanded further on the Outlook, anticipating that the proxy cost in developed countries would reach $80 per ton by 2040. ¶133. Exxon has repeatedly represented to investors that it includes the applicable proxy cost in all of its investment decisions, internal reserve estimates and impairment determinations. ¶128.

However, contrary to Exxon's public representations, internal Exxon documents reflect that Exxon did not factor ***any proxy cost at all*** into its impairment analysis of its RMDG assets prior to 2016. ¶¶146-147, 371. The failure to implement costs including the proxy cost violated Generally Accepted Accounting Principles ("GAAP"). For purposes of developing "future cash flows used to test the recoverability of a long-lived asset," such as oil and gas reserves, GAAP requires that a company "***incorporate the entity's own assumptions*** . . . and shall consider all available evidence." ¶¶146, 330. In accordance with these guidelines, defendants represented that "[c]ash flows used in impairment evaluations . . . make use of the Corporation's price, margin, volume, ***and cost assumptions developed in the annual planning and budgeting process, and are consistent with the criteria management uses to evaluate investment opportunities***." ¶146; Oleske Aff., Ex. 12 at 70.[5] In other words, defendants were required to incorporate the publicly stated proxy cost into Exxon's

---

[4] The Outlook is Exxon's yearly forecast, which Exxon has described as "the foundation" for its investment planning and business decisions. ¶129. Exxon began publicly disseminating the Outlook in 2007. *Id.*

[5] "Oleske Aff." refers to the Affirmation of John Oleske in Opposition to Exxon's Motion to Quash and in Support of the Office of the Attorney General's Motion to Compel, *People of the State of New York v. PricewaterhouseCoopers LLP*, Index No. 451962/2016 (N.Y. Sup. Ct., N.Y. Cty.), attached as Ex. A to the Complaint (ECF No. 36-1); *see* Order at 12 ("the Court will consider the attached exhibits [to the Oleske Affirmation] and any portion of the Complaint that references these documents").

- 9 -

impairment analyses, and the failure to do so violated GAAP and rendered all public representations to the contrary false and misleading.  The Court recognized as much in its falsity analysis:

> ExxonMobil's 2015 Form 10-K did not recognize any impairment of the Rocky Mountain Dry Gas Operation and [stated] that ExxonMobil complied with GAAP in making all impairment determinations, meaning it applied a proxy cost of carbon. Pension Fund alleges ExxonMobil failed to incorporate a proxy cost of carbon in its impairment analysis. By allegedly failing to include a proxy cost in its impairment determination, ExxonMobil's purported opinion that Rocky Mountain Dry Gas Operation was not impaired by year-end 2015 necessarily omitted "particular facts going to the basis for the [defendant's] opinion" making the opinion materially misleading.  *Omnicare*, 135 S. Ct. at 1332.

Order at 22; *see In re BP p.l.c. Sec. Litig.*, No. 4:10-MD-2185, 2016 WL 3090779, at \*10 (S.D. Tex. May 31, 2016) ("falsity is the ***foundation*** of scienter, not a wholly unrelated structure") (emphasis in original); *Brody v. Zix Corp.*, No. 3:04-CV1931-K, 2006 WL 2739352, at \*7 (N.D. Tex. Sept. 26, 2006) (Kinkeade, J.) (finding scienter sufficiently pleaded based in part on "the Court['s] discuss[ion] *supra* in Material Misrepresentation"); *see also In re Daou Sys., Inc.*, 411 F.3d 1006, 1022, 1022 (9th Cir. 2005) ("significant violations of GAAP standards can provide evidence of scienter"); *New Century*, 588 F. Supp. 2d at 1227 ("'falsity and scienter are generally inferred from the same set of facts'") (quoting *In re Read-Rite Corp. Sec. Litig.*, 335 F.3d 843, 846 (9th Cir. 2003)).

As the Court recognized, defendants' wholesale failure to incorporate carbon proxy costs into its impairment analyses prior to 2016 is undoubtedly and inextricably related to the Complaint's alleged misrepresentations concerning Exxon's RMDG impairment decisions.  Moreover, the Complaint also alleges that the impact the omitted proxy cost would have had on an impairment analysis of the RMDG resources in 2015 was substantial.  Specifically, had the proxy cost been included in Exxon's impairment calculations, it would have added additional costs ranging from $0.53/MMBTU to $3.19/MMBTU at a time when the Henry Hub spot price for natural gas was only $2.28/MMBTU.  ¶372.  In other words, inclusion of the proxy cost would have added additional

- 10 -

costs ranging from ***23% to 140% of the current price*** to the cost of Exxon's dry gas assets in 2015, an undeniably material amount. *Id.*

In its 2015 Form 10-K – which Tillerson, Swiger and Rosenthal signed, *see infra* §II.B.2. – Exxon explained it "does not view temporarily low prices or margins as a trigger event for conducting impairment tests," and that its "assessment is that its operations will exhibit strong performance over the long term," even if such operations lose money in the near-to-medium term. Oleske Aff., Ex. 12 at 42, 57. However, had this assessment incorporated Exxon's publicly touted, escalating proxy cost prior to 2016, Exxon would have undoubtedly been required to record its $3.3 billion pre-tax impairment charge contemporaneous with its competitors at no later than year-end 2015. *See* ¶¶156-158. This conclusion is bolstered by the fact that at year-end 2015, production costs of the dry gas assets were ***higher*** and spot prices were ***much lower*** than when Exxon actually recorded the impairment at year-end 2016. ¶¶189-190. Indeed, as specifically pleaded in the Complaint, the Henry Hub natural gas measure of market price had actually risen and was ***62% higher at year-end 2016*** (when the RMDG assets were ultimately impaired after Exxon began including carbon proxy costs in its impairment calculations) than at year-end 2015 (when Exxon recorded no impairment prior to including carbon proxy costs in its impairment calculations). ¶189.

Based on the foregoing, it is clear the Complaint's allegations concerning defendants' carbon proxy misrepresentations are inextricably related to the Complaint's alleged misrepresentations concerning defendants' RMDG impairment decisions. As such, any facts establishing defendants' scienter as to Exxon's carbon proxy misrepresentations are also indicative of defendants' scienter as to the RMDG impairment misrepresentations, rendering defendants' assertion that the Order failed to rely on any scienter facts related to the RMDG impairment misrepresentations incorrect and meritless. Moreover, defendants' scienter relating to the RMDG impairment is further fortified by Rosenthal's explicit instruction that a footnote about impairment be deleted from the 2014 MTR

- 11 -

Report because "*that word gives folks on the third floor heartburn*," an allegation the Court credited as supporting a strong inference of scienter. ¶¶318, 389; *see* Order at 41; *infra* §II.B.2.[6] The allegations concerning Tillerson's scienter are likewise buttressed by his statement that the "price of carbon gets put into *all* of our economic models." ¶136. As Tillerson explained, "[i]t's a proxy," and "*everything gets tested against it*." *Id.* Tillerson cannot publicly claim that all investment decisions include carbon as a cost when no such cost was included in key analyses that materially impacted the Company's bottom line to the tune of billions of after-tax dollars.[7]

> **b.** **Exxon Applied a Much Lower Proxy Cost than What Was Publicly Stated When Assessing the Profitability of Its Canadian Bitumen Operations and Proved Reserve Status of Its Assets at Kearl Lake**

Defendants also ignore plaintiff's proxy cost allegations as they relate to Exxon's Canadian bitumen reserves. Specifically, the Complaint alleges that, in order to avoid recognizing losses in connection with the Canadian bitumen operations' declining profitability in 2015, defendants chose not to apply their publicly stated proxy cost figures to their analysis of the Canadian bitumen assets, instead applying "the current, much lower [greenhouse gas] tax that existed under Alberta law at that time." ¶¶6 n.3, 138, 142-143. Also, instead of applying an escalating proxy cost as to all emissions from Canadian bitumen consistent with its public statements, Exxon acutely limited the scope of its analysis and held the applied proxy cost "flat indefinitely into the future." ¶143. The net result of this behind-the-scenes finagling was that defendants knowingly employed a cost of carbon between $4 and $24 per ton, as opposed to the $40-to-$80-per-ton figure they publicly claimed they applied

---

[6] As noted in plaintiff's opposition, Rosenthal's reference to "folks on the third floor" refers to Exxon's executive suite, which would have included both Tillerson and Swiger. Lead Plaintiff's Response in Opposition to Defendants' Motion to Dismiss at 22 (ECF No. 53); *see also* Order at 41 ("Pension Fund contends 'the folks on the third floor' are ExxonMobil executives, and *ExxonMobil does not dispute this*.").

[7] Defendants' scienter regarding the RMDG asset impairment is further bolstered by the magnitude of the impairment Exxon ultimately recorded as to those assets. Specifically, the $3.3 billion pre-tax impairment charge Exxon belatedly recognized is equal to 46% of Exxon's net income of $7.1 billion from all of its upstream operations in 2015, the year it should have recognized the impairment. ¶67.

- 12 -

in analyzing the profitability of the Canadian bitumen assets. ¶¶143-144. This failure to include the publicly stated proxy cost violated GAAP and allowed defendants to represent the Canadian bitumen operations as far more valuable than they actually were. ¶¶138, 141-144, 354-365.

Defendants similarly ignore the Complaint's allegations concerning the implications of defendants' failure to incorporate their publicly stated proxy costs into their proved reserves calculations for the Kearl operation. Specifically, the Complaint alleges that by year-end 2015, the 3.5 billion barrels of bitumen at Kearl Lake were *no more than $1.52 per bbl* away from no longer qualifying as a proved reserve, and that applying the publicly disclosed proxy cost would have added as much as *$5.70 per bbl*. ¶¶143-144, 176, 359-365; Oleske Aff., Ex. 6. Had defendants employed the publicly stated proxy cost, they would have been required to de-book, impair or write down the entirety of the Kearl Lake proved reserves contemporaneous with their competitors. ¶¶158-159.

Accordingly, similar to the Complaint's allegations concerning defendants' RMDG impairment misrepresentations, defendants' carbon proxy misrepresentations are also inextricably related to the Complaint's alleged misrepresentations concerning Exxon's Canadian bitumen operations. As such, any facts establishing defendants' scienter as to the carbon proxy misrepresentations are also indicative of defendants' scienter as to the alleged Canadian bitumen misrepresentations, rendering defendants' assertion that the Order failed to rely on any scienter facts related to the Canadian bitumen misrepresentations incorrect and meritless.[8]

---

[8] The size and significance of the Canadian bitumen operations – and, specifically, the proved reserves at Kearl Lake – further bolster the Complaint's scienter allegations. The Complaint alleges that Kearl accounted for roughly 75% of Exxon's proved reserves from the Canadian bitumen operations, which in turn accounted for 31% of Exxon's proved reserves worldwide. ¶97; *see City of Pontiac Gen. Emps.' Ret. Sys. v. Hanger, Inc.*, No. A-14-CA-1026-SS, 2017 WL 384072, at *11 (W.D. Tex. Jan. 26, 2017) (finding magnitude of accounting errors "do contribute to a finding of scienter"), *rev'd on other grounds by Alaska Elec. Pension Fund v. Asar*, 898 F.3d 648 (5th Cir. 2018) (reversing in part dismissal of §§10(b) and 20(a) claims, finding claims adequately alleged against corporation and its CFO); *Haack v. Max Internet Commc'ns, Inc.*, No. 3:00-CV-1662-G, 2002 WL 511514, at *7 (N.D. Tex. Apr. 2, 2002) (finding scienter adequately pleaded based on "specific and detailed allegations about the defendants' violations of GAAP," which resulted in the need to restate financial earnings by $10 million). That these decisions were rare also contribute to scienter, given Exxon's long history of refusing to record impairments or write downs, typified by Tillerson's 2015 proclamation that "*[w]e don't do write-downs*." ¶¶90, 166, 186.

- 13 -

### 2. The Allegations the Court Specifically Referenced in the Scienter Section of the Order Raise a Strong Inference of Scienter Against Exxon, Tillerson, Swiger and Rosenthal

As stated previously, the Court must "assess all the allegations **holistically**." *Tellabs*, 551 U.S. at 326. In ruling on the motion to dismiss, the Court correctly rejected defendants' attempt to isolate the allegations, instead assessing the strength of the scienter inference to be drawn from the allegations taken collectively. Order at 30-42. The care with which the Court analyzed the Complaint was evident: the Court went allegation by allegation, rejecting some as not indicative of scienter, but accepting most others. Based on this thorough analysis, the Court thoughtfully determined that plaintiff adequately alleged scienter against Exxon, Tillerson, Swiger and Rosenthal, but not as to Woodbury. Defendants' Motion inappropriately attacks the Court's well-reasoned decision in piecemeal fashion, arguing that none of the allegations on which the Court relied raises a strong inference of scienter.

The overarching issue with defendants' approach is that they improperly silo the scienter allegations, asking the Court to consider each allegation in a vacuum *without* reference to any other allegations contained in the Complaint. This is precisely what defendants did on the motion to dismiss, and is precisely the antithesis of what the Supreme Court and Fifth Circuit require. As it did the first time, the Court should once again reject defendants' flawed and fragmented analysis.

*First*, defendants take issue with the Court's reliance on Tillerson's membership on Exxon's Board of Directors (the "Board"), and Tillerson's and Swiger's memberships on Exxon's Management Committee. Motion at 10. But, as recognized by the Court, these membership positions inform the inference of scienter because the Board "receive[d] in depth briefings at least annually that cover updates on public policy, scientific and technical research, as well as company positions and actions in this area," while the Management Committee had "responsibility for climate change matters," and "are actively engaged in discussions relating to greenhouse gas emissions and

- 14 -

climate change on an ongoing basis." ¶391. Defendants' reliance on *Neiman* to argue that the Court's consideration of these facts runs counter to Fifth Circuit precedent is misplaced because defendants ignore that such facts comprised only one piece of the scienter puzzle in the Court's thorough scienter analysis. *See Tellabs*, 551 U.S. at 323.

Defendants also ignore that the Complaint specifically alleges facts that Tillerson was aware that "***we've been at $60 for the [Outlook] and $40 for the plan circa 2030 for several years***," and that Rosenthal directed that a footnote about impairment be removed because "'***[t]hat word gives folks on the third floor heartburn***.'" ¶¶140, 389; Oleske Aff., Exs. 4, 13.[9] Given these specific allegations tying Tillerson and Rosenthal to the proxy cost allegations, coupled with the allegations concerning the Board's and Management Committee's responsibility for climate change matters and the MTR Report, the Court properly concluded that Tillerson's and Rosenthal's positions in Exxon contributed to the inference of scienter as to these defendants. *See Alaska Elec. Pension Fund*, 898 F.3d at 652, 662 (finding audit committee report that stated a group which included the CFO "engaged in improper accounting" to "contribute[] to an inference of scienter" as to the CFO, even though the report did not identify the CFO's "particular inappropriate practices").

***Second***, defendants claim their motive to maintain Exxon's AAA credit rating cannot support scienter because "scienter cannot rest solely on motives universal to corporate executives," and the Complaint "nowhere alleges that maintaining an AAA credit rating was critical to completing the debt offering, or that the offering could not have been completed if [Exxon's] credit was downgraded." Motion at 7-8, 11. This assertion ignores plaintiff's well-pleaded allegations that explain in detail why the AAA credit rating was of particular importance to Exxon at the time. ¶15; *see* ¶¶195-201 & n.30.

---

[9] In light of these specific facts, defendants' attempt to distinguish this Court's decision in *Brody* falters. *See* Order at 32; *Brody*, 2006 WL 2739352, at *7 (Kinkeade, J.) (finding scienter sufficiently pleaded where defendants allegedly received reports and information that rendered their statements false and misleading).

- 15 -

Specifically, in early 2016, Exxon found itself in dire need of an infusion of capital as a result of the years-long slump in oil and gas prices worldwide and Exxon's unsustainable commitment to shareholder payouts, the latter of which Tillerson described as "a high priority" and "why we are important to people." ¶¶85, 195-198, 393-397. Exxon thus undertook an eight-tranche $12 billion debt offering in March 2016 – the single largest debt offering in its history. ¶198. The Complaint alleges that maintaining Exxon's coveted AAA credit rating in advance of this offering was "***critically important***," given that any decline in its rating would have significant, negative implications on the debt offering. ¶¶15, 198-199, 201, 206-214. Accordingly, defendants could not risk disclosing the need to impair Exxon's RMDG assets and write down its Canadian bitumen resources before the offering was completed. ¶201.[10] As such, the Court properly considered defendants' motive to maintain Exxon's credit rating under these unique circumstances as indicative of scienter. *See Neiman*, 854 F.3d at 748 ("[T]his court [in *Goldstein*] found that the company's 'need to complete a "crucial" $129 billion merger . . . gave the company a motive to inflate its financial results.'") (citing *Goldstein v. MCI WorldCom*, 340 F.3d 238, 242, 250 (5th Cir. 2003)).[11]

***Third***, defendants state that the Court's reliance on the fact that Tillerson, Swiger and Rosenthal signed SEC filings is misplaced because "that a defendant signed SEC filings is . . . insufficient to plead a strong inference of scienter under clear Fifth Circuit law," and because of a purported lack of corroborating allegations of what specific information defendants knew. Motion at 11-12. The first assertion again ignores that the Court's finding of scienter was based on a holistic review of several allegations in addition to the signing of the SEC filings, while the second assertion

---

[10]    This explains the otherwise illogical timing of Exxon's impairment and write-down decisions. *See supra* §II.B.1.a.

[11]    *See also In re MicroStrategy, Inc. Sec. Litig.*, 115 F. Supp. 2d 620, 643 (E.D. Va. 2000) ("a more particularized motive to commit fraud, one tied to specific circumstances . . . and a showing of "'concrete benefits that could be realized by one or more of the false statements and wrongful nondisclosures alleged'" may provide the necessary added inferential weight to tilt the balance in favor of scienter").

1482050_1

ignores the specific allegations contained in the Complaint that Tillerson was aware of and "happy with" the difference between the publicly touted and internally employed proxy cost, and Rosenthal's directive that a footnote about impairment be removed from the 2014 MTR Report because "'[t]hat word gives folks on the third floor heartburn.'" ¶¶140, 389; *see supra* at 14-15.

*Fourth*, defendants contend, without citation to authority, that "[n]o inference of fraudulent intent can be drawn from" Rosenthal's "routine act of allegedly deleting the footnote from the report." Motion at 12. Specifically, the Complaint describes internal Exxon documents revealing that, on March 25, 2014, Rosenthal requested a footnote about impairment be removed from Exxon's 2014 MTR Report. ¶389; Oleske Aff., Ex. 13. In the internal communication, Rosenthal specifically states "'[t]hat word gives folks on the third floor heartburn.'" The Court properly deduced that "the email's wording indicates the executives on the third floor [which would have included Tillerson and Swiger] found the impairment footnote to be significant." Order at 41. An email from Rosenthal himself readily satisfies the Fifth Circuit's requirement that plaintiff plead "specific facts tying a corporate officer to a statement," such as "particular factual allegations explaining the individual's involvement in the formulation of either the entire document, or that specific portion of the document, containing the statement." *Southland Sec. Comp. v. INSpire Sol., Inc.*, 365 F.3d 353, 365 (5th Cir. 2004); *see also Sec. & Exch. Comm'n v. Narayan*, No. 3:16-cv-1417-M, 2017 WL 4652063, at *13 (N.D. Tex. Aug. 28, 2017) (finding email stating that defendants need to make payments "appear kosher" indicative of scienter because "[i]f someone says that steps need to be taken for payments to appear kosher, one can reasonably infer that the person who made the statement and the statement's audience knows that the payments are not kosher").

*Fifth*, the Court found an email stating that Tillerson was aware of and "happy with" the difference between the publicly touted and internally employed proxy cost added to the strong inference of scienter as to him. Order at 36-37. Defendants challenge this finding, stating the

- 17 -

Court's reliance on this email does not comport with the Fifth Circuit's decision in *Lormand*, 565 F.3d 228.  Motion at 12-13.  But a cursory review of that decision shows that defendants misread *Lormand*, attempting to elevate dicta to holding, as the *Lormand* court's chosen language must be read in light of the arguments made in that case.  There, the court was responding to defendants' assertion that the plaintiff was pleading fraud by hindsight.  *Lormand*, 565 F.3d at 254.  The *Lormand* court did not find this contention persuasive because plaintiff coupled its reliance on post-class period admissions with "numerous contemporaneous documents."  *Id.*  The Fifth Circuit found this evidence, taken together, told a consistent story of fraud.  *Id.*

So too here.  Before the class period, in an email exchange between Exxon's Corporate Greenhouse Gas Manager and an Exxon Corporate Strategic Planning Manager discussing the two different sets of proxy cost, the latter stated, "I have pointed out the difference in past reviews – we've been at $60 for the [Outlook] and $40 for the plan circa 2030 for several years.  *[Defendant] Rex [Tillerson] has seemed happy with the difference previously*."  ¶140; Oleske Aff., Ex. 4.  Surely an email that pre-dates the class period does not raise the fraud-by-hindsight concerns that were present in *Lormand*.  Moreover, similar to *Lormand*, the inference of scienter created by this email is supported by, and tells a story consistent with other indicia of scienter, including:

- Defendant Tillerson's statement that "*[w]e don't do write-downs*" (¶¶90, 166, 186);

- Defendants' representations that the members of the Management Committee (including defendants Tillerson and Swiger) have "*responsibility for climate change matters*," that Exxon's full Board of Directors (including defendant Tillerson) "receives *in depth briefings at least annually* that cover . . . *company positions and actions* [on the subject of risks of climate change]," and that the members of the Management Committee (including defendants Tillerson and Swiger) are "*actively engaged* in discussions relating to greenhouse gas emissions and climate change on an ongoing basis" (¶391);

- Defendants' representation in the MTR Report that "[t]he Outlook is *reviewed and discussed extensively* with the company's Management Committee [including defendants Tillerson and Swiger] and Board prior to its release" (¶390);

- 18 -

- Statements by the individual defendants emphasizing the importance of Exxon's shareholder payouts, including defendant Tillerson's statement on the March 2016 debt offering's closing date describing Exxon's dividend as the reason "*we are important to people*" (¶¶84-85, 388, 396); and

- Numerous statements by each of the individual defendants during shareholder and analyst conference calls and meetings demonstrating each defendant's intimate involvement in, and awareness of, the precise matters at the heart of the fraudulent conduct alleged in the Complaint (*e.g.*, ¶¶260, 265-266, 268, 273, 300, 302, 313, 385-389).

These allegations, together with those discussed *supra*, amply support the Court's conclusion that plaintiff's allegations, in the aggregate, support a strong inference of scienter against Exxon, Tillerson, Swiger and Rosenthal.

Defendants' claim that Exxon's stock repurchase program and lack of insider sales negate this strong inference does not alter this outcome. Motion at 8-9. Indeed, this was an argument the Court expressly contemplated and rejected in its Order. *See* Order at 35-36 (noting that "the lack of insider trading *does* weigh against a finding of scienter"). Nothing about the current rendition of this argument undermines the Court's prior conclusion. *See In re Viropharma Inc. Sec. Litig.*, 21 F. Supp. 3d 458, 474 n.23 (E.D. Pa. 2014) ("This Court is not persuaded that the existence of the stock repurchase plan wholly negates the strong inference of scienter, in light of other factors such as the conscious misbehavior and recklessness that Plaintiff has adequately pleaded."). Accordingly, the Court should once again reject this meritless attack on the Complaint.

## III. The Court Should Deny Defendants' Request for Certification Under 28 U.S.C. §1292(b) Because None of the Requirements Are Satisfied

Defendants alternatively request that the Court certify its Order to allow them to seek interlocutory review by the Fifth Circuit pursuant to 28 U.S.C. §1292(b). Section 1292(b) provides for immediate review of an interlocutory order *only* where that order "involves a controlling question of law as to which there is substantial ground for difference of opinion," and where "an immediate appeal from the order may materially advance the ultimate termination of the litigation."

This statute is strictly construed. *See Thibodeaux v. Vamos Oil & Gas Co.*, 487 F.3d 288, 292 (5th Cir. 2007). Thus, to warrant §1292(b) review, the circumstances must be exceptional, and the questions of law "'difficult and pivotal'" and not settled by controlling authority. *Software Rights Archive, LLC v. Google Inc*., No. 2:07-CV-511, 2009 WL 1797996, at *3 (E.D. Tex. June 24, 2009); *see also In re Heddendorf*, 263 F.2d 887, 888 (1st Cir. 1959). A disagreement with the court's ruling does *not* meet this standard. *Clark-Dietz & Assocs.-Eng'rs, Inc. v. Basic Constr. Co.*, 702 F.2d 67, 68 (5th Cir. 1983) ("An interlocutory appeal assuredly does not lie simply to determine the correctness of a judgment of liability."); *Ryan v. Flowserve Corp.*, 444 F. Supp. 2d 718, 722-23 (N.D. Tex. 2006) (stating an interlocutory appeal "is not a vehicle to question the correctness of a district court's ruling or to obtain a second, more favorable opinion").

### A.   Defendants Do Not Identify a Controlling Question of Law as to Which There Is Substantial Ground for Difference of Opinion

Defendants' request stumbles on the first requirement, failing to show that the issue is controlling, a question of law, or one as to which there is a substantial ground for difference of opinion. Indeed, defendants do not even try to define the question(s) they ask this Court to certify for immediate review. Rather, they only state that "the issues addressed in Section I above are 'controlling question[s] of law,'" leaving plaintiff and the Court to guess as to which precise issue(s) defendants are requesting interlocutory review of. Motion at 15. At any rate, no formulation of the issues satisfies the strictures of §1292(b).

Defendants expend all their effort arguing that the question is "controlling," explaining "a contrary ruling on the scienter analysis on appeal would be dispositive of the litigation in its entirety." *Id.* As an initial matter, defendants assume that any dismissal for failure to plead scienter would be without leave to amend the Complaint. *See infra* §III.B. Beyond this, stating that the entire action "'will be dismissed if the Fifth Circuit concludes on de novo review that Plaintiffs have

- 20 -

not adequately alleged scienter under the PSLRA' . . . is true of any order denying a motion to dismiss." *Lee*, 2014 WL 4337860, at \*5. That does not render immediate review available in every case where a motion to dismiss is denied.

Even if controlling, defendants fail to explain how the issue involves "question[s] of ***law*** – not fact." *Ryan*, 444 F. Supp. 2d at 722 (emphasis in original). A question of law is "'a question of the meaning of a statutory or constitutional provision, regulation, or common law doctrine.'" *McFarlin v. Conseco Serv., LLC*, 381 F.3d 1251, 1258 (11th Cir. 2004). Section 1292(b) review is thus unavailable for "fact-review questions," *Clark-Dietz*, 702 F.2d at 69, or "the application of settled law to disputed facts," *Ryan*, 444 F. Supp. 2d at 722.

It is plain on the Motion's face that defendants do not raise a question of law. Defendants do not contend that the standard for pleading scienter is not well established in this Circuit. Nor can they, given that their principal authorities cite to and quote from the very same cases on which the Court relied in rendering its decision. *Compare* Motion at 4 (citing *Neiman*, 854 F.3d at 748, which in turn quoted *Ind. Elec. Workers' Pension Tr. Fund IBEW v. Shaw Grp., Inc.*, 537 F.3d 527, 533 (5th Cir. 2008)), *with* Order at 32, 36, 38, 41 (citing *Shaw Grp.*, 537 F.3d at 544). Instead, defendants merely "disagree with the Court's application of the factual allegations to the law. ***This dissatisfaction does not, however, turn the issue into a question of law or constitute grounds for an interlocutory appeal***." *Lee*, 2014 WL 4337860, at \*4; *see also McFarlin*, 381 F.3d at 1259 ("The antithesis of a proper §1292(b) appeal is one that turns on . . . whether the district court properly applied settled law to the facts or evidence of a particular case.").

For the same reason, defendants have failed to show the issue – whatever it may be – is one as to which there is a substantial ground for difference of opinion. Courts have found a substantial ground to exist where

- 21 -

> "a trial court rules in a manner which appears contrary to the rulings of all Courts of Appeal which have reached the issue, if the circuits are in dispute on the question and the Courts of Appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented."

*DuPree v. Kaye*, No. 3:07-CV-0768-B, 2008 WL 294532, at *3 (N.D. Tex. Feb. 4, 2008).  But "a party's claim that a district court has ruled incorrectly" does not establish a substantial disagreement. *Id.*

Defendants assert that "[t]he Fifth Circuit has often accepted for appeal decisions denying motions to dismiss in similar circumstances," relying principally on *Shaw Group*.  Motion at 16; *see id.* at 14-15.  But the circumstances surrounding the §1292(b) appeal in *Shaw Group* are markedly different, as the court explained in *Lee*.  There, the defendants requested that the court certify for §1292(b) review the question of "'[w]hether Plaintiffs' securities-fraud claims allege scienter in accordance with the heightened pleadings standard of the PSLRA.'"  *Lee*, 2014 WL 4337860, at *5.[12]  Like defendants here, the *Lee* defendants pointed to *Shaw Group* as evidence that the Fifth Circuit entertains questions of "whether a complaint adequately alleged scienter under PSLRA."  *Id.* at *2.  But the court found "[t]he circumstances of that appeal were quite different from those in this case."  *Id.*  The *Lee* court noted that the Supreme Court had "just recently" issued *Tellabs*, and "[t]he Fifth Circuit had not had an opportunity to determine how *Tellabs* affected its existing standard for scienter."  *Id.*  Defendants here, like the defendants in *Lee*, do not dispute that "the legal standard for

---

[12]    More accurately, and much like defendants here, the defendants in *Lee* "vacillate[d] in the scope of their proposed question."  *Lee*, 2014 WL 4337860, at *5.  The court was left to postulate as to the exact contours of the question the defendants were seeking immediate review of, addressing "the controlling question of law broadly as to whether Plaintiffs adequately pleaded scienter" and somewhat more narrowly as "whether Plaintiffs' allegations support a strong inference [the corporate officers] acted with 'severe recklessness.'"  *Id.* at *2, *4.  The court found no version of the defendants' request presented a controlling question of law.  *Id.*

scienter is clear due to cases like *Shaw Group*." *Id.* at *3. Accordingly, the interlocutory appeal in *Shaw Group* is not instructive here.[13]

*Lee* is no outlier. District courts often reject requests to certify for interlocutory review questions that are nothing more than challenges to the complaint's sufficiency. *See, e.g.*, *Fener v. Belo Corp.*, No. 3:04-CV-1836-D, 2007 WL 4165709, at *1, *4 (N.D. Tex. Nov. 26, 2007) (rejecting defendants' request to certify a pre-*Tellabs* decision for review by the Fifth Circuit in light of *Tellabs*); *St. Denis J. Villere & Co. v. Caprock Commc'ns Corp.*, No. 3:00CV1613-N, 2003 WL 21339286, at *1 (N.D. Tex. June 4, 2003) (refusing to certify an order defendants claimed "contravene[d] Fifth Circuit precedent regarding pleading fraud with particularity and pleading a strong inference of scienter"); *see also, e.g.*, *Southern Co.*, 2018 WL 3814304, at *10-*11 (refusing to certify under §1292(b) the question "'[w]hether this Circuit's requirement that a "complaint allege facts supporting a strong inference of scienter 'for each defendant with respect to each violation'" requires a plaintiff to plead scienter as to each allegedly false or misleading statement'"). This is so because a disagreement between the Court and defendants "is not such stuff as interlocutory appeals are made on." *St. Denis J. Villere & Co.*, 2003 WL 21339286, at *1; *see also Pollock & Riley, Inc. v. Pearl Brewing Co.*, 498 F.2d 1240, 1246 (5th Cir. 1974) (finding the sufficiency of pleadings not ordinarily certifiable for immediate review under §1292(b)). The same result should follow here.

**B.** **Defendants Fail to Establish that Interlocutory Review Would Materially Advance this Case's Conclusion**

Defendants likewise fail to establish that immediate review of the Court's Order will materially advance the resolution of this case. *See* 28 U.S.C. §1292(b). Defendants argue this requirement is satisfied because if they "are correct on the scienter issues, the entire case would be

---

[13] Nor is defendants' other cited authority, the decades-old decision *Williams v. WMX Techs., Inc.*, 112 F.3d 175 (5th Cir. 1997), which dealt with a complaint that was defective on its face for failing to even identify which statements plaintiffs challenged as false. *Id.* at 179.

- 23 -

1482050_1

dismissed."  Motion at 16-17.  This conclusion, however, rests on the faulty assumption that a dismissal at this stage would be without leave to amend.  Given that plaintiff has never amended its complaint in the face of a dismissal order, and in light of the liberal provision of leave to amend, it is implausible to assume that a dismissal at this juncture would materially advance resolution of this litigation by ending it.  *See* Fed. R. Civ. P. 15.  Rather, an interlocutory review at this stage will only work to further delay this two-year-old case.  *Clark-Dietz*, 702 F.2d at 69 (denying leave to appeal, noting "we are unable to perceive that ultimate determination will be advanced because decision of the appeal, even in the present favorable state of our docket, will require four to six months"); *St. Denis J. Villere & Co.*, 2003 WL 21339286, at *1 (finding §1292(b) appeal "would not materially advance the ultimate termination of the litigation" because it would, "at most, require Plaintiffs to replead and delay the upcoming trial, and as such would materially retard the ultimate termination of the litigation").  Defendants' request for certification should thus be denied.

## IV.    Conclusion

After a painstaking, defendant-by-defendant analysis that faithfully applied Supreme Court and Fifth Circuit precedent, the Court correctly determined that the Complaint withstood the strictures of the PSLRA as to most of the defendants, while also finding that plaintiff had failed to adequately allege scienter as to one of the defendants.  Defendants' Motion "simply disagrees" with the Court's well-reasoned analysis "regarding the adequacy of the Amended Complaint viewed in the light of [Fifth Circuit] precedent."  *St. Denis J. Villere & Co.*, 2003 WL 21339286, at *1.  But "[n]either the PSLRA nor the Fifth Circuit precedents construing the PSLRA have completely

1482050_1

supplanted jury trials . . . with a motion to dismiss." *Id.*  Having surmounted the high hurdle set by the PSLRA, Plaintiff respectfully requests that the Motion be denied in its entirety and this case be adjudicated on the merits.

DATED:  October 2, 2018

Respectfully submitted,

KENDALL LAW GROUP, PLLC
JOE KENDALL (Texas Bar No. 11260700)
JAMIE J. McKEY (Texas Bar No. 24045262)


|                     s/ JOE KENDALL                     |
| --- |

JOE KENDALL

3811 Turtle Creek Blvd., Suite 1450
Dallas, TX  75219
Telephone:  214/744-3000
214/744-3015 (fax)
jkendall@kendalllawgroup.com
jmckey@kendalllawgroup.com

BALON B. BRADLEY LAW FIRM
BALON B. BRADLEY (Texas Bar No. 02821700)
5473 Blair Road, Suite 100
Dallas, TX  75231
Telephone:  972/991-1582
972/755-0424 (fax)
balon@bbradleylaw.com

Local Counsel

ROBBINS GELLER RUDMAN
  & DOWD LLP
X. JAY ALVAREZ
SCOTT H. SAHAM
NATHAN R. LINDELL
SARA B. POLYCHRON
ERIKA OLIVER
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
jaya@rgrdlaw.com
scotts@rgrdlaw.com
nlindell@rgrdlaw.com
spolychron@rgrdlaw.com
eoliver@rgrdlaw.com

1482050_1

ROBBINS GELLER RUDMAN
  & DOWD LLP
JOHN C. HERMAN
PETER M. JONES
Monarch Tower, Suite 1650
3424 Peachtree Road, N.E.
Atlanta, GA  30326
Telephone:  404/504-6500
404/504-6501 (fax)
jherman@rgrdlaw.com
pjones@rgrdlaw.com

Lead Counsel for Plaintiff

Case 3:16-cv-03111-K   Document 73   Filed 10/02/18   Page 31 of 33   PageID 1798

- 26 -

1482050_1

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on October 2, 2018, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ JOE KENDALL
JOE KENDALL

KENDALL LAW GROUP, PLLC
3811 Turtle Creek Blvd., Suite 1450
Dallas, TX  75219
Telephone:  214/744-3000
214/744-3015 (fax)

E-mail:  jkendall@kendalllawgroup.com

1482050_1

## Mailing Information for a Case 3:16-cv-03111-K Ramirez v. Exxon Mobil Corporation et al

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Mary K Blasy**
  mblasy@rgrdlaw.com,e_file_ny@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Balon B Bradley**
  balon@bbradleylaw.com,balonbb@aol.com,iasanchez@bbradleylaw.com,anneh@bbradleylaw.com

- **Nina Cortell**
  nina.cortell@haynesboone.com,denise.stilz@haynesboone.com,robin.hart@haynesboone.com,kelly.hess@haynesboone.com

- **Patrick Coughlin**
  patc@rgrdlaw.com

- **Ralph H Duggins**
  rduggins@canteyhanger.com,adrake@canteyhanger.com

- **Brian Matthew Gillett**
  brian.gillett@squirepb.com,janine.schiell@squirepb.com

- **Daniel H Gold**
  daniel.gold@haynesboone.com,elaine.hadaway@haynesboone.com

- **John C Herman**
  jherman@rgrdlaw.com,smeister@rgrdlaw.com

- **Jonathan Hurwitz**
  jhurwitz@paulweiss.com,mao_fednational@paulweiss.com

- **Joe Kendall**
  jkendall@kendalllawgroup.com,administrator@kendalllawgroup.com

- **Daniel Kramer**
  DKramer@paulweiss.com,mao_fednational@paulweiss.com

- **Gregory F Laufer**
  GLaufer@paulweiss.com,jgoldstein@paulweiss.com,BTannenbaum@paulweiss.com,mao_fednational@paulweiss.com,MStachel@paulweiss.com

- **Nathan R. Lindell**
  nlindell@rgrdlaw.com,jillk@rgrdlaw.com,karenc@rgrdlaw.com,e_file_sd@rgrdlaw.com,susanw@rgrdlaw.com

- **D Patrick Long**
  patrick.long@squirepb.com,dawn.furcht@squirepb.com,annie.purcell@squirepb.com,docketingrequest@squirepb.com,janine.schiell@squirepb.com

- **Jamie Jean McKey**
  jmckey@kendalllawgroup.com,administrator@kendalllawgroup.com

- **Erika Oliver**
  eoliver@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Sara Bierl Polychron**
  spolychron@rgrdlaw.com,6287952420@filings.docketbird.com

- **Samuel H Rudman**
  srudman@rgrdlaw.com,e_file_ny@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Daniel Toal**
  DToal@paulweiss.com,dangelatos@paulweiss.com,mao_fednational@paulweiss.com

- **Theodore V. Wells**
  twells@paulweiss.com,mao_fednational@paulweiss.com

### Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)