UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF TEXAS

DALLAS DIVISION

| | | |
|---|---|---|
| PEDRO RAMIREZ, JR., Individually and on Behalf of All Others Similarly Situated, | § § § | Civil Action No. 3:16-cv-03111-K |
| | § | CLASS ACTION |
| Plaintiff, | § § | |
| vs. | § § § | |
| EXXON MOBIL CORPORATION, et al., | § § | |
| Defendants. | § § | |

**LEAD PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION FOR RECONSIDERATION**

**[REDACTED]**

4848-5015-4189.v2

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ..............................................................................................................1

II.   RELEVANT BACKGROUND ........................................................................................3

III.  ARGUMENT ...................................................................................................................5

      A.    Plaintiff's Claims Are Not Dependent on the Evidence or Allegations at Issue in the NYAG Decision.........................................................................6

            1.    Plaintiff's Allegations Regarding Exxon's Impaired RMDG Assets ..........6

            2.    Plaintiff's Allegations Regarding Defendants' Concealment of Canadian Bitumen Operating Losses.............................................................8

            3.    Plaintiff's Allegations Regarding the "Proved Reserves" Status of Exxon's Kearl Operation ...................................................................9

            4.    Plaintiff's Allegations Regarding Defendants' Purported Use of Carbon Proxy Costs.................................................................................10

            5.    The NYAG Decision Does Not Render Plaintiff's Allegations Regarding Materiality Implausible ............................................................12

            6.    The NYAG Decision Does Not Defeat the Complaint's Allegations of a Strong Inference of Scienter..................................................13

      B.    The NYAG Decision Has No Legal Significance to This Action..........................16

      C.    The Limited Evidence Produced to Date Strongly Supports Plaintiff's Claims......................................................................................................18

IV.   CONCLUSION ..............................................................................................................19

4848-5015-4189.v2

## TABLE OF AUTHORITIES

**Page**

### CASES

*Bachow v. Swank Energy Income Advisors, LP,*
No. 3-09-CV-0262-K, 2010 WL 70520
(N.D. Tex. Jan. 6, 2010) ........................................................................................................16

*Goldstein v. MCI WorldCom,*
340 F.3d 238 (5th Cir. 2003) ...............................................................................................15

*Harris v. Progressive Ins., Inc.,*
No. 3:13-cv-3983-K, 2014 WL 712446
(N.D. Tex. Feb. 24, 2014) ......................................................................................................16

*Jackson v. Procunier,*
789 F.2d 307 (5th Cir. 1986) ...............................................................................................16

*Jones v. Cain,*
600 F.3d 527 (5th Cir. 2010) ............................................................................................8, 12

*Lormand v. US Unwired, Inc.,*
565 F.3d 228 (5th Cir. 2009) ................................................................................. 11, 16, 17

*Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.,*
66 F. Supp. 3d 795 (E.D. Tex. 2014) ..................................................................................8, 12

*Neiman v. Bulmahn,*
854 F.3d 741 (5th Cir. 2017) ...............................................................................................15

*People v. Exxon Mobil Corp.,*
119 N.Y.S.3d 829, 2019 WL 6795771
(N.Y. Cnty. 2019) ..........................................................................................................*passim*

*SB Int'l, Inc. v. Jindal,*
No. 3:06-CV-1174-G ECF, 2007 WL 1411042
(N.D. Tex. May 14, 2007) ..............................................................................................16, 17

*Taylor v. Charter Med. Corp.,*
162 F.3d 827 (5th Cir. 1998) ...............................................................................................16

*Taylor v. Sturgell,*
553 U.S. 880 (2008) ............................................................................................................17

*Tellabs, Inc. v. Makor Issues & Rights Ltd.,*
551 U.S. 308 (2007) ............................................................................................................16

4848-5015-4189.v2

**Page**

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
   §78j(b) ................................................................................................................3, 5
   §78t(a) .............................................................................................................3, 4, 5

Federal Rules of Civil Procedure
   Rule 12(b)(6) ......................................................................................................16
   Rule 12(d) ...........................................................................................................16
   Rule 56 ...............................................................................................................16

4848-5015-4189.v2

# GLOSSARY OF TERMS

"Complaint" refers to the Consolidated Complaint for Violations of the Federal Securities Laws, dated July 26, 2017 (ECF No. 36).  Unless otherwise indicated, all "¶__" and "¶¶__" references are to the Complaint.

"Defendants" refers collectively to Exxon Mobil Corporation ("Exxon" or the "Company"), Rex W. Tillerson ("Tillerson"), Andrew P. Swiger ("Swiger"), Jeffrey J. Woodbury ("Woodbury") and David S. Rosenthal ("Rosenthal"), or to any subset thereof, as identified where appropriate herein.

"Exchange Act" refers to the Securities Exchange Act of 1934, 15 U.S.C. §78a *et seq.*

"GAAP" refers to Generally Accepted Accounting Principles.

"Individual Defendants" refers to Tillerson, Swiger, Woodbury and Rosenthal.

"Kearl" refers to Exxon's bitumen mining operation located at Kearl Lake.

"Motion" or "Mtn." refers to Defendants' Motion for Reconsideration of their Motions to Dismiss and to Strike Based on New Case Development (ECF No. 122).

"MTD Order" refers to the Court's Memorandum Opinion and Order, dated August 14, 2018 (ECF No. 62).

"NYAG" refers to the New York Attorney General.

"NYAG Decision" refers to *People v. Exxon Mobil Corp.*, 119 N.Y.S.3d 829, 2019 WL 6795771 (N.Y. Cnty. 2019).

"Plaintiff" refers to Lead Plaintiff Greater Pennsylvania Carpenters Pension Fund.

"RMDG" refers to the Rocky Mountain dry gas.

"SEC" refers to the United States Securities and Exchange Commission.

"Supplemental Response" or "Supp. Resp." refers to Lead Plaintiff's Response to Defendants' Supplemental Brief filed concurrently herewith.

4848-5015-4189.v2

Plaintiff respectfully submits this memorandum of law in opposition to Defendants' Motion for Reconsideration.[1]

## I.  INTRODUCTION

More than two years ago, this Court issued a 47-page Memorandum Opinion and Order largely denying Defendants' motion to dismiss the Complaint. *See* ECF No. 62. Defendants now ask the Court – for a second time – to reconsider its detailed and thoughtful analysis of Plaintiff's claims. The purported basis for Defendants' request comes from a misguided attempt to bind the outcome of Plaintiff's case to the NYAG Decision, a ruling by a New York state trial court concerning entirely distinct claims litigated by a completely unrelated plaintiff. The NYAG Decision has no legally binding or preclusive effect on Plaintiff's claims, and thus has no impact on the Court's previous order upholding the Complaint.

Moreover, contrary to Defendants' assertions, Plaintiff's claims are by no means "premised" on the allegations at issue in the NYAG Decision. Mtn. at 1. Indeed, two of the core theories underlying Plaintiff's claims – that Defendants' SEC filings violated GAAP and misled investors by misrepresenting and omitting material facts regarding (1) the true state of Exxon's struggling Canadian bitumen operations, the most significant of which being Kearl, and (2) the fact that Exxon's RMDG assets were substantially impaired – are unique to this case. They were not at issue in the NYAG action, are not addressed anywhere in the NYAG Decision, and are supported by well-pled factual allegations that have no connection to the evidence or arguments presented by the NYAG during its bench trial. Although the Complaint does reference certain evidence disclosed by the NYAG during its investigation, such evidence is not necessary to prove the two core claims described above, both of which are factually and legally distinct from those

---

[1]  Unless otherwise indicated herein, all capitalized terms are defined as set forth in the Glossary of Terms provided *supra*, all emphasis is added and all citations are omitted.

tried by the NYAG.  The NYAG Decision confirms this fact by expressly noting that, unlike the present action, "there is no claim in [the NYAG action] that ***any disclosure*** in ExxonMobil's Form 10-K is misleading."  *People v. Exxon Mobil Corp.*, 119 N.Y.S.3d 829, 2019 WL 6795771, at *19 (N.Y. Cnty. 2019); *see also id.* at *20 ("there is no allegation in this case . . . that anything ExxonMobil is alleged to have done or failed to have done affected ExxonMobil's balance sheet, income statement, or any other financial disclosure").  Simply put, there is nothing about the NYAG Decision that renders Plaintiff's claims implausible as a matter of law.

In fact, the limited evidence produced to date in this case confirms that Plaintiff's claims are not only plausible, but likely to succeed.  For example, internal documents produced by Defendants confirm that Exxon's most important Canadian bitumen operation, Kearl – a $20 billion investment that accounted for 75% of Exxon's Canadian bitumen proved reserves and 14% of Exxon's total corporate proved reserves worldwide at year-end 2015 – was losing ████ ████████████████████████████████████████  ECF No. 89-4, Ex. J at App. 268.  This fact rendered Defendants' disclosure in Exxon's Form 2015 10-K that the Company's Canadian bitumen was generating profits of $5.87 per barrel materially misleading.  ECF No. 103, Ex. 12 at App. 227 n.47; ECF No. 105-1, Ex. 1 at App. 3-4.  Other internal Exxon documents confirm that the Company's XTO natural gas operations, which included Exxon's RMDG assets, ████████████████████████████████ as a result of historically low natural gas prices, further supporting Plaintiff's allegation that Exxon's RMDG assets were substantially impaired by year-end 2015, causing the Company's earnings to be significantly overstated in Exxon's 2015 Form 10-K as a result.  ECF No. 89-4, Ex. K at App. 305.  This evidence, which was not addressed – let alone undermined – by the NYAG Decision, strongly supports Plaintiff's claims.

- 2 -

At bottom, the Motion is nothing more than a flawed attempt by Defendants to escape Plaintiff's well-pled and factually supported federal securities claims by leveraging a favorable ruling from a New York state trial court concerning factually and legally distinct New York state law claims and mischaracterizing the claims at issue here. The Motion provides no valid basis for reconsidering the Court's MTD Order and should therefore be denied.

## II.     RELEVANT BACKGROUND

The Complaint was filed on July 26, 2017, asserting claims against Defendants for violating §§10(b) and 20(a) of the Exchange Act. *See* ECF No. 36. Contrary to Defendants' assertions, the Complaint is not "premised" on the NYAG's climate allegations. Mtn. at 1. Rather, the gravamen of the Complaint is that Defendants misled investors and violated GAAP by, among other things, failing to properly account for and disclose in Exxon's financial statements and SEC filings massive losses, write-downs and impairments relating to Exxon's RMDG assets and Canadian bitumen operations, which were struggling mightily during the Class Period. *See, e.g.*, ¶¶14-18, 141, 144, 169-194. Separately, the Complaint also alleges – as an alternative theory of liability – that Defendants misrepresented the manner in which Exxon purportedly applied a proxy cost of carbon in connection with its investment analyses. *See, e.g.*, ¶191.

On August 14, 2018, this Court issued a Memorandum Opinion and Order concerning Defendants' motions to dismiss the Complaint and strike certain materials attached to the Complaint, including a sworn affirmation from the NYAG. *See* MTD Order. The Court granted in part and denied in part Defendants' motion to strike, generally declining to "consider any opinions or conclusions" in the materials, but giving consideration to "any facts" included in such materials. *Id*. at 5-12. With regard to the NYAG affirmation, the Court expressly held that it would ***not*** "consider the 'conclusory allegations, unwarranted deductions, or legal conclusions'" in the affirmation or "any statements in the Complaint based solely on the inferences and

- 3 -

conclusions made" in the affirmation, but that it would "consider the attached exhibits and any portion of the Complaint that references these documents in deciding the motion to dismiss." *Id*. at 12.

In largely denying Defendants' motion to dismiss, the Court found the Complaint adequately alleged that Defendants misled investors and violated GAAP through a series of misstatements pertaining to four distinct categories of information: (1) Defendants' failure to disclose and account for the massive $2 billion impairment of Exxon's RMDG assets at year-end 2015; (2) Defendants' misleading representations concealing the fact that Exxon was suffering massive losses within its Canadian bitumen operations (the most significant of which being Kearl); (3) Defendants' misrepresentations regarding the "proved reserves" status of Kearl; and (4) Defendants' purported use of a proxy cost of carbon in connection with its investment analyses. MTD Order at 17-29. The Court also found the Complaint adequately alleged scienter as to all Defendants except Woodbury, and that loss causation was adequately pled. *Id*. at 29-45. In addition, the Court found that Plaintiff sufficiently alleged control person claims under §20(a) of the Exchange Act as to all Defendants, including Woodbury. *Id*. at 46.

On September 11, 2018, Defendants filed their *first* motion for reconsideration of the MTD Order, essentially arguing that the Court was wrong to find that Plaintiff had adequately pled the scienter element of its claims. ECF No. 69. Following briefing by all parties, the Court summarily denied Defendants' first motion for reconsideration. ECF No. 80.

On December 10, 2019, Justice Ostrager issued the NYAG Decision following a 12-day bench trial in the NYAG action. *Exxon Mobil*, 2019 WL 6795771. The NYAG Decision found that the NYAG failed to establish a right to relief for any of the New York state law claims at issue in that case, *none* of which are at issue here and all of which were strictly limited to Exxon's "public disclosures concerning how [Exxon] accounted for past, present and future climate change

- 4 -

risks." *Id*. at *1. The NYAG Decision did *not* adjudicate any claims concerning: Exxon's impaired RMDG assets; the fact that Defendant's concealment of that impairment allowed Exxon to overstate its earnings by more than $2 billion in the Company's SEC filings, including its 2015 Form 10-K, and meet analysts' consensus EPS expectations at year-end 2015; or the fact that Kearl – or any Canadian bitumen operation, for that matter – was suffering huge operating losses in 2015. *See id.* at *19-*20 ("[T]here is no claim in this case that any disclosure in ExxonMobil's Form 10-K is misleading . . . [or] that anything ExxonMobil is alleged to have done or failed to have done affected ExxonMobil's balance sheet, income statement, or any other financial disclosure."). In addition, neither Plaintiff nor any of the Individual Defendants were parties to the NYAG action.

More than seven months after the NYAG Decision was issued, Defendants filed the present Motion as well as a supplemental brief opposing Plaintiff's motion for class certification.

## III.   ARGUMENT

Defendants' Motion rests on the misguided assertion that this case "rises or falls" with the factual allegations rejected by Justice Ostrager in the NYAG Decision. Mtn. at 7. In truth, Plaintiff's claims concern several misrepresentations and transactions that were not at issue in the NYAG trial, are not addressed by the NYAG Decision, and are supported by well-pled factual allegations that have no connection to the NYAG action. Accordingly, Plaintiff's claims can be proven through evidence that was not considered or addressed by the NYAG Decision, as the limited evidence produced to date confirms. Moreover, because the NYAG Decision has no legally binding or preclusive effect upon Plaintiff's claims, even those allegations in the Complaint that do touch upon matters addressed by the NYAG Decision can be properly considered by this Court in assessing the sufficiency of Plaintiff's Complaint. In any event, because Plaintiff

- 5 -

4848-5015-4189.v2

adequately alleges claims under §§10(b) and 20(a) of the Exchange Act without needing to rely on any such allegations or evidence, Defendants' Motion should be denied.

**A.      Plaintiff's Claims Are Not Dependent on the Evidence or Allegations at Issue in the NYAG Decision**

Defendants' contention that Justice Ostrager's findings in the NYAG Decision render Plaintiff's claims implausible relies on a mischaracterization of Plaintiff's claims that vastly overstates their dependence upon factual allegations raised in the NYAG action. As detailed below, at least three of the four categories of misrepresentations upheld by the Court's MTD Order are supported by well-pled factual allegations that have no connection to the NYAG Decision.

**1.      Plaintiff's Allegations Regarding Exxon's Impaired RMDG Assets**

The Complaint alleges that Exxon's SEC filings, including its 2015 Form 10-K, violated GAAP and misled investors by failing to disclose and properly account for the fact that Exxon's RMDG assets were significantly impaired by year-end 2015 and throughout 2016. *See, e.g.*, ¶¶185-194, 270, 279, 281, 298, 307, 311, 316, 366-376. The Court's MTD Order found that these allegations sufficiently alleged a material misrepresentation. MTD Order at 19-22. Defendants' contention that these allegations are now implausible because they "rest on allegations that Justice Ostrager rejected" is incorrect. Mtn. at 9.

As the Court recognized in the MTD Order, Plaintiff's claims regarding Exxon's impaired RMDG assets are supported by several well-pled facts that have no connection to climate change or any facts addressed by the NYAG Decision. *See* MTD Order at 3, 19-20. These alleged facts include massive impairment charges and/or divestitures taken by nearly all of Exxon's peers' RMDG operations, as a result of the prolonged natural gas price slump during 2014 and 2015, while Defendants refused to take any such write-downs. ¶¶156-164, 187. They also include a comparison of key impairment-related factors – including natural gas pricing data and Exxon's

- 6 -

gas production costs – at year-end 2015 to the same factors at year-end 2016, all of which indicate that the conditions impacting the outlook for Exxon's RMDG assets were actually *much worse* at year-end 2015 (when Defendants falsely represented that the assets were not impaired) than they were at year-end 2016 (when Defendants finally conceded that Exxon's RMDG assets were impaired by more than $2 billion). ¶¶189-190. Specifically, the Complaint alleges that the single largest determinative factor in any impairment analysis for Exxon's RMDG assets – the natural gas spot price – *increased by 62%* from year-end 2015 to year-end 2016, while Exxon's average gas production costs *decreased by nearly $2/barrel equivalent* during this same period. ¶189. These allegations – which are illustrated by the chart below and have absolutely nothing to do with the climate change allegations tried in the NYAG action – are sufficient to allege that Defendants' SEC filings misled investors and violated GAAP by concealing the fact that Exxon's RMDG assets were significantly impaired by year-end 2015.



Thus, while it is true the Complaint alleges Plaintiff's claims regarding Exxon's impaired RMDG assets are "*further bolstered*" by evidence disclosed by the NYAG concerning Exxon's failure to incorporate proxy costs into its impairment analysis, such evidence by no means required

- 7 -

to prove Plaintiff's RMDG claims. ¶191. Moreover, Justice Ostrager's finding that the NYAG "failed to demonstrate that ExxonMobil's impairment disclosures and accounting practices in 2015 were inconsistent with GAAP" was strictly limited to Exxon's Mobile Bay operation, an oil facility located in the Gulf of Mexico that has no connection whatsoever to the RMDG assets at issue in this case. *See Exxon Mobil*, 2019 WL 6795771, at \*29-\*30. As such, that finding has nothing to do with Exxon's RMDG assets, which were not at issue in the NYAG trial and are not addressed by the NYAG Decision, and it has no impact on this case.

For the above reasons, Defendants' assertion that Plaintiff's claims concerning Exxon's impaired RMDG assets are "no longer plausible" is incorrect. Mtn. at 9-10.

### 2. Plaintiff's Allegations Regarding Defendants' Concealment of Canadian Bitumen Operating Losses

The Complaint alleges that Defendants violated GAAP and misled investors by concealing significant operating losses within Exxon's Canadian bitumen operations, the most significant of which being Kearl, while simultaneously disclosing in Exxon's 2015 Form 10-K that the Company's Canadian bitumen was generating profits of $5.87 per barrel. *See, e.g.*, ¶¶170-174, 276-277, 280, 301, 343. The Court's MTD Order expressly held that these allegations, which have nothing to do with the climate-related claims at issue in the NYAG Decision, "sufficiently pleaded" a material misrepresentation by Defendants. MTD Order at 22-25. Defendants' Motion, however, ***makes no mention*** of these allegations and fails to contend that the Court should reconsider its findings in the MTD Order regarding such allegations. *See* Mtn. at 7-10. As such, Defendants have waived any right to contest the Court's previous findings in connection with the Motion, and they have effectively conceded that the Complaint sufficiently pleads a material misrepresentation concerning Defendants' concealment of massive operating losses within Exxon's Canadian bitumen operations. *See Jones v. Cain*, 600 F.3d 527, 541 (5th Cir. 2010) ("Arguments raised for the first time in a reply brief are generally waived."); *Loyalty Conversion*

- 8 -

4848-5015-4189.v2

*Sys. Corp. v. Am. Airlines, Inc.*, 66 F. Supp. 3d 795, 811 (E.D. Tex. 2014) ("Failure to raise an argument in a motion waives the argument; raising it for the first time in a reply memorandum is too late.").

Defendants' failure to address Plaintiff's allegations concerning Defendants' concealment of losses within their Canadian bitumen operations is hardly surprising, however, given that these allegations have no relation whatsoever to any of the climate-related allegations tried in the NYAG action.  Instead, as this Court recognized in the MTD Order, these allegations are based on Plaintiff's detailed analysis of information contained in public filings by Exxon's subsidiary, Imperial (the last of which was not made available to the public until three weeks after the close of the Class Period), Exxon's October 28, 2016 and January 31, 2017 corrective disclosures, and comprehensive analysis of market price data (MTD Order at 23; *see* ¶¶170-174), and the limited discovery produced in this action to date confirms that the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮ were ***even more egregious*** than alleged in the Complaint, as further detailed below.  *See* §III.C., *infra*.

### 3.    Plaintiff's Allegations Regarding the "Proved Reserves" Status of Exxon's Kearl Operation

The Complaint alleges that Defendants violated GAAP and misled investors by concealing their knowledge throughout 2016 that Exxon's Kearl operation would no longer satisfy the SEC definition for proved reserves at year-end 2016, absent an extraordinary – and, by Exxon's own estimates, unexpected – rise in the price of oil.  *See, e.g.*, ¶¶177-184.  The Court's MTD Order found that these allegations sufficiently alleged a material misstatement.  MTD Order at 25-29. Defendants' contention that Justice Ostrager's findings in the NYAG Decision now render these allegations implausible is incorrect.  Mtn. at 9.

As the Court recognized in the MTD Order, Plaintiff's claims regarding the "proved reserves" status of Exxon's Kearl operation are supported by several well-pled facts that have no

- 9 -

4848-5015-4189.v2

connection to climate change or any facts addressed by the NYAG Decision. *See* MTD Order at 3, 25-29. These alleged facts include Plaintiff's detailed analysis of information set forth in Exxon's October 28, 2016 and January 31, 2017 corrective disclosures, as well as the "standardized measure of discounted future net cash flows related to proved oil and gas reserves" schedule reported in Imperial's SEC filings, the average WCS benchmark spot price, year-end reserve reports filed by Imperial with the Canadian Securities Administrators, the massive operating losses within Exxon's Canadian bitumen operations and Exxon's decision to discretely cancel previously announced expansion plans for Kearl and dramatically reduce its capital expenditures for the operation. ¶¶176-184. As such, it is not surprising that the MTD Order's analysis of Defendants' alleged misrepresentations concerning the "proved reserves" status of Exxon's Kearl operation fails to mention or rely on ***any allegations*** related to the issues of climate change or Defendants' use of proxy costs in connection with its "proved reserves" analyses. *See* MTD Order at 25-29.

Simply put, Plaintiff's claims regarding the "proved reserves" status of Exxon's Kearl operation do not depend on any of the climate-related allegations or evidence at issue in the NYAG Decision, and the Court's MTD Order did not rely on any such allegations in assessing those claims. As such, Defendants' assertion that the NYAG Decision renders these claims implausible lacks any merit.

### 4. Plaintiff's Allegations Regarding Defendants' Purported Use of Carbon Proxy Costs

The Complaint alleges that Defendants violated GAAP and misled investors by misrepresenting the manner in which Exxon purportedly applied a carbon proxy cost to its internal profitability and impairment analyses. *See, e.g.*, ¶¶136, 305. The Court's MTD Order found that these allegations sufficiently alleged material misrepresentations. MTD Order at 17-19. While it is true that the NYAG Decision addressed some of the evidence underlying these specific

- 10 -

allegations, Defendants' contention that Justice Ostrager's findings render Plaintiff's claims implausible is both factually and legally incorrect. Mtn. at 7-8.

As detailed below, because the NYAG Decision has no legally binding or preclusive effect on Plaintiff's claims, it cannot be used to defeat the general proposition that the Court must "accept all factual allegations in the complaint as true" and "draw all reasonable inferences in the plaintiff's favor" in deciding Defendants' motion to dismiss. *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009). Thus, Plaintiff must be afforded its own opportunity to prove each of the allegations previously sustained by this Court, including those that touch upon matters addressed by the NYAG Decision. *See* §III.B., *infra*. Moreover, as detailed above, the Complaint adequately alleges multiple material misrepresentations and GAAP violations by Defendants that do not rely upon any allegations or evidence regarding Exxon's purported use of carbon proxy costs. *See* §III.A.1.-3., *supra*. As such, Plaintiff does not need to prove any of its carbon proxy allegations in order to establish Defendants' liability under the Exchange Act.

In addition, unlike the NYAG, Plaintiff's carbon proxy allegations simply provide an alternative – but by no means necessary – avenue of additional evidentiary support for Plaintiff's federal securities claims, which are focused on Defendants' misrepresentations and GAAP violations in SEC filings and financial statements. Specifically, Plaintiff alleges that Defendants: (1) violated GAAP by failing to properly include Exxon's publicly stated carbon proxy costs in the Company's impairment analyses for its RMDG assets; (2) misrepresented that Exxon avoided having to recognize an impairment for its RMDG assets by being more conservative than its competitors, in part, by including its publicly stated carbon proxy costs in the Company's internal analyses regarding these assets; and (3) concealed that Exxon was not, in fact, applying its publicly stated carbon proxy costs to the Company's internal profitability analyses, because doing so

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See, e.g.*, ¶¶136, 191-194, 305, 371; *see also* ECF No. 89-4,

Ex. L at App. 339; ECF No. 105-4, Ex. 4 at App. 54; ECF No. 109-1, Ex. 7 at App. 92 (308:2-6). These specific allegations, which merely offer alternative avenues of proof for Plaintiff's asset impairment claim, were not tried by the NYAG and are not addressed by the NYAG Decision.

### 5.    The NYAG Decision Does Not Render Plaintiff's Allegations Regarding Materiality Implausible

Defendants' materiality argument completely ignores the accounting-based claims described above, all of which were found in the MTD Order to sufficiently plead material misstatements and/or actionable omissions, instead focusing solely on the NYAG Decision's finding that the climate-related claims tried in that case were not material. Mtn. at 10. In so doing, Defendants fail to provide any basis for reconsidering the MTD Order's finding of materiality as to Plaintiff's accounting-based claims, and they have waived any right to contest such findings in connection with the Motion. *See Jones*, 600 F.3d at 541; *Loyalty Conversion Sys.*, 66 F. Supp. 3d at 811. Of course, this is not surprising, given that the NYAG Decision's findings have no impact on such claims or their materiality, for the reasons set forth *supra*. *See* §III.A.1.-3., *supra*.

As this Court recognized in the MTD Order, the Complaint supports its allegations of materiality for Plaintiff's accounting-based claims with numerous well-pled factual allegations that have no connection to the climate issues addressed by the NYAG Decision. *See* MTD Order at 3, 21, 23, 24, 28. These alleged facts include the size and significance of Exxon's Canadian bitumen operations (which accounted for 31% of Exxon's total liquids proved reserves and 18% of combined liquids and natural gas worldwide proved reserves at year-end 2015) and, more specifically, the Kearl operation (which required an investment of more than $20 billion by Exxon to develop and accounted for approximately 75% of the Company's Canadian bitumen operations' proved reserves). *See, e.g.*, ¶¶97, 101, 104, 173. They also include the magnitude of the impairment charge taken for Exxon's RMDG assets at year-end 2016 (more than $2 billion, which reduced Exxon's earnings by nearly 20%) and the fact that Exxon's failure to take an appropriate

- 12 -

impairment charge for its RMDG assets at year-end 2015 allowed the Company to hide the fact that Exxon did not meet analysts' consensus EPS expectations at year-end 2015. *See e.g.*, ¶¶188, 232, 370. Defendants' expert, Dr. Ferrell, also concedes that two of Plaintiff's alleged "corrective disclosures (July 29, 2016 and October 28, 2016)" were followed by statistically significant stock price declines and "pertained to reserves de-booking and asset impairment," "not the use of proxy costs." ECF No. 98-12, Ex. 11 at App. 101, ¶11; ECF No. 103, Ex. 12 at App. 213, Figure 1. These facts conclusively establish materiality for Plaintiff's accounting-based claims, and they were never at issue in the NYAG trial or addressed by the NYAG Decision. *See Exxon Mobil*, 2019 WL 6795771, at *20 ("there is no allegation in this case . . . that anything ExxonMobil is alleged to have done or failed to have done affected ExxonMobil's balance sheet, income statement, or any other financial disclosure").

Moreover, as further detailed below, because the NYAG Decision has no legally binding or preclusive effect upon Plaintiff's claims, Justice Ostrager's findings regarding the materiality of the NYAG's climate-related claims should not preclude Plaintiff from proving the materiality of its claims regarding even those allegations that do touch upon matters addressed by the NYAG Decision, such as Exxon's use of its carbon proxy cost. *See* §III.B., *infra*.

### 6.    The NYAG Decision Does Not Defeat the Complaint's Allegations of a Strong Inference of Scienter

Defendants' scienter argument rests on the flawed premise that the NYAG Decision rejected allegations that Exxon "made [the] *same* allegedly false and misleading public statements [at issue here] with scienter." Mtn. at 10. As detailed above, several of the alleged misrepresentations upheld by the Court in the MTD Order were *never at issue* in the NYAG trial and therefore are not addressed by the NYAG Decision. Justice Ostrager's findings regarding Exxon's supposed lack of scienter regarding *other* alleged misstatements simply has no bearing on Defendants' state of mind concerning the completely distinct transactions, conduct and

- 13 -

4848-5015-4189.v2

statements described above.[2]  This is particularly true given that *none* of the Individual Defendants responsible for the alleged misrepresentations in this case were defendants in the NYAG action.

In finding that the Complaint adequately alleged scienter against all Defendants except Woodbury, the Court relied on "numerous particularized facts" that have no connection to the climate issues addressed by the NYAG Decision.  *See* MTD Order at 3-4, 16, 32-33, 36, 38, 40, 42.  These allegations include the fact that Defendants were "particularly motivated to maintain [Exxon's] AAA credit rating in order to allegedly avoid a significantly negative impact that a drop in its credit rating would have on the March 2016 $12 billion public debt offering."  *Id.* at 32-33.  Specifically, the Complaint alleges that by the end of 2015, Exxon found itself in dire need of an infusion of capital as a result of slumping oil and gas prices and Exxon's unsustainable commitment to shareholder payouts, the latter of which Tillerson described as "a high priority" and "*why we are important to people*."  ¶¶85, 195-198, 393-397.  Exxon thus undertook an eight-tranche $12 billion debt offering in March 2016 – *the single largest debt offering in the Company's history* – in order to provide it with the much needed funds.  ¶198.  Maintaining Exxon's coveted AAA credit rating in advance of this offering was "critically important" to Defendants, given that any decline in Exxon's rating would have significant, negative implications on the debt offering's terms.  ¶¶15, 198-199, 201, 206-214.  Accordingly, Defendants were highly motivated to conceal the problems with Exxon's impaired RMDG assets and struggling Canadian

---

[2]   For example, Justice Ostrager's findings that Exxon's executives were supposedly "uniformly committed to rigorously discharging their duties" and unaware of any scheme to "mislead investors about the manner in which [Exxon] managed climate change" are *irrelevant* to Defendants' scienter concerning the alleged misrepresentations regarding Kearl, Exxon's RMDG assets and Defendants' concealment of massive operating losses, because the "duties" and knowledge relevant to Defendants' scienter for those distinct misrepresentations were *not at issue* in the NYAG trial; thus, the relevant evidence concerning Defendants' state of mind as to those alleged misrepresentations was not presented to Justice Ostrager.  *See* Mtn. at 11.  Moreover, as further detailed *infra*, because the NYAG Decision has no legally binding or preclusive effect upon Plaintiff's claims, Justice Ostrager's findings should not preclude Plaintiff from offering its own proof regarding Defendants' scienter for even those allegations that do touch upon matters addressed by the NYAG Decision, such as Exxon's use of its carbon proxy cost.  *See* §III.B., *infra*.

- 14 -

bitumen operations, 75% of the reserves for which were located at Kearl. *Id.* The MTD Order properly concluded that these allegations – which have nothing to do with any of the climate issues addressed by the NYAG Decision – "sufficiently alleged [Exxon's] motive, supporting a strong inference of scienter as to all Defendants." MTD Order at 33; *see also id.* at 36, 38, 40.[3]

The MTD Order also relied on several other well-pled facts unrelated to any of the climate issues addressed by the NYAG Decision to support its findings of scienter. For example, the Court found Plaintiff "pleaded facts supporting a strong inference of scienter by alleging Defendants Tillerson, Swiger, and Rosenthal signed ExxonMobil's Form 10-Ks and by Defendant Rosenthal signing all but two of the Form 10-Qs filed with the SEC during the Class Period." MTD Order at 34-35; *compare Exxon Mobil*, 2019 WL 6795771, at *20 ("[T]here is no claim in this case that any disclosure in ExxonMobil's Form 10-K is misleading . . . [or] that anything ExxonMobil is alleged to have done or failed to have done affected ExxonMobil's balance sheet, income statement, or any other financial disclosure."). In addition, the Court relied on allegations that Defendants Tillerson and Swiger both "received in-depth briefings on and actively engaged in discussions on ExxonMobil's financial position," as well as the fact that "Defendant Swiger held in-depth discussions in analyst meetings, in which he demonstrated his 'intimate awareness' of ExxonMobil's reserves, financial results, and investment and valuation process." *Id.* at 36, 38. Moreover, Defendants cannot in good faith contest scienter, as the limited discovery produced in this action to date conclusively proves that ▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮  ECF No. 89-4, Ex. J at App. 258, 263, 268; ECF No. 89-4, Ex. K at App. 305.

---

[3]   *See also Neiman v. Bulmahn*, 854 F.3d 741, 748 (5th Cir. 2017) ("[T]his court [in Goldstein] found that the company's 'need to complete a "crucial" $129 billion merger . . . gave the company a motive to inflate its financial results.'") (citing *Goldstein v. MCI WorldCom*, 340 F.3d 238, 242, 250 (5th Cir. 2003)).

4848-5015-4189.v2

Viewed holistically, the above allegations – none of which concern the climate issues addressed by the NYAG Decision – support the Court's finding in the MTD Order that the Complaint sufficiently pleads a strong inference of scienter as to all Defendants except Woodbury. MTD Order at 42.[4]

**B.      The NYAG Decision Has No Legal Significance to This Action**

When deciding a motion to dismiss, a court must "accept all factual allegations in the complaint as true" and "draw all reasonable inferences in the plaintiff's favor." *Lormand*, 565 F.3d at 232.  Moreover, "[i]n reviewing a Rule 12(b)(6) motion, which tests the legal sufficiency of the claims stated in the complaint, a court must look solely at the pleadings themselves." *Bachow v. Swank Energy Income Advisors, LP*, No. 3-09-CV-0262-K, 2010 WL 70520, at *2 (N.D. Tex. Jan. 6, 2010) (citing *Jackson v. Procunier*, 789 F.2d 307, 309-10 (5th Cir. 1986)).  In the event that the Court considers Defendants' extrinsic evidence, "'the motion must be treated as one for summary judgment under Rule 56,'" and "'[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.'"  *Harris v. Progressive Ins., Inc.*, No. 3:13-cv-3983-K, 2014 WL 712446, at *2 (N.D. Tex. Feb. 24, 2014) (Kinkeade, J.) (quoting Fed. R. Civ. P. 12(d)).

Defendants' Motion contends that, because the "NYAG Decision is a matter of public record, subject to judicial notice," the Court may rely on it to ***resolve factual disputes*** regarding the allegations in Plaintiff's Complaint.  Mtn. at 6-7.  This contention is wrong.  "[T]the Fifth Circuit has determined that a court may take judicial notice of a 'document filed in another court . . . to establish the fact of such litigation and related filings,' but '***cannot take notice of the factual findings of another court.***'"  *SB Int'l, Inc. v. Jindal*, No. 3:06-CV-1174-G ECF, 2007 WL 1411042, at *1

---

[4]     *See also Tellabs, Inc. v. Makor Issues & Rights Ltd.*, 551 U.S. 308, 322-23 (2007) ("The inquiry . . . is whether ***all*** of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard.") (emphasis in original).

4848-5015-4189.v2

(N.D. Tex. May 14, 2007) (quoting *Taylor v. Charter Med. Corp.*, 162 F.3d 827, 829 (5th Cir. 1998)). Thus, while it is true the Court may take judicial notice of the NYAG Decision to "establish the fact of such litigation and related filings," Defendants ***cannot*** use judicial notice of the NYAG Decision's factual findings to resolve disputed facts in their favor at the pleadings stage. *Id.* at *1.

An exception to these rules may occur where the doctrine of res judicata precludes a party from litigating certain claims or issues decided by another competent court. *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). This doctrine, however, only applies where the party to be precluded was either a party to the previous action or in privity with a party to that action. *See id.* at 892-94. As further detailed in Plaintiff's Supplemental Response, Plaintiff was neither a party to the NYAG action nor in privity with a party to the NYAG action. *See* Supp. Resp. at 7-10. As such, the NYAG Decision has no legally binding or preclusive effect on Plaintiff's claims here.[5]

Because the NYAG Decision has no legally binding or preclusive effect on Plaintiff's claims, it cannot be used to defeat the general proposition that the Court must "accept all factual allegations in the complaint as true" and "draw all reasonable inferences in the plaintiff's favor" in deciding Defendants' motion to dismiss. *Lormand*, 565 F.3d at 232. As such, any suggestion by Defendants that the factual findings in the NYAG Decision render Plaintiff's claims implausible is incorrect. To the contrary, Plaintiff must be afforded an opportunity to prove those allegations previously sustained by this Court, including those that touch upon matters addressed by the NYAG Decision, such as the carbon proxy allegations described *supra*.

---

[5]    The Supplemental Response also provides additional reasons why the NYAG Decision does not preclude Plaintiff's claims, particularly those pertaining to Plaintiff's allegations concerning the impaired RMDG assets and the massive undisclosed operating losses at Kearl. *See* Supp. Resp. at 10-19.

4848-5015-4189.v2

C.     **The Limited Evidence Produced to Date Strongly Supports Plaintiff's Claims**

As established above, Defendants' contention that the NYAG Decision renders Plaintiff's claims implausible fails for two independent reasons: Plaintiff's claims are not dependent upon the evidence at issue in the NYAG Decision; and the NYAG Decision has no legally binding or preclusive effect on Plaintiff's claims. This conclusion is further bolstered by the fact that the extremely limited evidence produced to date provides strong support for Plaintiff's claims.

For example, internal documents produced by Defendants confirm that its most important Canadian bitumen operation, Kearl, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ECF No. 89-4, Ex. J at App. 268. Kearl was a massive project that Exxon had invested $20 billion in, which accounted for 75% of Exxon's Canadian bitumen proved reserves and 14% of Exxon's total corporate proved reserves worldwide at year-end 2015. These documents also confirm that, as of December 2015, Kearl had ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id*. Given Kearl's significance to Exxon's present operations and future prospects, this evidence strongly supports Plaintiff's claim that Defendants violated GAAP and materially misled investors by concealing ▮▮▮▮▮▮, while simultaneously representing in Exxon's 2015 Form 10-K that the Company's Canadian bitumen was generating profits of $5.87 per barrel. *See, e.g.*, ¶¶170-174, 343. None of this evidence was at issue in the NYAG trial or addressed by the NYAG Decision.

Other internal Exxon documents confirm that the Company's XTO natural gas operations, which included Exxon's RMDG assets, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ as a result of historically low natural gas prices. ECF No. 89-4, Ex. K at App. 305. This evidence, which was not at issue in the NYAG trial or addressed by the NYAG Decision, further confirms Plaintiff's claim that Defendants violated GAAP and materially misled investors by failing to disclose and properly account for Exxon's significantly impaired RMDG assets in connection with the Company's SEC filings, including its 2015 Form 10-K.

- 18 -

## IV.    CONCLUSION

For the reasons set forth above, Plaintiff respectfully submits that the Court should deny Defendants' second motion for reconsideration and uphold in its entirety the Court's previous ruling substantially denying Defendants' motion to dismiss.

DATED:  October 2, 2020

Respectfully submitted,

KENDALL LAW GROUP, PLLC
JOE KENDALL (Texas Bar No. 11260700)

_____s/ JOE KENDALL_____
JOE KENDALL

3811 Turtle Creek Blvd., Suite 1450
Dallas, TX  75219
Telephone:  214/744-3000
214/744-3015 (fax)
jkendall@kendalllawgroup.com

BALON B. BRADLEY LAW FIRM
BALON B. BRADLEY (Texas Bar No. 02821700)
11910 Greenville Avenue, Suite 220
Dallas, TX  75243
Telephone:  972/991-1582
972/755-0424 (fax)
balon@bbradleylaw.com

Local Counsel

ROBBINS GELLER RUDMAN
  & DOWD LLP
SPENCER A. BURKHOLZ
X. JAY ALVAREZ
SCOTT H. SAHAM
NATHAN R. LINDELL
SARA B. POLYCHRON
ERIKA OLIVER
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
spenceb@rgrdlaw.com
jaya@rgrdlaw.com
scotts@rgrdlaw.com
nlindell@rgrdlaw.com
spolychron@rgrdlaw.com
eoliver@rgrdlaw.com

Lead Counsel for Plaintiff

- 19 -

4848-5015-4189.v2

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on October 2, 2020, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

<u>s/ JOE KENDALL</u>
JOE KENDALL

KENDALL LAW GROUP, PLLC
3811 Turtle Creek Blvd., Suite 1450
Dallas, TX  75219
Telephone:  214/744-3000
214/744-3015 (fax)

Email: jkendall@kendalllawgroup.com

# Mailing Information for a Case 3:16-cv-03111-K Ramirez v. Exxon Mobil Corporation et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **X Jay Alvarez**
  JayA@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Justin Anderson**
  janderson@paulweiss.com,mao_fednational@paulweiss.com

- **Mary K Blasy**
  mblasy@rgrdlaw.com,e_file_ny@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Balon B Bradley**
  balon@bbradleylaw.com,balonbb@aol.com,anneh@bbradleylaw.com,tracy@bbradleylaw.com

- **Nina Cortell**
  nina.cortell@haynesboone.com,denise.stilz@haynesboone.com,robin.hart@haynesboone.com

- **Patrick Coughlin**
  patc@rgrdlaw.com

- **Ralph H Duggins**
  rduggins@canteyhanger.com,adrake@canteyhanger.com

- **Royal Furgeson**
  royal@furgesonlaw.com

- **Brian Matthew Gillett**
  brian.gillett@squirepb.com,ecf@squirepb.com,janine.schiell@squirepb.com

- **Daniel H Gold**
  daniel.gold@haynesboone.com,elaine.hadaway@haynesboone.com

- **John C Herman**
  jherman@rgrdlaw.com,smeister@rgrdlaw.com

- **Jonathan Hurwitz**
  jhurwitz@paulweiss.com,mao_fednational@paulweiss.com

- **Joe Kendall**
  jkendall@kendalllawgroup.com,administrator@kendalllawgroup.com

- **Daniel Kramer**
  DKramer@paulweiss.com,mao_fednational@paulweiss.com

- **Gregory F Laufer**
  GLaufer@paulweiss.com,BTannenbaum@paulweiss.com,mao_fednational@paulweiss.com,MStachel@paulweiss.com

- **Nathan R. Lindell**
  nlindell@rgrdlaw.com,karenc@rgrdlaw.com,e_file_sd@rgrdlaw.com,susanw@rgrdlaw.com

- **D Patrick Long**
  patrick.long@squirepb.com,ecf@squirepb.com,annie.purcell@squirepb.com,docketingrequest@squirepb.com,janine.schiell@squirepb.com

- **Erika Oliver**
  eoliver@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Sara Bierl Polychron**
  spolychron@rgrdlaw.com

- **Samuel H Rudman**
  srudman@rgrdlaw.com,e_file_ny@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Scott H Saham**
  scotts@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Daniel Toal**
  DToal@paulweiss.com,mao_fednational@paulweiss.com

- **Theodore V. Wells**
  twells@paulweiss.com,mao_fednational@paulweiss.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)