UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF TEXAS

DALLAS DIVISION

| | | |
|---|---|---|
| PEDRO RAMIREZ, JR., Individually and on Behalf of All Others Similarly Situated, | § § § | Civil Action No. 3:16-cv-03111-K |
| | § | <u>CLASS ACTION</u> |
| Plaintiff, | § § | |
| | § | |
| vs. | § § | |
| | § | |
| EXXON MOBIL CORPORATION, et al., | § § | |
| | § | |
| Defendants. | § § | |

**LEAD PLAINTIFF'S RESPONSE TO DEFENDANTS' SUPPLEMENTAL BRIEF**

**[REDACTED]**

4845-6493-3837.v1-10/2/20

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION .................................................................................................1

II.     STATEMENT OF FACTS .................................................................................4

        A.      Unlike the NYAG, Plaintiff Alleges Defendants Concealed that Kearl Was
                Suffering Large Operating Losses ....................................................................4

        B.      Unlike the NYAG, Plaintiff Alleges Defendants Concealed that Exxon's
                RMDG Assets Were Impaired .............................................................................5

III.    ARGUMENT.......................................................................................................8

        A.      Plaintiff Was Not in Privity with the NYAG and Did Not Have a "Full and
                Fair Opportunity" to Litigate Its Claims..................................................8

        B.      Plaintiff's Claims Are Not Precluded by the NYAG's Adjudication of
                Unrelated Claims ...............................................................................................10

                1.      Plaintiff's Accounting-Based Claims Do Not Stem from the Same
                        Transaction(s) as the NYAG Action............................................................11

                2.      Plaintiff's Proxy Cost Allegations Are Not Essential to Plaintiff's
                        Claims, But Simply Provide an Alternative Path to Relief.........................17

        C.      The NYAG Did Not and Could Not Seek to Recover for the Economic
                Losses Suffered by Plaintiff and the Class ............................................19

        D.      None of Defendants' Arguments Defeat Class Certification...............................20

                1.      Defendants' Merits-Based Arguments Are Inappropriate at This
                        Stage...........................................................................................................20

                2.      The Few Class Certification-Related Arguments Defendants Raise
                        Fail .............................................................................................................21

IV.     CONCLUSION..................................................................................................25

- i -

# TABLE OF AUTHORITIES

**Page**

## CASES

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013) ...............................................................................................20, 21

*Brodsky v. Carter*,
No. 15-CV-3469 (GBD) (DF), 2015 WL 13746671
(S.D.N.Y. Dec. 15, 2015) ..............................................................................................19

*Buechel v. Bain*,
97 N.Y.2d 295, 740 N.Y.S.2d 252 (2001) .....................................................................8

*Burgos v. Hopkins*,
14 F.3d 787 (2d Cir. 1994).............................................................................................19

*Computer Assocs. Int'l v. Altai, Inc.*,
126 F.3d 365 (2d Cir. 1997)............................................................................................8

*Dinkins v. Leavitt*,
No. 1:07-CV-486-TWT, 2008 WL 447503
(N.D. Ga. Feb. 13, 2008), *aff'd*, 315 F. App'x 171
(11th Cir. 2008)........................................................................................................18, 19

*Eatmon v. Palisades Collection LLC*,
No. 2:08-CV-306-DF-CE, 2011 WL 147680
(E.D. Tex. Jan. 18, 2011) ..............................................................................................23

*Emps. Fire Ins. Co. v. Brookner*,
47 A.D.3d 754, 850 N.Y.S.2d 554 (2d Dep't 2008) .....................................................12

*Erica P. John Fund, Inc. v. Halliburton Co.*,
563 U.S. 804 (2011)........................................................................................................21

*Farren v. Lisogorsky*,
87 A.D.3d 713, 928 N.Y.S.2d 765 (2d Dep't 2011) .......................................................8

*Gaynor v. Miller*,
No. 3:15-CV-545-TAV-DCP, 2018 WL 3751606
(E.D. Tenn. Aug. 6, 2018) .............................................................................................22

*Green v. Santa Fe Indus., Inc.*,
70 N.Y.2d 244, 519 N.Y.S.2d 793 (1987) ...................................................................8, 9

**Page**

*Gutierrez v. LVNV Funding, LLC*,
　　No. EP-08-CV-225-DB, 2009 WL 10699516
　　(W.D. Tex. Mar. 16, 2009) ........................................................................................24

*Henry v. Cash Today, Inc.*,
　　199 F.R.D. 566 (S.D. Tex. 2000) ..............................................................................23

*In re Cobalt Int'l Energy, Inc. Sec. Litig.*,
　　No. H-14-3428, 2017 WL 2608243
　　(S.D. Tex. June 15, 2017) ..............................................................................21, 22, 23

*In re Deepwater Horizon*,
　　739 F.3d 790 (5th Cir. 2014) .....................................................................................21

*In re Elec. Data Sys. Corp. Sec. Litig.*,
　　226 F.R.D. 559 (E.D. Tex. 2005),
　　*aff'd*, 429 F.3d 125 (5th Cir. 2005) ...........................................................................23

*In re En Pointe Techs., Inc. Sec. Litig.*,
　　No. 01cv0205 BEN (AJB), 2005 WL 8173598
　　(S.D. Cal. Feb. 16, 2005) ...........................................................................................23

*In re Hunter*,
　　4 N.Y.3d 260, 827 N.E.2d 269 (2005) .......................................................................15

*Interoceanica Corp. v. Sound Pilots, Inc.*,
　　107 F.3d 86 (2d Cir. 1997) ..............................................................................13, 14, 18

*Jones v. Cain*,
　　600 F.3d 527 (5th Cir. 2010) .....................................................................................13

*KB Partners I, L.P. v. Barbier*,
　　No. A-11-CA-1034-SS, 2013 WL 2443217
　　(W.D. Tex. June 4, 2013)............................................................................................23

*Ludlow v. BP, P.L.C.*,
　　800 F.3d 674 (5th Cir. 2015) .....................................................................................20

*Marchon Eyewear, Inc. v. Tura LP*,
　　No. 98 CV 1932(SJ), 2002 WL 31253199
　　(E.D.N.Y. Sept. 30, 2002)...........................................................................................16

*Marcus v. J.C. Penney Co., Inc.*,
　　No. 6:13-cv-736-MHS-KNM, 2016 WL 8604331
　　(E.D. Tex. Aug. 29, 2016) ..........................................................................................24

- iii -

**Page**

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*,
  547 U.S. 71 (2006)........................................................................................................3

*Monahan v. N.Y. City Dep't of Corr.*,
  214 F.3d 275 (2d Cir. 2000).........................................................................................12

*Mullen v. Treasure Chest Casino, L.L.C.*,
  186 F.3d 620 (5th Cir. 1999) ..................................................................................23, 24

*Paramount Pictures Corp. v. Allianz Risk Transfer AG*,
  31 N.Y.3d 64, 96 N.E.3d 737 (2018)...................................................................2, 12, 13

*Parker v. Blauvelt Volunteer Fire Co.*,
  93 N.Y.2d 343, 712 N.E.2d 647 (1999).........................................................................19

*People ex rel. Schneiderman v. Credit Suisse Sec. (USA) LLC*,
  7 N.Y.S.3d 244, 2014 WL 7665038 (N.Y. Cnty. 2014),
  *aff'd*, 145 A.D.3d 533, 47 N.Y.S.3d 236 (1st Dep't 2016).........................................9

*People v. Exxon Mobil Corp.*,
  119 N.Y.S.3d 829, 2019 WL 6795771 (N.Y. Cnty. 2019) ............................................ *passim*

*Pike v. Freeman*,
  266 F.3d 78 (2d Cir. 2001).............................................................................................12

*Richards v. Jefferson Cnty.*,
  517 U.S. 793 (1996)................................................................................................3, 8, 9

*Robinson v. Tex. Auto. Dealers Ass'n*,
  387 F.3d 416 (5th Cir. 2004) .........................................................................................22

*Rojas v. Romanoff*,
  186 A.D.3d 103, 128 N.Y.S.3d 189 (1st Dep't 2020) ................................................11, 12, 25

*SEC v. Thompson*,
  238 F. Supp. 3d 575 (S.D.N.Y. 2017)............................................................................15

*Sherwyn Toppin Mktg. Consultants, Inc.*
  *v. New York State Liquor Auth.*,
  103 A.D.3d 648, 958 N.Y.S.2d 794 (2d Dep't 2013) ..............................................................8

*Specialized Realty Servs., LLC v. Maikisch*,
  123 A.D.3d 801, 999 N.Y.S.2d 430 (2d Dep't 2014).....................................................17, 19

*Taylor v. Sturgell*,
  553 U.S. 880 (2008).................................................................................................. *passim*

- iv -

**Page**

*Texas v. United States Dep't of Labor*,
    929 F.3d 205 (5th Cir. 2019) ...................................................................................2, 9

*Unger v. Amedisys Inc.*,
    401 F.3d 316 (5th Cir. 2005) .......................................................................................20

*Waldman v. Vill. of Kiryas Joel*,
    207 F.3d 105 (2d Cir. 2000)..........................................................................................16

*Welch v. Shiffman*,
    80 A.D.2d 683, 436 N.Y.S.2d 430 (3d Dep't 1981) ....................................................12

*Whitney Lane Holdings, LLC v. Don Realty, LLC*,
    130 A.D.3d 1218, 14 N.Y.S.3d 516 (3d Dep't 2015) ....................................................8

*Williamson v. Bethlehem Steel Corp.*,
    468 F.2d 1201 (2d Cir. 1972)......................................................................................2, 9

## STATUTES, RULES AND REGULATIONS

Federal Rule Civil Procedure
    Rule 23 ...................................................................................................................3, 21
    Rule 23(a)....................................................................................................................20
    Rule 23(b) ...................................................................................................................20
    Rule 23(b)(3)...............................................................................................................21

4845-6493-3837.v1-10/2/20

## I.    INTRODUCTION

In this action, Lead Plaintiff Greater Pennsylvania Carpenters Pension Fund ("plaintiff")

alleges that as a result of defendants'[1] misrepresentations and GAAP violations regarding massive

operating losses relating to the Company's Canadian bitumen operations at Kearl and a significant

impairment of its Rocky Mountain Dry Gas assets ("RMDG Assets"), plaintiff and the Class

purchased Exxon common stock at artificially inflated prices, which plummeted upon disclosure of

the truth and resulted in massive damages.  The Court has twice rejected defendants' attempts to cut

plaintiff's federal securities claims off at the pleadings stage, finding they are adequately alleged.

ECF Nos. 62, 80.  Plaintiff patiently awaits its opportunity to prove them up through full fact

discovery, which is stayed pending resolution of its Motion for Class Certification ("Motion").  ECF

Nos. 86, 89-3; *see* ECF No. 68-1, ¶2.

In a filing styled as a "Supplemental Brief" in support of their opposition to plaintiff's

Motion, defendants ask the Court not to deny class certification, but rather to adjudicate plaintiff's

and the Class's claims on the merits by dismissing them.  *See* ECF No. 120 ("Supp. Brief").  They

assert this is appropriate because New York State Justice Barry Ostrager's December 10, 2019 order

adjudicating the New York Attorney General's ("NYAG") later-filed state law claims concerning

Exxon's public disclosures about how it "accounted for past, present and future climate change

risks" somehow precludes plaintiff from seeking a jury trial for federal statutory claims that ***were not***

– and ***could not*** have been – tried by the NYAG.  *People v. Exxon Mobil Corp.*, 119 N.Y.S.3d 829,

2019 WL 6795771, at *1 (N.Y. Cnty. 2019) ("NYAG Action").

Defendants are wrong.  To justify straying from the general rule that "'one is not bound by a

judgment *in personam* in a litigation in which he is not designated as a party'" (*Taylor v. Sturgell*,

---

[1]    The defendants in this action are Exxon Mobil Corporation ("Exxon" or the "Company"), Rex W. Tillerson, Andrew P. Swiger, Jeffrey J. Woodbury and David S. Rosenthal (collectively, "defendants").  Citations are omitted and emphasis is added throughout unless otherwise indicated.

- 1 -

553 U.S. 880, 884 (2008)), the doctrine of res judicata requires that two actions involve the same parties *and* the same claims.  Neither requirement is satisfied here.

First, the NYAG's claims exclusively concerned Exxon's purported misstatements regarding its management of climate-related risk; they did not address *any* of the alleged misrepresentations or GAAP violations concerning the massive undisclosed losses at Kearl or the impaired RMDG Assets that are at issue here.  Because plaintiff's claims will not be proved by the "'same evidence'" presented in the NYAG Action and "'the facts essential to the second were [not] present in the first'" (*Paramount Pictures Corp. v. Allianz Risk Transfer AG*, 31 N.Y.3d 64, 78, 96 N.E.3d 737, 747 (2018)), the two actions do not stem from the same transaction or series of transactions, and are thus not the same claims.  *Infra*, §III.B.

Second, there is no dispute that neither plaintiff nor *any* of the individual defendants who made the misrepresentations and omissions at issue here were parties to the NYAG Action.  Thus, "[f]or purposes of res judicata or collateral estoppel, the private citizens in this case are not bound by the Attorney General's action in the former case since they neither were parties to it."  *Williamson v. Bethlehem Steel Corp.*, 468 F.2d 1201, 1203 (2d Cir. 1972).  Rather, defendants hang their hat on the assertion that plaintiff is in privity with the NYAG, ignoring that it tried factually and legally distinct state law climate-risk claims and sought relief that Exxon itself described as "sound[ing] primarily in equity."  Appendix in Support of Lead Plaintiff's Response to Defendants' Supplemental Brief ("Appendix"), Ex. 1 at App. 2, filed concurrently herewith.  This assertion of privity lacks merit as it is undisputed that the NYAG did *not* pursue plaintiff's Kearl and RMDG claims – claims that defendants' own expert concedes were responsible for 100% of plaintiff's alleged economic injury. ECF No. 98-12, Ex. 11 at App. 101, ¶11; ECF No. 103, Ex. 12 at App. 213, Figure 1.  Because "'litigation by a government agency will not preclude a private party from vindicating a wrong that arises from related facts but generates a distinct, individual cause of action'" (*Texas v. United States*

- 2 -

*Dep't of Labor*, 929 F.3d 205, 213 (5th Cir. 2019)), and because plaintiff and the Class were not "adequately represented" by the NYAG (*Taylor,* 553 U.S. at 894; *Richards v. Jefferson Cnty.*, 517 U.S. 793, 798 (1996)), no privity exists. *Infra*, §III.A.

Further, defendants ignore that Congress intended to make "federal law, not state law, . . . the principal vehicle for asserting class-action securities fraud claims." *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 88 (2006). "The magnitude of the federal interest in protecting the integrity and efficient operation of the market for nationally traded securities cannot be overstated." *Id.* at 78. Defendants seek to upend this federal regulatory scheme by claiming that because the NYAG filed a tangentially related claim against Exxon, injured investors cannot avail themselves of their federal rights to seek compensation for their economic losses. This is not the law. *Infra*, §III.C.

Finally, and perhaps even more fundamentally, defendants' arguments seek to resolve merits questions that are plainly irrelevant to whether plaintiff has satisfied the requirements for class certification under Fed. R. Civ. P. 23 and are thus not appropriately resolved in connection with plaintiff's Motion. In any event, defendants' effort to demonstrate that res judicata defeats class certification is easily rejected. *Infra*, §III.D.

Ultimately, in their attempt to avoid a trial of plaintiff's distinct federal claims, defendants ignore: (1) that unlike the NYAG, plaintiff seeks to recover direct economic losses suffered as a result of misrepresentations and omissions made in Exxon's SEC filings by individuals who were not parties to the NYAG Action regarding issues, claims and transactions that were not addressed at trial, let alone decided by Justice Ostrager; (2) that evidence relating to the proxy cost of carbon is not essential to plaintiff's claim but simply provides an alternative path to relief; (3) the preeminence of the federal securities law; and (4) that the NYAG complaint was filed nearly two years after this case was instituted. Coupled with the fact that they waited ***over seven months*** to bring Justice

- 3 -

Ostrager's decision to this Court's attention, plaintiff's Motion should be granted and defendants' second motion for reconsideration should be denied.

## II.    STATEMENT OF FACTS

Plaintiff asserts federal securities law claims that are wholly distinct from the climate-risk claims asserted by the NYAG. Plaintiff's claims regarding Kearl and RMDG were not decided by Justice Ostrager, and were not even tried by the NYAG. Unlike the NYAG climate-risk case, plaintiff's claims focus on Exxon's SEC filings, which violated GAAP and misled investors regarding Kearl's operating losses and the RMDG Assets' impairment due to declining natural gas prices. These claims can be proven without any evidence relating to climate risk.

### A.    Unlike the NYAG, Plaintiff Alleges Defendants Concealed that Kearl Was Suffering Large Operating Losses

Kearl was a massive bitumen operation, accounting for **75%** of Exxon's Canadian bitumen proved reserves and 14% of Exxon's total corporate proved reserves worldwide at year-end 2015.[2] ¶¶97, 184. Exxon invested $20 billion into Kearl's development, monopolizing a huge proportion of Exxon's ongoing annual capital expenditure budget. ¶104. For comparison, Exxon's total costs for *all* of its projects worldwide was $23.4 billion in 2015. *Id.*

Defendants not only concealed Kearl's losses from investors, but in fact represented in the Company's 2015 Form 10-K that Exxon's Canadian bitumen was profitable to the tune of $5.87 per barrel.[3] This representation was materially misleading to investors, as ███████████████

███████████████████████████████    ECF No. 89-4, Ex. J at App. 268.

---

[2]    "Proved reserves" are critically important to an oil and gas company, and are the main category of petroleum reserves disclosed in oil companies' public financial statements. ¶¶46-49, 51. Paragraph references ("¶__" and "¶¶__") are to the Consolidated Complaint for Violations of the Federal Securities Laws ("Complaint") (ECF No. 36).

[3]    *See* Exxon Form 10-K filed with the SEC on February 24, 2016, p. 9, showing an average production price per barrel for Bitumen of $25.07 in Canada and average production costs per barrel of $19.20 ($25.07 - $19.20 = $5.87). ECF No. 103, Ex. 12 at App. 227 n.47; ECF No. 105-1, Ex. 1 at App. 3-4.

Defendants were well aware that Kearl was bleeding money by no later than December 2015 when ████████████████████████████████████████████████████████████ ████████████████████████████████ ECF No. 89-4, Ex. J at App. 258, App. 268. But defendants did not disclose the massive losses at Kearl during the Class Period, as doing so would have jeopardized Exxon's AAA credit rating and negatively impacted the Company's $12 billion bond offering, which took place in March 2016. Notably, defendants' expert Dr. Ferrell conceded he was not offering an opinion that Kearl's losses were ever disclosed to investors. ECF No. 103, Ex. 13 at App. 312 (166:15-21).

This claim was not tried by the NYAG and can be proven without reference to any evidence presented by the NYAG. Thus, it is in no way impacted by the NYAG Action.

### B. Unlike the NYAG, Plaintiff Alleges Defendants Concealed that Exxon's RMDG Assets Were Impaired

In 2009, Exxon acquired the natural gas company XTO. ¶117. As part of this acquisition, Exxon acquired XTO's capitalized natural gas field assets, including the RMDG Assets, and subsequently made additional investments in those assets. ¶¶119-120. But, as explained below, by no later than year-end 2015, Exxon's RMDG Assets were impaired by over $2 billion – a fact defendants concealed.

Internal Exxon documents reveal that the Company's XTO natural gas operations, which included the RMDG Assets, ██████████████████████████████████████ in 2015 as a result of historically low natural gas prices. ECF No. 89-4, Ex. K at App. 305. Defendants were clearly aware of these losses, as ████████████████████████████████████████████████ ████████████████████████ ECF No. 89-4, Ex. J at App. 258, 263; ECF No. 89-4, Ex. K at App. 305. The massive ██████████████ – combined with the persistent, historically low natural gas prices – clearly constituted an impairment trigger under ASC 360. Exxon, however, publicly

- 5 -

claimed that no impairment trigger existed in late 2015 or even early 2016. Although defendants would belatedly acknowledge that the RMDG Assets were impaired by more than $2 billion at year-end 2016 – when the impairment-related factors for these assets were, in fact, significantly *more favorable* for Exxon – defendants knew they could not recognize the impairment at year-end 2015, as a massive impairment charge at that time would have negatively impacted Exxon's critically important March 2016 debt offering.

By the end of 2015, Exxon was in dire need of an infusion of capital, as a result of slumping oil and gas prices and Exxon's unsustainable commitment to shareholder payouts, the latter of which Tillerson described as "a high priority" and "why we are important to people." ¶¶85, 195-198, 393-397. Exxon thus undertook a *$12 billion* debt offering in March 2016 – *the single largest debt offering in the Company's history* – in order to provide it with the much needed funds. ¶198. At the time, Exxon was teetering on the brink of losing its treasured AAA credit rating, and defendants understood that any decline in the Company's credit rating would have significant, negative implications on the terms of Exxon's critical debt offering. ¶¶15, 198-199, 201, 206-214. Accordingly, defendants needed to conceal the issues with Exxon's impaired RMDG Assets and struggling Kearl operations until after the March offering – and they did. The offering was completed just one month after defendants issued Exxon's false and misleading 2015 Form 10-K, which concealed the truth about Kearl and the RMDG Assets.

At year-end 2016, *after* Exxon had completed the massive $12 billion debt offering that allowed it to pay its dividend, Exxon belatedly acknowledged the more than *$2 billion impairment* of its RMDG Assets, even though the natural gas spot price (the single largest determinative factor in any impairment analysis for such assets) had *increased by 62%* from year-end 2015 to year-end 2016, while Exxon's average gas production costs had *decreased by nearly $2/barrel equivalent* during this same period. ¶189. In other words, while Exxon claimed there were no impairment

- 6 -

triggers requiring comprehensive impairment testing at year-end 2015 (before its bond offering), the Company conducted full testing for impairment at year-end 2016 (after its bond offering), when the circumstances were significantly more favorable to these assets, and still found a massive $2 billion impairment of its RMDG Assets.[4]   A timely analysis during 2015, using legitimate assumptions, unquestionably would have resulted in the same determination that the RMDG Assets were impaired.

Indeed, the global decline in oil and gas prices in 2014 and 2015 led Exxon's competitors to collectively recognize tens of billions of dollars in impairments, including with regard to projects in the same Canadian and Rocky Mountain regions in which Exxon was operating.  But Exxon uniquely refused to recognize any impairments or write-downs during the same time period, telling the public the Company was able to avoid the "write-down trap" due to its "active asset management program" and "conservativ[ism] on when and how much is capitalized."  ECF No. 105-1, Ex. 1 at App. 5; ECF No. 105-4, Ex. 4 at App. 54; *see also* ECF No. 109-1, Ex. 7 at App. 92 (308:2-6).  The truth, however, was that defendants were aware Exxon was **not** immune to the challenges its competitors faced as a result of the historic oil and gas price declines, as confirmed by its belated acknowledgment concerning the $2 billion RMDG impairment.

As with plaintiff's claim concerning Kearl, its claim regarding the impaired RMDG Assets was neither tried by the NYAG nor addressed by the NYAG decision, and it can be proven without reference to any climate-related evidence.

---

4    The year-end 2016 analysis forecasted natural gas prices for the majority of the future cash flow analysis at ▮▮▮ ▮▮▮▮▮  Appendix, Ex. 2 at App. 21, App. 109.  Even this price which resulted in impairment was far more favorable than "▮▮▮▮▮▮▮▮▮▮▮, which projected natural gas prices to remain below ▮▮▮▮▮ ▮▮  Appendix, Ex. 3 at App. 254.  The price that market participants (in aggregate) were willing to pay for these contracts is, of course, among the best predictor of future prices.

### III.    ARGUMENT

#### A.    Plaintiff Was Not in Privity with the NYAG and Did Not Have a "Full and Fair Opportunity" to Litigate Its Claims

The U.S. Supreme Court has made clear that "[t]he application of claim and issue preclusion to nonparties . . . runs up against the 'deep-rooted historic tradition that *everyone should have his own day in court*.'" *Taylor*, 553 U.S. at 892-93. "[L]imits on a state court's power to develop estoppel rules reflect the general consensus '"in Anglo-American jurisprudence that one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process."'" *Richards*, 517 U.S. at 798. Accordingly, "'[a] judgment or decree among parties to a lawsuit resolves issues as among them, but it does not conclude the rights of strangers to those proceedings.'" *Id.*

New York courts have likewise held that "where a party to an action or proceeding . . . *played no role* and *did not participate*, . . . the doctrines of res judicata and collateral estoppel should not be applied." *Sherwyn Toppin Mktg. Consultants, Inc. v. New York State Liquor Auth.*, 103 A.D.3d 648, 651, 958 N.Y.S.2d 794, 798 (2d Dep't 2013). This is because "the party raising a res judicata defense must demonstrate a connection between the party to be precluded and a party to the prior action '*such that the interests of the nonparty can be said to have been represented in the prior proceeding*.'" *Farren v. Lisogorsky*, 87 A.D.3d 713, 714, 928 N.Y.S.2d 765, 767 (2d Dep't 2011) (quoting *Green v. Santa Fe Indus., Inc.*, 70 N.Y.2d 244, 253, 519 N.Y.S.2d 793, 796 (1987)).[5]

Here, neither plaintiff nor any of the individual defendants were parties to the NYAG Action, and plaintiff did not participate in and was not represented in that case. Thus, "[f]or purposes of res

---

[5]    "The burden is on the party seeking to invoke *res judicata* to prove that the doctrine bars the second action." *Computer Assocs. Int'l v. Altai, Inc.*, 126 F.3d 365, 369 (2d Cir. 1997). "In determining whether privity exists, a court must analyze the relationship between the parties to determine whether preclusion would be fair, and '*[d]oubts should be resolved against imposing preclusion to ensure that the party to be bound can be considered to have had a full and fair opportunity to litigate*.'" *Whitney Lane Holdings, LLC v. Don Realty, LLC*, 130 A.D.3d 1218, 1220, 14 N.Y.S.3d 516, 519 (3d Dep't 2015) (quoting *Buechel v. Bain*, 97 N.Y.2d 295, 304-05, 740 N.Y.S.2d 252, 258 (2001)).

4845-6493-3837.v1-10/2/20

judicata or collateral estoppel, the private citizens in this case are *not bound* by the Attorney General's action in the former case since they neither were parties to it." *Williamson*, 468 F.2d at 1203.

Furthermore, plaintiff is a private party pursuing money damages under a federal statute and could not possibly be considered in privity with a state attorney general that pursued mainly equitable relief for different factual allegations under a New York state statute. "Generally, to establish privity the connection between the parties must be such that the interests of the nonparty can be said to have been represented in the prior proceeding." *Green*, 70 N.Y.2d at 253. "'[I]n certain limited circumstances,' a nonparty may be bound by a judgment because she was '*adequately represented* by someone with the same interests who [wa]s a party' to the suit." *Taylor*, 553 U.S. at 894; *Richards,* 517 U.S. at 798. "Representative suits with preclusive effect on nonparties include *properly conducted class actions*, and suits brought by trustees, guardians, and other fiduciaries." *Taylor*, 553 U.S. at 894. The NYAG Action did not invoke any of these mechanisms, and the NYAG has *no relationship* to plaintiff. Moreover, the NYAG did not seek (and could not have sought) the economic relief plaintiff seeks under the federal securities laws.

Under similar circumstances, courts have repeatedly recognized that "'litigation by a government agency *will not preclude* a private party from vindicating a wrong that arises from related facts but generates a distinct, individual cause of action.'" *Texas*, 929 F.3d at 213; *People ex rel. Schneiderman v. Credit Suisse Sec. (USA) LLC*, 7 N.Y.S.3d 244, 2014 WL 7665038, at *9 (N.Y. Cnty. 2014) ("[D]efendants fail to cite any authority which holds that a state attorney general may be in privity with the SEC . . . . Without such authority, defendants fail on this motion to carry their burden of establishing privity for res judicata purposes . . . ."), *aff'd*, 145 A.D.3d 533, 47 N.Y.S.3d 236 (1st Dep't 2016). Instead, courts have long held that "[a] party's representation of a nonparty is 'adequate' for preclusion purposes *only if, at a minimum*": (1) "[t]he interests of the nonparty and

- 9 -

her representative are aligned"; (2) "either the party understood herself to be acting in a representative capacity or the original court took care to ***protect the interests of the nonparty***"; ***and***, as is sometimes required, (3) "***notice*** of the original suit to the persons alleged to have been represented." *Taylor*, 553 U.S. at 900.

Here, the NYAG's purported representation of plaintiff and the Class was not "'adequate.'" *Id.* The former's interests were clearly not aligned with the latter's as: (1) the NYAG did not and could not bring the federal statutory claims for direct economic injury asserted by plaintiff; (2) the NYAG did not pursue the Kearl and RMDG claims that defendants' own expert testified were responsible for 100% of plaintiff's and the Class's alleged damages here; (3) the NYAG provided no formal notice to plaintiff or the Class; and (4) neither the NYAG nor the New York state court took steps to represent or protect the interests of plaintiff or the Class.

### B.      Plaintiff's Claims Are Not Precluded by the NYAG's Adjudication of Unrelated Claims

Defendants argue that plaintiff's claims are precluded – and thus, class certification should be denied – by erroneously equating the claims adjudicated in the NYAG Action with the factually and legally distinct claims raised here.  It is undisputed that the NYAG Action did not address two of plaintiff's primary claims regarding defendants' concealment of (1) the massive operating losses at Exxon's Canadian bitumen operation at Kearl, and (2) the significant impairment of Exxon's RMDG Assets.  Defendants' contention that these claims should be barred mischaracterizes plaintiff's case and seeks to impermissibly expand the doctrine of res judicata without any valid support in the law.

Unlike this case, the NYAG Action was ***not*** based on Exxon's accounting practices and financial disclosures, but was instead strictly limited to an alleged fraudulent scheme to "'create the illusion that [Exxon] had fully considered the risks of climate change regulation and had factored those risks into its business operations.'"  2019 WL 6795771, at \*1.  Unlike plaintiff's claims, which are based in large part on material misstatements and omissions in Exxon's SEC filings, the alleged

- 10 -

misstatements in the NYAG Action were *not* contained in financial filings and did *not* concern any financial figures. *Id*. at \*19-\*20 ("there is no claim in this case that any disclosure in ExxonMobil's Form 10-K is misleading . . . [or] that anything ExxonMobil is alleged to have done or failed to have done affected ExxonMobil's balance sheet, income statement, or any other financial disclosure").

Thus, the NYAG Action was hardly based on allegations that form the "centerpiece" of plaintiff's case, as defendants baldly and falsely assert. While plaintiff did include allegations from the NYAG investigation in its Complaint to bolster alternative avenues of relief, those allegations are in no way essential to plaintiff's claims. Specifically, the Complaint alleges defendants concealed that Exxon was not, in fact, applying its publicly stated carbon proxy costs to the Company's internal profitability analyses, because doing so "████████████████████████" and further confirm the RMDG Assets' already-massive impairment. ECF No. 89-4, Ex. L at App. 339. These allegations were not adjudicated by the NYAG. But even if plaintiff's proxy cost allegations were somehow precluded here, they are not necessary to plaintiff's claims regarding Kearl and the RMDG Assets, as further described below. *See infra*, §III.B.2. Thus, plaintiff cannot be barred by res judicata from continuing to pursue the factually distinct claims detailed herein.

### 1. Plaintiff's Accounting-Based Claims Do Not Stem from the Same Transaction(s) as the NYAG Action

Defendants contend that because the NYAG investigated Exxon, obtained a wide range of documents in discovery and brought a case involving public statements made in New York during roughly the same period that encompasses the Class Period here, *all* of plaintiff's claims are precluded – *even if* they are completely unrelated to the alleged misrepresentations adjudicated by the NYAG. This exceedingly overbroad view of res judicata is not the law and must be rejected. "Claim preclusion, the primary aspect of res judicata, acts to bar claims that were, or should have been, advanced in a previous suit *involving the same parties*." *Rojas v. Romanoff*, 186 A.D.3d 103,

- 11 -

128 N.Y.S.3d 189, 194 (1st Dep't 2020).  The doctrine applies in limited circumstances – not present here – to prevent "relitigation between the same parties, or those in privity with them, of a cause of action arising out of the ***same transaction or series of transactions*** that either were raised or could have been raised in the prior proceeding."  *Id.* "Stated differently, the 'doctrine of res judicata ***only*** bars additional actions between ***the same parties on the same claims based upon the same harm***.'" *Id.* (quoting *Emps. Fire Ins. Co. v. Brookner*, 47 A.D.3d 754, 756, 850 N.Y.S.2d 554, 555 (2d Dep't 2008)).  Defendants seek to flip that limited rationale on its head by asking that the Court treat ***every*** alleged misrepresentation made by defendants during the Class Period as part of the same transaction or series of transactions and, thus, barred by the NYAG Action, as long as the NYAG – an agency with exceedingly broad authority – could have also ***potentially*** pursued those claims.

Defendants acknowledge that res judicata under New York law is transactional but misconstrue the meaning of "transaction" by failing to grasp that it only applies to actions where "'the ***same evidence*** is needed to support both claims, and . . . the facts ***essential*** to the second were present in the first.'"  *Paramount*, 31 N.Y.3d at 78 (quoting *Monahan v. N.Y. City Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir. 2000)); *Welch v. Shiffman*, 80 A.D.2d 683, 684, 436 N.Y.S.2d 430, 431 (3d Dep't 1981) ("If the evidence required to prove the second varies materially from that needed in the first, there should be no bar.").  Thus, "'[t]o ascertain whether two actions spring from the same "transaction" or "claim,"' courts look to 'whether the underlying facts are "related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage."'"  *Paramount*, 31 N.Y.3d at 78 (quoting *Pike v. Freeman*, 266 F.3d 78, 91 (2d Cir. 2001)).  "Put differently, 'the question is

- 12 -

whether the claim was sufficiently related to the claims . . . in the first proceeding that it ***should have***

been asserted in that proceeding.'" *Id*. (emphasis in original).[6]

The NYAG Action pertained to "public disclosures concerning how Exxon Mobil accounted

for past, present and future climate change risks." 2019 WL 6795771, at *1. As detailed *supra*,

plaintiff's accounting-based claims concern different misrepresentations, evidence and legal theories.

The NYAG did not bring any claims concerning Kearl's operating losses or the impaired RMDG

Assets, and defendants do not even ***attempt*** to argue that the evidence presented in the NYAG

Action is needed to support such claims.[7] Defendants simply make the vague and – insufficient –

assertion that the claims involve the "same accounting-related disclosures and practices that NYAG

investigated in depth and could have raised at trial." Supp. Brief at 15.

Even assuming that the NYAG "***could have*** litigated all of Plaintiff's accounting-based

claims" as defendants assert (*id.* at 2), based on a broad investigation and wide-ranging discovery,

defendants still must establish that plaintiff's claims are part of the same transaction or series of

transactions at issue in the NYAG Action. Otherwise, the virtually unlimited scope of the NYAG's

authority to investigate wrongdoing (in contrast to the far more narrow range of claims that could be

brought by a private party such as plaintiff) would insulate defendants from liability for every

conceivable claim. As the Second Circuit explained, "'the fact that both suits involved essentially

the same course of wrongful conduct is not decisive; nor is it dispositive that the two proceedings

involved the same parties, similar or overlapping facts, and similar legal issues.'" *Interoceanica*

---

[6] Applying this test, the court in *Paramount* appropriately found the plaintiff's claim was barred by res judicata because it involved the very same subscription agreement at issue in the first action. 31 N.Y.3d at 79-80. Indeed, the plaintiff itself (which was the defendant in the first action) affirmatively asserted that collateral estoppel barred relitigation of the first court's factual and legal findings concerning that agreement. *Id.* at 79.

[7] Because this brief is filed in response to defendants' procedurally improper "Supplemental Brief" in support of its opposition to plaintiff's Motion, defendants should not be permitted to file a *quasi*-reply brief in response. But if permitted to do so, defendants have waived any right to assert such arguments in connection with plaintiff's Motion. *See Jones v. Cain*, 600 F.3d 527, 541 (5th Cir. 2010) ("Arguments raised for the first time in a reply brief are generally waived.").

- 13 -

*Corp. v. Sound Pilots, Inc.*, 107 F.3d 86, 91 (2d Cir. 1997) (quoting *S.E.C. v. First Jersey Sec.*, Inc., 101 F.3d 1450, 1463 (2d Cir. 1996)).  The first judgment will have preclusive effect *only* "'where the *same evidence is needed* to support both claims, and where the facts *essential* to the second were present in the first.'"  *Id*.  Thus, in *Interoceanica*, which involved New York ship pilots seeking to recover fees from Connecticut ship pilots who did not have licenses to navigate in a certain area of New York waters, a second action was *not* barred because it involved different voyages – even though "the subsequent voyages represent wrongs that are the 'same' in legal theory [because] they are not related in time, space, or origin to the wrongs litigated in [the first action]."  *Id*.  Plaintiff's claims here are in essence different "voyages" than those litigated by the NYAG.

The NYAG Action describes the events leading to that case, which stemmed from Exxon receiving "various inquiries and shareholder proposals requesting more information about how ExxonMobil factored climate change risks and regulations into its business decisions" and then publishing two reports in 2014 addressing "the evolving policies and regulations governments may implement to reduce the emissions of greenhouse gases in a rapidly growing world population." 2019 WL 6795771, at *1.  The crux of the NYAG Action was that these reports and subsequent statements contained misleading misrepresentations and omissions about how Exxon managed the risks of climate change and increasing regulations.  *Id*.; *see also id.* at *4.  Although the Complaint references some of those facts, plaintiff's claims focus on the failure to properly account for and disclose massive losses unrelated to climate change, at Kearl and RMDG, two of Exxon's key reserves.  These issues were *not* tried in the NYAG Action.  As alleged, defendants' concealment of these issues rendered Exxon's 2015 Form 10-K materially misleading to investors – while, in the NYAG Action, "[t]here is no claim . . . that the disclosures in any of ExxonMobil's Form 10-K's . . . [were] . . . misleading."  *Id*. at *10.

- 14 -

Defendants merely argue that all potential claims were investigated, encompassed by the NYAG's broad discovery requests, and "vetted," and "[i]f those claims were not pursued, it was because even the NYAG recognized they had no merit." Supp. Brief at 2. But a broad discovery request by a party does not bar any claim for which that discovery could be relevant – especially where that party is not involved in the current action. The claims still have to be tied to the transaction(s) at issue. Thus, in *SEC v. Thompson*, 238 F. Supp. 3d 575 (S.D.N.Y. 2017), the court rejected defendant's contention that "overlapping discovery" in his case and an earlier action justified the application of res judicata: "'[w]hether a claim that was not raised in the previous action *could have* been raised therein "depends in part on whether the same transaction or connected series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first."'" *Id.* at 588, 593.

None of the cases cited by defendants support their contention that any claims purportedly investigated but not pursued by a party are barred in a subsequent action. On the contrary, these cases – which, unlike here, all involved the same parties in the first and second action and, most critically, overlapping facts that were apparent from the first action and essential to support the second – reaffirm that the claims must stem from the same transaction or transactions. For example, *In re Hunter*, 4 N.Y.3d 260, 264, 827 N.E.2d 269, 271 (2005), involved judicial proceedings settling an estate and a trust accounting. In that case, the beneficiary of one of two trusts (Trust B), who subsequently became the beneficiary of both trusts, was precluded from objecting to the actions of the bank that acted both as executor and as trustee where such objections could have been raised in prior proceedings involving the other trust (Trust A). The plaintiff there, unlike here, "ha[d] a full and fair opportunity to raise objections relating to the Bank's obligations as executor to diversify the stock or timely fund the trusts, or as trustee of Trust A to diversify the trust assets – the crux of the present objections." *Id*. at 270-71.

- 15 -

In *Waldman v. Vill. of Kiryas Joel*, 207 F.3d 105 (2d Cir. 2000), the plaintiff sued the village in which he lived, primarily a Hasidic Jewish community, accusing it of excessive entanglement with religion and seeking its dissolution. The court held the plaintiff's claims were barred because of *his* prior suit against the Village, where the overlapping facts were "crucially relevant" to both actions. *Id*. at 111. Significantly, the court found that all of the overlapping facts in *Waldman* "derive ultimately from the same origin or motivation: the alleged entanglement of church and state in [the Village]." *Id*. at 112. Here, unlike the NYAG Action, plaintiff's accounting-based claims involve the misleading nature of SEC filings, specifically with regard to defendants' concealment of Kearl's massive operating losses and the significant impairment of the RMDG Assets due to declining natural gas prices. *Waldman* also relied on the fact that "the suits would have formed a convenient trial unit since both involve substantially the same incidents evincing the same relationships between church and state in the Village and, with minor exceptions, involve the same witnesses and evidence." *Id.* By contrast, the claims here involve different public disclosures, and thus, different witnesses and evidence, as well as different statutes and different legal theories.

The third case cited by defendants, *Marchon Eyewear, Inc. v. Tura LP*, No. 98 CV 1932(SJ), 2002 WL 31253199 (E.D.N.Y. Sept. 30, 2002), makes clear, as argued above, that "whether a claim that was raised in the previous action or could have been raised therein 'depends in part on whether the same transaction or connected series of transactions is at issue, and whether the same evidence is needed to support both claims.'" *Id*. at *11. The fact that counterclaims were barred in that case because they were based on the same underlying facts as the first action does not help defendants here.

Because plaintiff's claims regarding Kearl and the RMDG Assets are based upon the massive losses suffered as a result of declining oil and gas prices, they are not part of the same transaction or series of transactions as the climate-risk claims adjudicated by the NYAG, and they are not barred by

- 16 -

res judicata. *See Specialized Realty Servs., LLC v. Maikisch*, 123 A.D.3d 801, 802-03, 999 N.Y.S.2d 430, 432 (2d Dep't 2014) ("the differences in the kind of relief sought, in the kind of facts to be proved, and in the kind of law to be applied, outweigh the similarities to such an extent as to render the doctrine of res judicata inapplicable").

### 2. Plaintiff's Proxy Cost Allegations Are Not Essential to Plaintiff's Claims, But Simply Provide an Alternative Path to Relief

Defendants' assertion that plaintiff relies on "substantially identical allegations" as the NYAG is incorrect. Supp. Brief at 11. The NYAG Action was a broad-based challenge to whether Exxon had accurately disclosed how the Company managed climate risk. While Justice Ostrager found for Exxon, plaintiff's allegations here are in no way dependent on his findings.

First, with regard to Kearl, defendants' failure to apply its publicly disclosed proxy costs is irrelevant to plaintiff proving its federal securities claims regarding defendants' concealment that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. ECF No. 89-4, Ex. J at App. 268. Defendants not only concealed these losses, but also misleadingly represented in Exxon's 2015 Form 10-K that Exxon's Canadian bitumen reserves (of which Kearl constituted 75%) were profitable to the tune of $5.87 per barrel. *See supra*, §§II.A., III.B.1. This claim can be wholly proven without reference to any climate-related evidence, and thus, is not impacted by the NYAG Action.

Second, with respect to the impaired RMDG Assets, defendants admit that these assets were not part of the NYAG Action. Supp. Brief at 13 (conceding "NYAG abandoned this theory" of Exxon's asset impairment analyses as to the RMDG Assets). This admission is not surprising, given that plaintiff can prove its RMDG impairment claim without any climate-related evidence as this claim is based on defendants' violation of GAAP to avoid taking the necessary impairment in 2015 by utilizing unreasonable natural gas price assumptions. *See supra*, §III.B.1. As with the Kearl claim, this claim can be proven without any reference to the proxy cost of carbon.

4845-6493-3837.v1-10/2/20

Plaintiff also alternatively alleges that defendants concealed the RMDG Assets' impairment by not applying proxy costs, but this is merely an alternative path to relief. Proof of either theory would result in a violation of GAAP for failing to disclose the RMDG Assets' impairment. Thus, the proxy cost analysis is *not* essential to plaintiff's claims. As noted above, even if an earlier action involves similar or overlapping facts and similar legal issues, the first judgment will only bar the second "'where the same evidence is *needed* to support both claims, and where the facts *essential* to the second were present in the first.'" *Interoceanica*, 107 F.3d at 90-91. Here, the proxy cost evidence is *not* essential to prove plaintiff's claims regarding the impaired RMDG Assets. *See supra*, §III.B.1.

Plaintiff's allegations about Exxon's failure to employ the carbon proxy costs simply provide another – but by no means necessary – avenue of evidentiary support for the impaired RMDG Assets claim. Specifically, the Complaint alleges that defendants: (1) violated GAAP by failing to include the proxy cost of carbon that it had utilized throughout the Company's budgeting process in the RMDG Assets' impairment analysis; and (2) misrepresented that Exxon avoided having to recognize an impairment for the RMDG Assets by being more conservative than its competitors, in part, by including the proxy cost of carbon. This is an alternative theory of liability with respect to plaintiff's claim concerning the impaired RMDG Assets that was not adjudicated in the NYAG Action, not part of the same transaction at issue in that case, and thus not barred here.

Defendants nevertheless argue that because the NYAG "initially advanced and then abandoned this theory as to all assets, except for Mobile Bay," this claim was available to the NYAG, and thus, barred by res judicata. Supp. Brief at 13. Defendants' reliance on a 12-year old unpublished case from the Northern District of Georgia for this proposition is unavailing. In *Dinkins v. Leavitt*, No. 1:07-CV-486-TWT, 2008 WL 447503 (N.D. Ga. Feb. 13, 2008), *aff'd*, 315 F. App'x 171 (11th Cir. 2008), the plaintiff raised and then abandoned intentional infliction of emotional

- 18 -

distress claims in a Title VII action against her employer. *Id.* at \*9. The claims raised in a second complaint *by the same party against the same defendant based on the same set of facts* that were raised and then dropped in the first action were deemed barred. Here, the facts underlying the impaired RMDG Assets were never pursued by the NYAG, even if the NYAG's initial wide-ranging investigation may have touched upon them. Thus, plaintiff's case is not based on the same factual predicate as the NYAG Action. But even if it was, defendants' failure to apply its carbon proxy costs in the RMDG Assets' impairment analysis is not essential to plaintiff's claim, as detailed *supra*. Thus, res judicata does not apply.

**C.    The NYAG Did Not and Could Not Seek to Recover for the Economic Losses Suffered by Plaintiff and the Class**

The doctrine of res judicata is also inapplicable here for the additional reason that the NYAG did not, and could not, seek to recover economic losses plaintiff and the Class seek to recover here pursuant to the Securities Exchange Act of 1934. *Parker v. Blauvelt Volunteer Fire Co.*, 93 N.Y.2d 343, 349, 712 N.E.2d 647, 650 (1999) ("[R]es judicata is inapplicable where the plaintiff 'was unable to . . . seek a certain remedy or form of relief in the first action because of the limitations on the subject matter jurisdiction of the courts or restrictions on their authority to entertain . . . multiple remedies or forms of relief in a single action, and the plaintiff desires in the second action . . . to seek that remedy or form of relief.'").[8]

Exxon conceded this fact in advance of the NYAG Action, stating that the NYAG "is not entitled to a jury trial because the causes of action and requested relief included in the October 24, 2018 complaint . . . *sound primarily in equity*." Appendix, Ex. 1 at App. 2. Thus, the NYAG not

---

[8]    *See also Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) (res judicata "will not apply . . . where 'the initial forum did not have the power to award the full measure of relief sought in the later litigation'"); *Brodsky v. Carter*, No. 15-CV-3469 (GBD) (DF), 2015 WL 13746671, at \*8 (S.D.N.Y. Dec. 15, 2015) ("*Res judicata* does not apply, however, where the initial forum lacked the authority to grant the full measure of relief sought in the later proceeding."); *Specialized Realty*, 123 A.D.3d at 802-03 (finding res judicata inapplicable in part due to "the differences in the kind of relief sought").

- 19 -

only failed to pursue the relief sought by plaintiff and the Class here; it was not even entitled to seek it.

Defendants' preclusion claim further lacks merit as defendants' economic expert, Dr. Ferrell, has conceded that any damages potentially recoverable in this case stem from disclosures relating to the "reserves de-booking and asset impairment" at Kearl and the RMDG Assets, *not* climate risk. *See* ECF No. 98-12, Ex. 11 at App. 101, ¶11.  As such, res judicata does not apply.

### D.   None of Defendants' Arguments Defeat Class Certification

#### 1.   Defendants' Merits-Based Arguments Are Inappropriate at This Stage

For all the foregoing reasons, the Court can readily reject defendants' res judicata arguments on the merits.  But the Court need not even reach them.  Defendants argue that res judicata bars "Plaintiff's claims and those of the putative class" because (1) all claims were, or could have been, litigated in the NYAG Action; and (2) plaintiff and the Class are in privity with the NYAG.  Supp. Brief at 10-18.  In other words, defendants ask that the Court make a summary judgment-like determination that the claims of plaintiff and the Class fail on the merits before being afforded an opportunity to conduct discovery.  *See* ECF No. 68-1, ¶2 (fact discovery stayed pending resolution of plaintiff's class certification motion).

Defendants' arguments should be rejected out of hand.  At class certification, the *only* inquiry is whether plaintiff has demonstrated that the requirements of Fed. R. Civ. P. 23(a) and at least one subsection of Rule 23(b) are satisfied, including that *questions* common to the class exist and predominate over issues affecting individual class members.  *See Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 459 (2013); *Ludlow v. BP, P.L.C.*, 800 F.3d 674, 682 (5th Cir. 2015). This inquiry is *not* concerned with whether those questions will be *answered* on the merits in plaintiff's favor.  *See Amgen*, 568 U.S. at 465-66.  As such, class certification "should not be [a] mini-trial[] on the merits of the class or individual claims." *Unger v. Amedisys Inc.*, 401 F.3d 316,

- 20 -

321 (5th Cir. 2005). Instead, "[m]erits questions may be considered to the extent – *but only to the extent* – that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen*, 568 U.S. at 466; *In re Deepwater Horizon*, 739 F.3d 790, 798 (5th Cir. 2014).

Taking their arguments at face value, defendants seek findings from the Court that "The NYAG Decision Precludes *All Claims* Asserted Here," and that "*Plaintiff and the Entire Putative Class* Were Either Named Parties in the NYAG Action or in Privity with the NYAG." Supp. Brief at 10, 17. By their own terms, these assertions are necessarily "'*common questio[ns]*' for purposes of Rule 23(b)(3)," because plaintiff's "failure of proof" on either "would end the case" *for the entire Class*. *Amgen*, 568 U.S. at 460, 467.[9] As posed, defendants' res judicata arguments are no different from arguing that plaintiff must prove materiality or loss causation to obtain class certification. Under established U.S. Supreme Court precedent, such questions must be reserved for summary judgment or trial. *See Amgen*, 568 U.S. at 474 (holding plaintiff need not prove materiality at class certification); *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 811-13 (2011) (holding plaintiff need not prove loss causation at class certification); *cf. In re Cobalt Int'l Energy, Inc. Sec. Litig.*, No. H-14-3428, 2017 WL 2608243, at *4-*5, *7-*8 (S.D. Tex. June 15, 2017) (finding ability to trace one's purchase of securities to a misleading registration statement necessary to recover under §11 of the Securities Act, but holding that tracing "'is a merits issue that the court need not consider at the class certification stage'" and certifying the class).

### 2. The Few Class Certification-Related Arguments Defendants Raise Fail

Following their lengthy merits-based arguments, defendants also assert that application of res judicata purportedly defeats class certification because individual issues of Class member residency

---

[9] Indeed, defendants do not even attempt to feign that they are principally seeking resolution on the merits, making clear that only the latter portion of their brief is concerned with whether "The Preclusive Effect of the NYAG Decision . . . Defeats Class Certification." Supp. Brief at 21.

- 21 -

predominate over common questions, and plaintiff cannot establish numerosity.[10]  Supp. Brief at 21-24.  Defendants also assert the NYAG decision truncates the Class Period.  *Id.* at 24-25.  Because "[p]otential *res judicata* issues do not preclude class certification" (*Cobalt*, 2017 WL 2608243, at *7), these assertions are easily rejected.

*Predominance*.  Defendants argue that individualized issues concerning res judicata's applicability predominate, specifically with respect to whether each Class member is a New York resident and, if not, where each Class member transacted in Exxon common stock, including whether it transacted through a broker or financial advisor with sufficient ties to New York.  Supp. Brief at 22-23.  But as defendants' own authority makes clear, "***irrelevant matters*** such as geographic location" are ***not pertinent*** to whether a class should be certified.  *Robinson v. Tex. Auto. Dealers Ass'n*, 387 F.3d 416, 423 (5th Cir. 2004); Supp. Brief at 22 (citing *Robinson*).  The heart of plaintiff's claim is whether defendants made materially false and misleading statements, an issue that is indisputably common to the Class.  *See* ECF No. 89-3 at 13-21.  Any "secondary issue" relating to res judicata's applicability will ***not*** predominate over such key common questions.  *See Gaynor v. Miller*, No. 3:15-CV-545-TAV-DCP, 2018 WL 3751606, at *14 (E.D. Tenn. Aug. 6, 2018).

The reason for this is obvious: Determining a class member's or its broker's location is easily handled through an objective mechanism like the claims administration process.  *E.g.*, *id.* at *14-*15, *19 (recommending that a Securities Act class be certified over defendants' objection that individual issues of tracing each member's purchases will predominate in part because "a different group of underwriters was involved in each of the Offerings at issue," where plaintiff responded that the issue of tracing "can be resolved through a claims administration process").  It is thus no surprise that

---

[10]    Defendants further claim that plaintiff is inadequate solely because its claims are precluded.  Supp. Brief at 24.  As explained above, defendants' res judicata arguments fail on the merits.  *Supra*, §III.A.-C.  Accordingly, their inadequacy argument fails as well.

- 22 -

classes defined with reference to members' geographic location are routinely certified.[11] Defendants' cited predominance concerns are no bar to class certification here. *See Cobalt*, 2017 WL 2608243, at \*6 (certifying class over defendants' objection that certain members engaged in foreign transactions and thus could not recover under U.S. securities laws).

*Numerosity*. Defendants next claim that numerosity cannot be shown because the claims of Class members who are New York residents or who purchased on the New York Stock Exchange ("NYSE") or through New York-based brokers are precluded. Supp. Brief at 23-24.[12] As explained above, no Class members' claims are precluded. *See supra*, §III.A.-C. But even if res judicata affects a portion of the Class (it does not), the numerosity requirement is easily met, as classes with as little as 100 putative members satisfy it. *See In re Elec. Data Sys. Corp. Sec. Litig.*, 226 F.R.D. 559, 564 (E.D. Tex. 2005) (citing *Mullen v. Treasure Chest Casino, L.L.C.*, 186 F.3d 620, 624 (5th Cir. 1999)), *aff'd*, 429 F.3d 125 (5th Cir. 2005). Indeed, "[t]he numerosity requirement 'is generally assumed to have been met in class action suits involving nationally traded securities,'" like this one. *KB Partners I, L.P. v. Barbier*, No. A-11-CA-1034-SS, 2013 WL 2443217, at \*11 (W.D. Tex. June 4, 2013) (quoting *Zeidman*, 651 F.2d at 1039).

During the Class Period, Exxon had ***at least 4.1 billion shares outstanding*** and an average weekly trading volume of 61.5 million. ECF No. 88-1 at App. 10, App. 12, ¶¶23, 30. If every Class member had the same number of shares as plaintiff acquired during the Class Period (19,625 shares, *see* ECF No. 25-2), then there are ***over 200,000*** shareholders. *See In re En Pointe Techs., Inc. Sec.*

---

[11]    *E.g.*, *Eatmon v. Palisades Collection LLC*, No. 2:08-CV-306-DF-CE, 2011 WL 147680, at \*12 (E.D. Tex. Jan. 18, 2011) (certifying class of "[a]ll Texas residents"); *Henry v. Cash Today, Inc.*, 199 F.R.D. 566, 571, 573 (S.D. Tex. 2000) (certifying class of "all persons who are residents of Texas").

[12]    Defendants also argue that the claims of any Class member who "were harmed by allegedly misleading statements that emanated from New York" are precluded. Supp. Brief at 24. This assertion centers on defendants' conduct and will necessarily apply ***to all or none*** of the Class, and thus, has no effect on numerosity (or any other certification-related issue, *see supra*, §III.D.1. Defendants also wholly ignore that the statements at issue in this case are primarily contained in SEC filings that were drafted and filed from corporate headquarters by the individual defendants in Texas, not New York. *See, e.g.*, ¶¶277-279, 281, 283, 285.

*Litig.*, No. 01cv0205 BEN (AJB), 2005 WL 8173598, at *4-*5 (S.D. Cal. Feb. 16, 2005) (analyzing the Fifth Circuit's decision in *Zeidman* and finding numerosity satisfied because "[a]ssuming that each class member held as many shares as the Lead Plaintiffs, there would be at least 40 class members"), *report and recommendation adopted*, 2005 WL 8173600 (S.D. Cal. May 31, 2005). Even if it is assumed that the claims of Class members with one of defendants' purported ties to New York are precluded, plaintiff is entitled to the "'common sense assumption[]'" that the remaining Class members meet the low numerosity bar. *Marcus v. J.C. Penney Co., Inc.*, No. 6:13-cv-736-MHS-KNM, 2016 WL 8604331, at *2 (E.D. Tex. Aug. 29, 2016), *report and recommendation adopted*, 2017 WL 907996 (E.D. Tex. Mar. 8, 2017). The remaining portion of the Class is comprised of shareholders of one of the largest U.S. traded companies during the Class Period from 49 states. ECF No. 88-1 at App. 10, ¶30. Its "'geographical dispersion'" favors a finding that numerosity is satisfied. *Mullen*, 186 F.3d at 624; *see Marcus*, 2016 WL 8604331, at *2 (finding the fact that a company trades on the NYSE supports numerosity because class members "are almost certainly located nationwide"). This is particularly true given that Exxon undoubtedly has historical records of who its shareholders are. *See Gutierrez v. LVNV Funding, LLC*, No. EP-08-CV-225-DB, 2009 WL 10699516, at *3 (W.D. Tex. Mar. 16, 2009) (agreeing with plaintiff that numerosity was satisfied in part because the pertinent "information is within Defendant's control").

**Class Period**. Defendants finally contend the NYAG Action warrants truncating the Class Period. Supp. Brief at 25. This is nothing more than a rehash of the nearly identical argument they made in their original opposition to plaintiff's Motion. *See* ECF No. 116 at 33 (requesting that the Court shorten the Class Period to February 24, 2016 to October 28, 2016). As explained in plaintiff's Reply in Further Support of Its Motion for Class Certification, this is not the appropriate stage to render merits-based determinations of truncating the Class Period. ECF No. 109 at 28-29.

## IV.    CONCLUSION

The application of res judicata to preclude a party's claims is an exception to the general rule that each litigant is entitled to its own day in court.  It is thus no surprise that courts should be leery of applying the doctrine "too harshly," for "'[i]n properly seeking to deny a litigant two "days in court", courts must be careful not to deprive [the litigant] of one.'" *Rojas*, 2020 WL 4210402, at *6. Here, defendants seek to do the latter, not the former, seeking to prohibit plaintiff and the Class from having their day in court.  Applying res judicata to preclude plaintiff's and the Class's claims under such circumstances would not further "the concept of fairness underlying the doctrine"; it would stymy it.  *Id.*  For the above stated reasons, the Court should grant plaintiff's Motion for Class Certification and deny defendants' second motion for reconsideration.

DATED:  October 2, 2020                    Respectfully submitted,

                                           KENDALL LAW GROUP, PLLC
                                           JOE KENDALL (Texas Bar No. 11260700)


                                                   s/ JOE KENDALL
                                                   JOE KENDALL

                                           3811 Turtle Creek Blvd., Suite 1450
                                           Dallas, TX  75219
                                           Telephone:  214/744-3000
                                           214/744-3015 (fax)
                                           jkendall@kendalllawgroup.com

                                           BALON B. BRADLEY LAW FIRM
                                           BALON B. BRADLEY (Texas Bar No. 02821700)
                                           11910 Greenville Avenue, Suite 220
                                           Dallas, TX  75243
                                           Telephone:  972/991-1582
                                           972/755-0424 (fax)
                                           balon@bbradleylaw.com

                                           Local Counsel

- 25 -

4845-6493-3837.v1-10/2/20

ROBBINS GELLER RUDMAN
  & DOWD LLP
SPENCER A. BURKHOLZ
X. JAY ALVAREZ
SCOTT H. SAHAM
NATHAN R. LINDELL
SARA B. POLYCHRON
ERIKA OLIVER
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
spenceb@rgrdlaw.com
jaya@rgrdlaw.com
scotts@rgrdlaw.com
nlindell@rgrdlaw.com
spolychron@rgrdlaw.com
eoliver@rgrdlaw.com

Lead Counsel for Plaintiff

- 26 -

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on October 2, 2020, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

   s/ JOE KENDALL
JOE KENDALL

KENDALL LAW GROUP, PLLC
3811 Turtle Creek Blvd., Suite 1450
Dallas, TX  75219
Telephone:  214/744-3000
214/744-3015 (fax)

E-mail:  jkendall@kendalllawgroup.com

4845-6493-3837.v1-10/2/20

# Mailing Information for a Case 3:16-cv-03111-K Ramirez v. Exxon Mobil Corporation et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **X Jay Alvarez**
  JayA@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Justin Anderson**
  janderson@paulweiss.com,mao_fednational@paulweiss.com

- **Mary K Blasy**
  mblasy@rgrdlaw.com,e_file_ny@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Balon B Bradley**
  balon@bbradleylaw.com,balonbb@aol.com,anneh@bbradleylaw.com,tracy@bbradleylaw.com

- **Nina Cortell**
  nina.cortell@haynesboone.com,denise.stilz@haynesboone.com,robin.hart@haynesboone.com

- **Patrick Coughlin**
  patc@rgrdlaw.com

- **Ralph H Duggins**
  rduggins@canteyhanger.com,adrake@canteyhanger.com

- **Royal Furgeson**
  royal@furgesonlaw.com

- **Brian Matthew Gillett**
  brian.gillett@squirepb.com,ecf@squirepb.com,janine.schiell@squirepb.com

- **Daniel H Gold**
  daniel.gold@haynesboone.com,elaine.hadaway@haynesboone.com

- **John C Herman**
  jherman@rgrdlaw.com,smeister@rgrdlaw.com

- **Jonathan Hurwitz**
  jhurwitz@paulweiss.com,mao_fednational@paulweiss.com

- **Joe Kendall**
  jkendall@kendalllawgroup.com,administrator@kendalllawgroup.com

- **Daniel Kramer**
  DKramer@paulweiss.com,mao_fednational@paulweiss.com

- **Gregory F Laufer**
  GLaufer@paulweiss.com,BTannenbaum@paulweiss.com,mao_fednational@paulweiss.com,MStachel@paulweiss.com

- **Nathan R. Lindell**
  nlindell@rgrdlaw.com,karenc@rgrdlaw.com,e_file_sd@rgrdlaw.com,susanw@rgrdlaw.com

- **D Patrick Long**
  patrick.long@squirepb.com,ecf@squirepb.com,annie.purcell@squirepb.com,docketingrequest@squirepb.com,janine.schiell@squirepb.com

- **Erika Oliver**
  eoliver@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Sara Bierl Polychron**
  spolychron@rgrdlaw.com

- **Samuel H Rudman**
  srudman@rgrdlaw.com,e_file_ny@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Scott H Saham**
  scotts@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Daniel Toal**
  DToal@paulweiss.com,mao_fednational@paulweiss.com

- **Theodore V. Wells**
  twells@paulweiss.com,mao_fednational@paulweiss.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)