IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| PEDRO RAMIREZ, JR., Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>    v.<br><br>EXXON MOBIL CORPORATION, REX W. TILLERSON, ANDREW P. SWIGER, JEFFREY J. WOODBURY, and DAVID S. ROSENTHAL,<br><br>    Defendants. | Case No. 3:16-cv-03111-K |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR RECONSIDERATION OF THEIR MOTIONS TO DISMISS AND TO STRIKE BASED ON NEW CASE DEVELOPMENT**

**[PUBLIC REDACTED VERSION]**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................................ 1

ARGUMENT ................................................................................................................. 2

I.  Plaintiff's Allegations about ExxonMobil's Use of Proxy Costs and GHG Costs Are Barred and Are No Longer Plausible. .................................................................. 2

II.  Plaintiff Cannot Use Its Allegations about Proxy Costs and GHG Costs to Support Its Claims Regarding the RMDG Impairment and Kearl Proved Reserves. ................................ 2

III.  Plaintiff's Remaining Accounting-Based Allegations Premised on the Actions of Competitors and Declining Energy Prices Are Not Plausible. ................................................. 5

IV.  Plaintiff's Allegations Concerning Materiality Are No Longer Plausible. ............................ 6

V.  Plaintiff's Allegations Do Not Support a Strong Inference of Scienter. ................................ 7

VI.  Plaintiff's Reliance on the "Evidence Produced to Date" is Unavailing. ............................... 9

CONCLUSION ............................................................................................................. 10

i

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Carlton* v. *Cannon*,
184 F. Supp. 3d 428 (S.D. Tex. 2016) ......................................................................8

*In re Exxon Mobil Corp. Sec. Litig.*,
387 F. Supp. 2d 407 (D.N.J. 2005)) .........................................................................5

*People* v. *Exxon Mobil Corp.*,
119 N.Y.S.3d 829 (TABLE), 2019 WL 6795771 (N.Y. Sup. Ct. Dec. 10, 2019) ..............4, 6, 7

*Konkol* v. *Diebold, Inc.*,
590 F.3d 390 (6th Cir. 2009) ...................................................................................7

*MAZ Encryption Techs., LLC* v. *BlackBerry Ltd.*,
347 F. Supp. 3d 283 (N.D. Tex. 2018) ......................................................................2

*Plumbers & Steamfitters Local 773 Pension Fund* v. *Canadian Imperial Bank of Commerce*,
694 F. Supp. 2d 287 (S.D.N.Y. 2010) .......................................................................5

*Ramirez* v. *Exxon Mobil Corp.*,
334 F. Supp. 3d 832 (N.D. Tex. 2018) ....................................................................2, 3

*Tellabs, Inc.* v. *Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007) ................................................................................................7

OTHER AUTHORITIES

17 C.F.R. § 210.4-10(a)(22) .................................................................................4, 10

## **PRELIMINARY STATEMENT**

Plaintiff's opposition confirms that reconsideration of the 2018 Memorandum Opinion and Order on Defendants' motion to dismiss is warranted. Plaintiff does not deny that (i) its Complaint relied on NYAG's now-discredited allegations and "evidence," (ii) NYAG tried those same allegations, and (iii) NYAG lost. The 2019 NYAG Decision calls for reconsideration of Plaintiff's allegations for two reasons. *First*, Plaintiff's claims are precluded by the NYAG Decision because Plaintiff was in privity with NYAG and its claims were, or could have been, litigated in the NYAG Action. *Second*, Plaintiff's allegations are no longer supportable because, having seen the results of the NYAG Action, Plaintiff has no plausible basis to continue advancing them.

Plaintiff understands that it cannot continue with its allegations about ExxonMobil's use of proxy costs of carbon and GHG costs—and that has profound implications. As a threshold matter, any claimed misstatements based on ExxonMobil's use of those metrics fall out. Further, those proxy cost and GHG cost allegations cannot be used to support Plaintiff's accounting claims regarding ExxonMobil's Rocky Mountain Dry Gas (RMDG) impairment or de-booking of proved reserves at its Kearl project. Plaintiff does not argue otherwise, now relegating its allegations about proxy costs and GHG costs to an "alternative—but by no means necessary—avenue of additional support." (ECF No. 133 at 11 ("Opp.").) This concession properly recognizes that Plaintiff's allegations about proxy costs and GHG costs should play no role in this case. That in turn requires a re-examination of Plaintiff's accounting claims, which fail on account of their reliance on allegations about ExxonMobil's use of proxy costs and GHG costs, and for other reasons detailed below.

## ARGUMENT

**I.    Plaintiff's Allegations about ExxonMobil's Use of Proxy Costs and GHG Costs Are Barred and Are No Longer Plausible.**

As Defendants showed (ECF No. 122 ("Mot.") 7–8), Plaintiff's allegations that ExxonMobil made material misstatements concerning its use of proxy costs of carbon and GHG costs were wholly dependent on NYAG's now-rejected allegations and documents attached to the discredited Oleske Affirmation.  Indeed, these rejected allegations and documents were the entire basis of Plaintiff's claims discussed in the first section of this Court's 2018 opinion analyzing Plaintiff's alleged misstatements.  *Ramirez* v. *Exxon Mobil Corp.*, 334 F. Supp. 3d 832, 846–47 (N.D. Tex. 2018).  But Plaintiff's opposition does not defend—and effectively abandons—these allegations. (Opp. 11.)  This abandonment alone warrants reconsideration, given these claims are undeniably precluded by res judicata[1] and no longer supportable because they were expressly based on the same baseless allegations NYAG tried and lost.[2]

**II.    Plaintiff Cannot Use Its Allegations about Proxy Costs and GHG Costs to Support Its Claims Regarding the RMDG Impairment and Kearl Proved Reserves.**

Having effectively abandoned its claims relating to ExxonMobil's use of proxy costs and GHG costs, Plaintiff also cannot proceed with claims that *rely* on those discredited allegations as a purportedly "alternative" basis for challenging ExxonMobil's statements about its RMDG assets or its Kearl project.

**Plaintiff's RMDG Impairment Claim Depends on Allegations about ExxonMobil's Use of Proxy Costs and GHG Costs and Is Not Supportable.**  As Defendants showed, Plaintiff's

---

[1]    Plaintiff admits that this Court can consider the preclusive effect of the NYAG Decision on a motion to dismiss. (Opp. 17.)  *See also MAZ Encryption Techs., LLC* v. *BlackBerry Ltd.*, 347 F. Supp. 3d 283, 293–94 (N.D. Tex. 2018) (granting motion to dismiss on preclusion grounds, and taking judicial notice of case files) (citing cases).

[2]    The dismissal of these allegations alone shortens the start of the putative class period by almost two years (i.e., from March 31, 2014 to February 24, 2016), knocks out three of the seven alleged corrective disclosures, and significantly streamlines this case.

2

RMDG impairment claim relied on and incorporated NYAG's defective allegations regarding ExxonMobil's use of proxy costs and GHG costs. (Mot. 9–10.) Plaintiff does not dispute that its allegations regarding ExxonMobil's use of proxy costs and GHG costs in its impairment evaluations are not plausible. Instead, Plaintiff now contends that (i) the use of proxy and GHG costs was an alternative theory that "further bolstered" its claims, and (ii) the NYAG Decision only related to an asset at Mobile Bay and so does not bar its claims about purported impairments of other ExxonMobil assets. (Opp. 6–8.) Plaintiff's arguments are without merit.

*First*, Plaintiff's allegations regarding ExxonMobil's use of proxy costs and GHG costs in its impairment evaluations were *central* to its claim that the inclusion of such costs into the "asset impairment calculations for its Rocky Mountain dry gas operations prior to 2016 . . . would have been significant, and would have clearly rendered such assets impaired." (ECF No. 36 ¶ 372; *see also id.* ¶ 371 ("Exxon was required to include the stated GHG 'proxy costs' used for its internal business planning purposes in connection with the Company's asset impairment calculations for its Rocky Mountain dry gas operations.").) Indeed, this Court recognized in the section of its 2018 opinion analyzing alleged misstatements related to the RMDG assets that Plaintiff's allegations depended on ExxonMobil's purported misuse of proxy costs. *See Ramirez*, 334 F. Supp. 3d at 846–47 ("Pension Fund alleges ExxonMobil failed to incorporate a proxy cost of carbon in its impairment analysis. By allegedly failing to include a proxy cost in its impairment determination, ExxonMobil's purported opinion that Rocky Mountain Dry Gas Operation was not impaired by year-end 2015 . . . [was] materially misleading."). Plaintiff does not, and cannot, defend these allegations, tacitly admitting that they are no longer supportable.

*Second*, as discussed in Defendants' Supplemental Brief (ECF No. 120) and Reply (filed concurrently with this brief), NYAG investigated all of ExxonMobil's impairment assessments,

3

including as to the RMDG assets in 2015, and then alleged the same theory Plaintiff alleges here as to the Mobile Bay asset.  (*See* ECF No. 120 ("Supp. Br.") at 6, 13.)  Plaintiff's allegations about proxy costs and GHG costs in relation to the RMDG Impairment thus could have been litigated in the NYAG Action, so are precluded by the NYAG Decision.  In the NYAG Decision, Justice Ostrager found that (i) ExxonMobil had the discretion to determine that it was not appropriate to add a GHG cost assumption to Mobile Bay for 2015, (ii) Mobile Bay was not impaired in 2016 when ExxonMobil did include GHG costs in its impairment analysis, and (iii) the inclusion of GHG costs was not a significant assumption.  *People* v. *Exxon Mobil Corp.*, 119 N.Y.S.3d 829 (TABLE), 2019 WL 6795771, at \*29–30 (N.Y. Sup. Ct. Dec. 10, 2019).  All of these findings bar and render implausible Plaintiff's copycat theory regarding the RMDG assets.  These allegations should thus be dismissed.

**Plaintiff's Kearl Proved Reserves Claim Depends on Allegations about ExxonMobil's Use of Proxy Costs and GHG Costs and Is Not Supportable.**  As Defendants showed (Mot. 9), the NYAG Decision rejected NYAG's allegations—which are the basis for Plaintiff's allegations—that ExxonMobil's proved reserves determinations, including at its Kearl operations, should have incorporated proxy costs of carbon.  *See Exxon Mobil Corp.*, at \*19 (holding that ExxonMobil's projected regulatory costs had no effect on its publicly reported proved reserves which—in accordance with governing regulations—must account only for "existing economic conditions, operating methods, and government regulations.") (quoting 17 C.F.R. § 210.4-10(a)(22)).  In response, Plaintiff does not dispute that (i) it alleged ExxonMobil failed to use proxy costs in its proved reserves determinations, or (ii) that these allegations are no longer supportable.  These allegations are thus barred by res judicata, no longer defensible given their rejection by the NYAG Decision, and should be dismissed.

4

III.     **Plaintiff's Remaining Accounting-Based Allegations Premised on the Actions of Competitors and Declining Energy Prices Are Not Plausible.**

Given Plaintiff's confirmation that it no longer seeks to advance allegations relating to ExxonMobil's use of the proxy cost and GHG costs—including in its impairment assessments and proved reserves determinations, Plaintiff argues that it should be able to proceed on allegations regarding the RMDG Impairment, de-booking of proved reserves at the Kearl project, and alleged three-month loss at the Canadian bitumen operations based on (i) the actions of competitors, and (ii) low energy prices.  Plaintiff is mistaken.

As shown in Defendants' Supplemental Brief and Reply, all of these allegations are based on the same transactional facts investigated and litigated by NYAG.  They are thus precluded by res judicata. (*See* Supp. Br. 15–16.)  Indeed, as detailed in Defendants' Supplemental Brief and Reply in support, even Plaintiff's claim concerning the purported "three-month loss at [the] Canadian bitumen operations" was part of the same transaction at issue in the NYAG Decision and is thus precluded.  (*Id.*)

In addition, these allegations are not sufficient to plausibly allege that ExxonMobil's public statements were false or misleading.  As to the RMDG Impairment and Kearl proved reserves determinations, courts have routinely held that allegations a company made false or misleading statements by failing to recognize an impairment or to de-book proved reserves were implausible when based only on (i) declining energy prices, and (ii) the actions of competitors as to different assets with different costs structures under different accounting standards.  *See In re Exxon Mobil Corp. Sec. Litig.*, 387 F. Supp. 2d 407, 426–27 (D.N.J. 2005) (dismissing complaint alleging that "the state of oil prices in 1998 and the actions of Exxon's competitors" in taking impairment charges required ExxonMobil to recognize impairment), *aff'd*, 500 F.3d 189 (3d Cir. 2007); *Plumbers & Steamfitters Local 773 Pension Fund* v. *Canadian Imperial Bank of Commerce*, 694

F. Supp. 2d 287, 301–03 (S.D.N.Y. 2010) (granting motion to dismiss claims based on alleged improper failure to take asset write-downs in earlier period because "the securities laws do not allow fraud by hindsight claims"). All of Plaintiff's remaining claims should thus be dismissed.

## IV.    Plaintiff's Allegations Concerning Materiality Are No Longer Plausible.

Defendants also demonstrated that ExxonMobil's use of proxy costs was not material to investors because use of such costs is inherently speculative. (*See* Mot. 10.) In particular, Justice Ostrager expressly found that no reasonable investor "would make investment decisions based on speculative assumptions of costs that may be incurred 20+ or 30+ years in the future," and that NYAG failed to proffer testimony from any investors or analysts to support its claim that ExxonMobil's "alleged misrepresentations were material and important to research analysts and the investing public." *Exxon Mobil Corp.*, 2019 WL 6795771, at *20, *22. Plaintiff's argument that (i) the size and significance of the proved reserves at ExxonMobil's Canadian bitumen operations, and, "more specifically, the Kearl operation"; and (ii) the magnitude of the impairment charge taken for the RMDG assets at year-end 2016, and the corresponding failure to recognize an impairment at year-end 2015, support its allegations of materiality is without merit. (Opp. 12–13.) Because the NYAG Decision has discredited—and precluded—the basis for Plaintiff's allegations as to Kearl proved reserves and the RMDG Impairment, Plaintiff can no longer claim that its allegations concerning materiality are plausible.[3]

---

[3]    Plaintiff mischaracterizes Dr. Ferrell's testimony by claiming that he admitted that two alleged corrective disclosures (July 29, 2016 and October 28, 2016) were followed by statistically significant stock declines and that this admission conclusively establishes the materiality of its claims. (Opp. 13.) On the contrary, Dr. Ferrell opined that the purportedly corrective information that Plaintiff alleged was released to the market on these dates "was already impounded into ExxonMobil's stock price and thus could not have had a price impact," because it had already been available to the market long before these dates. (ECF No. 98-12 Ex. 11 at 101.)

6

**V.      Plaintiff's Allegations Do Not Support a Strong Inference of Scienter.**

Defendants demonstrated that, like Plaintiff, NYAG alleged that ExxonMobil committed fraud and made these same allegedly false and misleading public statements with scienter.  At the end of trial in the NYAG Action, NYAG took the extraordinary step of dropping its common law fraud claim, effectively acknowledging there was no evidence of scienter.  And, in the NYAG Decision, Justice Ostrager specifically found that NYAG's abandoned claim would have failed, even if it had not been withdrawn.  *Exxon Mobil Corp.*, 2019 WL 6795771, at \*2.  Indeed, Justice Ostrager observed that ExxonMobil's executives, including Messrs. Tillerson and Rosenthal (who were both witnesses), were "uniformly committed to rigorously discharging their duties in the most comprehensive and meticulous manner possible" and entirely truthful.  *Id.*, at \*21.

In response, Plaintiff argues that "numerous particularized facts" nonetheless support the Court's findings of scienter.  Not so.  None of Plaintiff's allegations, when set against both (i) the NYAG Decision's exoneration of ExxonMobil and its executives, and (ii) NYAG's own abandonment of its scienter-based claim, are sufficient to plead the requisite strong inference of scienter.  The only cogent and compelling inference is that ExxonMobil and its executives did not act with scienter.  *Tellabs, Inc.* v. *Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323–24 (2007) (because the strength of an inference is "inherently comparative," "a court must consider plausible, nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff.").

*First*, the NYAG Decision and the NYAG's public abandonment of its scienter-based claim is a powerful, judicially noticeable fact of non-fraudulent intent.  Courts nationwide have held that *unadjudicated* related complaints and investigations by regulators and attorneys general do not support an inference of scienter for purposes of alleging a section 10(b) claim.  *See Konkol* v. *Diebold, Inc.*, 590 F.3d 390, 402 (6th Cir. 2009) ("[A] decision by government agencies to

7

investigate a company is not sufficient to meet the heightened *Tellabs* standard on its own."), *abrogated on other grounds by Frank* v. *Dana Corp.*, 646 F.3d 954 (6th Cir. 2011). The NYAG Decision, which was adjudicated in ExxonMobil's favor, tilts the scale *even further* towards a finding of non-fraudulent intent. For example, in *Carlton* v. *Cannon*, the court dismissed a section 10(b) claim, reasoning that the existence of an SEC investigation did not support a strong inference of scienter, especially because "plaintiffs have not alleged the outcome" of the investigation. 184 F. Supp. 3d 428, 479–80 (S.D. Tex. 2016). Here, the outcome is known. The NYAG failed to uncover any evidence of scienter—because there is none.

*Second*, the other allegations that Plaintiff argues support the Court's findings of scienter— (i) the purported desire to maintain ExxonMobil's AAA credit rating; (ii) the mere signing of ExxonMobil's SEC filings by Messrs. Tillerson, Swiger, and Rosenthal; and (iii) vague "briefings" provided to Messrs. Tillerson and Swiger—cannot support a strong inference of scienter given the powerful countervailing inference of non-fraudulent intent presented by the NYAG Decision and NYAG's abandonment of its scienter-based claim.

*Finally*, Plaintiff's scienter allegations specifically relied on discredited allegations relating to knowledge by Messrs. Tillerson, Rosenthal, and Swiger of ExxonMobil's use of proxy costs and GHG costs. (*See* ECF No. 36 ¶ 377 (Defendants' alleged misrepresentations include "the Company's purported efforts to incorporate carbon or GHG proxy costs into its investment and valuation processes concerning such assets.").) Given that Plaintiff has abandoned its claims as to ExxonMobil's use of proxy costs and GHG costs, as well as the resounding rejection of such allegations in the NYAG Action, Plaintiff's related scienter allegations should be disregarded.

8

**VI.     Plaintiff's Reliance on the "Evidence Produced to Date" is Unavailing.**

In a last ditch attempt to avoid dismissal, Plaintiff argues that the "extremely limited evidence produced to date" provides further support for its claims.  Plaintiff's arguments are incorrect and provide no basis to deny reconsideration.

*First*, contrary to Plaintiff's contention, Plaintiff received *voluminous* merits-based document discovery under the Class Certification Scheduling Order.  (ECF No. 71.)  Plaintiff has received, among other things, documents that were produced to NYAG and the SEC that were relevant to its claims, consisting of approximately 315,719 documents totaling 1,758,864 pages.  The fact that Plaintiff sought this information underscores that Plaintiff's claims were premised on NYAG's defective allegations.

*Second*, the two documents Plaintiff cites do not provide "strong support" for Plaintiff's claims.  (Opp. 18.)  Pointing to a draft profitability analysis from 2016, Plaintiff argues that Defendants violated GAAP and materially misled investors by failing to disclose and properly account for ExxonMobil's purportedly significantly impaired RMDG assets in connection with its SEC filings.  (*Id.*)  But Plaintiff overlooks conclusive evidence to the contrary in its possession.  Specifically, ExxonMobil's impairment assessments for these assets as of year-end 2015 demonstrated that the RMDG assets were not remotely at risk of impairment because each asset's fair market value exceeded its carrying value by at least ███████ and, collectively, the assets' fair market value exceeded their carrying value by nearly ██████. (Reply App. 6.)

Plaintiff also points to a November 2015 asset recoverability review—purportedly showing that the Kearl project was losing ████ per barrel in 2015, and that as of December 2015, had suffered 2015 year-to-date losses of ████████—to argue that Defendants violated GAAP and materially misled investors by concealing Kearl's losses, while simultaneously representing in ExxonMobil's 2015 10-K that ExxonMobil's Canadian bitumen operations were generating profits

9

of $5.87 per barrel. (Opp. 18.) But the portion of the asset recoverability review Plaintiff cites was dated as of "June YTD 2015," not as of year-end 2015, when ExxonMobil disclosed its profits in the 2015 Form 10-K. (ECF No. 89-4, Ex. J at App. 268.)

Notably, notwithstanding the voluminous production Plaintiff has received, it cannot point to a single document to support its claims that ExxonMobil should have earlier de-booked, or warned of the near certainty of de-booking of, certain proved reserves at its Kearl operations. That is because Plaintiff's allegations have no merit. SEC rules require companies to de-book proved reserves in their SEC filings only if the current cost of producing the commodity exceeds its unweighted average price over the prior calendar year. 17 C.F.R. § 210.4-10(a)(22)(v). As documents produced to Plaintiff make clear, as of year-end 2015, the cost of production for a barrel of bitumen produced from Kearl was ███, while the unweighted average price was ███. (Reply App. 11.) Accordingly, ExxonMobil did not, and could not, de-book any of its Kearl proved reserves.

## CONCLUSION

Plaintiff relied on NYAG's allegations when amending its complaint. NYAG took those allegations to trial and lost. Plaintiff is both precluded from, and no longer has a plausible basis for, re-trying those allegations here. Defendants respectfully ask this Court to reconsider the motion to dismiss and to strike and to grant it in its entirety. At a minimum, Plaintiff should not be permitted to pursue allegations regarding ExxonMobil's use of proxy costs of carbon and GHG costs whether as a challenge to ExxonMobil's statements about those costs or as a purportedly "alternative" basis for challenging other statements that were allegedly rendered false or misleading on that basis.

Dated:  October 16, 2020

Respectfully submitted,


/s/ Daniel J. Kramer
Theodore V. Wells, Jr. (*pro hac vice*)
Daniel J. Kramer (*pro hac vice*)
Daniel J. Toal (*pro hac vice*)
Justin Anderson (*pro hac vice*)
Matthew D. Stachel (*pro hac vice*)
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY  10019-6064
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
twells@paulweiss.com
dkramer@paulweiss.com
dtoal@paulweiss.com
janderson@paulweiss.com
mstachel@paulweiss.com


/s/ D. Patrick Long
D. Patrick Long
Texas State Bar No. 12515500
Brian M. Gillett
Texas State Bar No. 24069785
SQUIRE PATTON BOGGS
2000 McKinney Ave., Suite 1700
Dallas, TX 75201
Telephone: (214) 758-1505
Facsimile: (214) 758-1550
patrick.long@squirepb.com
brian.gillett@squirepb.com

*Counsel for Rex W. Tillerson*


/s/ Nina Cortell
Nina Cortell
Texas State Bar No. 04844500
Daniel H. Gold
Texas State Bar No. 24053230
HAYNES AND BOONE, LLP
2323 Victory Avenue, Suite 700
Dallas, TX 75219
Telephone: (214) 651-5000
Facsimile: (214) 651-5940
nina.cortell@haynesboone.com
daniel.gold@haynesboone.com

*Counsel for Exxon Mobil Corporation,*
*Andrew P. Swiger, Jeffrey J. Woodbury,*
*and David S. Rosenthal*

11

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing document has been

served by electronic CM/ECF filing, on this 16th day of October, 2020.

*/s/ Daniel J. Kramer*
Daniel J. Kramer