IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

|  |  |
|---|---|
| PEDRO RAMIREZ, JR., Individually and on Behalf of All Others Similarly Situated,<br><br>     Plaintiff,<br><br>    v.<br><br>EXXON MOBIL CORPORATION, REX W. TILLERSON, ANDREW P. SWIGER, JEFFREY J. WOODBURY, and DAVID S. ROSENTHAL,<br><br>     Defendants. | Case No. 3:16-cv-03111-K |

**DEFENDANTS' REPLY IN FURTHER SUPPORT OF ITS
SUPPLEMENTAL BRIEF ADDRESSING NEW CASE DEVELOPMENT**

TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ........................................................................................................................... 2

I.      Privity Is Established Because NYAG Acted in a Representative Capacity. ..................... 2

II.     NYAG Litigated or Could Have Litigated All of Plaintiff's Claims. ................................ 5

III.    Preclusion Defeats Class Certification. ........................................................................... 8

CONCLUSION ....................................................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*People* v. *Applied Card Sys., Inc.*,
    894 N.E.2d 1 (N.Y. 2008)...................................................................................2-4

*Bell Atl. Corp.* v. *AT&T Corp.*,
    339 F.3d 294 (5th Cir. 2003) ..................................................................................9

*Brodsky* v. *Carter*,
    No. 15-CV-3469 (GBD) (DF), 2015 WL 13746671 (S.D.N.Y. Dec. 15, 2015) .......................4

*Burgos* v. *Hopkins*,
    14 F.3d 787 (2d Cir. 1994)......................................................................................4

*Chiara* v. *Town of New Castle*,
    2 N.Y.S.3d 132 (N.Y. App. Div. 2015) .....................................................................5

*People* v. *Credit Suisse Sec. (USA) LLC*,
    107 N.E.3d 515 (N.Y. 2018)....................................................................................3

*People* v. *Credit Suisse Sec. (USA) LLC*,
    7 N.Y.S.3d 244 (TABLE), 2014 WL 7665038 (N.Y. Sup. Ct. Dec. 24, 2014) ..........................3

*People* v. *Exxon Mobil Corp.*,
    2019 WL 6795771 (N.Y. Sup. Ct. Dec. 10, 2019) ...............................................5, 6

*Farren* v. *Lisogorsky*,
    928 N.Y.S.2d 765 (N.Y. App. Div. 2011) .................................................................4

*Green* v. *Santa Fe Indus., Inc.*,
    514 N.E.2d 105 (N.Y. 1987)....................................................................................4

*In re Hunter*,
    827 N.E.2d 269 (N.Y. 2005).................................................................................1, 6

*Interoceanica Corp.* v. *Sound Pilots, Inc.*,
    107 F.3d 86 (2d Cir. 1997)......................................................................................7

*Marchon Eyewear, Inc.* v. *Tura LP*,
    No. 98-CV-1932 (SJ), 2002 WL 31253199 (E.D.N.Y. Sep. 30, 2002) ....................................7

*Newton* v. *Southern Wood Piedmont Co.*,
    163 F.R.D. 625 (S.D. Ga. 1995) ..............................................................................9

*Paramount Pictures Corp.* v. *Allianz Risk Transfer AG*,
    96 N.E.3d 737 (N.Y. 2018)......................................................................................7

*Parker* v. *Blauvelt Volunteer Fire Co.*,
    93 N.Y.2d 343 (1999) .................................................................................................4

*Powers* v. *Credit Mgmt. Servs., Inc.*,
    776 F.3d 567 (8th Cir. 2015) ......................................................................................9

*Richards* v. *Jefferson Cty.*,
    517 U.S. 793 (1996).....................................................................................................4

*Robinson* v. *Texas Automotive Dealers Ass'n*,
    387 F.3d 416 (5th Cir. 2004) ......................................................................................8

*Sherwyn Toppin Mktg. Consultants, Inc.* v. *New York State Liquor Auth.*,
    958 N.Y.S.2d 794 (N.Y. App. Div. 2013) ..................................................................4

*Specialized Realty Services* v. *Maikisch*,
    999 N.Y.S.2d 430 (N.Y. App. Div. 2014) ..................................................................7

*SEC* v. *Thompson*,
    238 F. Supp. 3d 575 (S.D.N.Y. 2017)........................................................................7

*Unger* v. *Amedisys Inc.*,
    401 F.3d 316 (5th Cir. 2005) ....................................................................................10

*Taylor* v. *Sturgell*,
    553 U.S. 880, 885 (2008)............................................................................................3

*Texas* v. *United States Dep't of Labor*,
    929 F.3d 205 (5th Cir. 2019) ......................................................................................3

*Waldman* v. *Vill. of Kiryas Joel*,
    207 F.3d 105 (2d Cir. 2000)........................................................................................7

*Xiao Yang Chen* v. *Fischer*,
    843 N.E.2d 723 (N.Y. 2005)........................................................................................7

iii

## PRELIMINARY STATEMENT

Plaintiff does not, and cannot, dispute that the NYAG Action—which forms the basis for Plaintiff's allegations in this case—was litigated to a final, unappealed judgment in ExxonMobil's favor on all claims.  Under settled res judicata law, the NYAG Decision binds all putative class members in privity with NYAG and bars all claims in this action founded on the same transactional facts as in the NYAG Action.  Because of preclusion, Plaintiff also cannot satisfy its burden to show predominance, numerosity, or adequacy, as required for class certification.  Plaintiff's arguments in response come nowhere close to satisfying its burden.

*First*, New York preclusion law governs,[1] and it provides that Plaintiff and all putative class members were in privity with NYAG because NYAG acted in a representative capacity on behalf of investors who were New York residents or made their purchases in New York.  Plaintiff ignores binding New York law, and instead asks this Court to follow cases where privity was not established because—unlike here—the first lawsuit was not asserted in representative capacity.

*Second*, Plaintiff does not, and cannot, deny that its allegations stem from the same core of transactional facts underlying the NYAG Action and investigation, and preclusion bars not only claims NYAG brought, but also those it could have brought.[2]  The NYAG Action undeniably directly addressed Plaintiff's allegations regarding ExxonMobil's use of proxy costs of carbon and GHG costs, including the use of those metrics in its proved reserves determinations and impairment analyses.  Plaintiff makes no effort to dispute that these claims were actually litigated in the NYAG Action.  All of Plaintiff's allegations relying on ExxonMobil's use of proxy costs

---

[1]    ECF No. 120 at 10 ("Supp. Br.") (citing cases).  Plaintiff does not dispute that New York law governs the preclusive effect of the NYAG Decision on this action.

[2]    *In re Hunter*, 827 N.E.2d 269, 274–75 (N.Y. 2005) (under New York res judicata law, "'once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy.'") (internal quotation marks omitted).

1

and GHG costs are accordingly precluded, whether asserted as a challenge to ExxonMobil's statements about those costs or as a purportedly "alternative" basis for challenging other statements that were allegedly rendered false or misleading on that basis.  Plaintiff notes that it also attacks ExxonMobil's reserve determinations and impairment analyses based on declining energy prices and the actions of ExxonMobil's competitors, but ignores that these claims spring from the same common transactional facts that NYAG investigated and could have litigated.  As a result, these claims are also barred as a matter of law.

*Finally*, preclusion defeats Plaintiff's ability to show class certification is warranted.  The detailed individualized inquiries required to determine whether any class members have claims that are not precluded—including whether any reside outside of New York and purchased their shares through New York brokers or exchanges—overwhelm common issues and destroy predominance.  Plaintiff also has failed to establish numerosity because Plaintiff does not identify any class members whose claims would not be barred.  Nor can Plaintiff establish adequacy because its own claims are precluded given that all of its stock purchases were made on the NYSE.

Accordingly, Plaintiff's Motion for Class Certification should be denied in its entirety.  At a minimum, any class should not be permitted to pursue allegations regarding ExxonMobil's use of proxy costs and GHG costs and the putative class period should be correspondingly adjusted.

## ARGUMENT

### I.    Privity Is Established Because NYAG Acted in a Representative Capacity.

**NYAG Represented New York Residents and Non-Residents Alike.**  Under binding New York law, all putative class members who are New York residents were represented by NYAG pursuant to New York statutory and common law authority.  (Supp. Br. 17 (citing *People* v. *Applied Card Sys., Inc.*, 894 N.E.2d 1, 12–14 (N.Y. 2008)).)  Under that same authority, NYAG

also represented all putative class members who are not New York residents as to (i) stock purchases that occurred on New York stock exchanges, and (ii) alleged wrongdoing that took place, at least partially, in New York. (*Id.* 18–19.)  In its opposition, Plaintiff does not mention, let alone contest, the statutory and common law authorities, including decisions of New York's highest court, establishing that when it proceeds in a representative capacity, as here, NYAG represents New York residents and non-residents alike.  *See Applied Card*, 894 N.E.2d at 13–15; *People* v. *Credit Suisse Sec. (USA) LLC*, 107 N.E.3d 515, 521 (N.Y. 2018).

Plaintiff instead relies principally on cases that are inapposite because the first lawsuit was not brought in a representative capacity.  (ECF No. 134 at 1, 8–10 ("Opp.").)  In *Taylor* v. *Sturgell*, the plaintiff sought the same information in a FOIA action that his friend had previously sought. 553 U.S. 880, 885 (2008).  The two men had "no legal relationship"; nevertheless, the intermediate court held that plaintiff's suit was barred because his friend was his "virtual representative," notwithstanding that the friend's suit was not brought in any true representative capacity.  *Id.*  In reversing, the Supreme Court expressly contrasted the rejected "virtual representation" theory of non-party res judicata with the recognized exception providing for non-party preclusion by "representative suits," including, but not limited to, class actions and suits by trustees and other fiduciaries.  *Id.* at 894.  That exception applies here as NYAG acted in a representative capacity.

The two other cases Plaintiff relies on are similarly inapt.  (Opp. 3, 8–9.)  Both were decided under federal common law—not New York law—and involved situations where the regulator in the first action *did not* act in a representative capacity for the parties in the second action.  *See Texas* v. *United States Dep't of Labor*, 929 F.3d 205, 213 (5th Cir. 2019) (no privity where Department of Labor's first suit was not asserted under authority to represent private litigant); *People* v. *Credit Suisse Sec. (USA) LLC*, 7 N.Y.S.3d 244 (TABLE), 2014 WL 7665038, at

*9 (N.Y. Sup. Ct. Dec. 24, 2014) (no privity between SEC, on the one hand, and NYAG or New York investors, on the other, where the SEC did not represent "their interests . . . formally or informally"), *aff'd*, 47 N.Y.S.3d 236 (N.Y. App. Div. 2016).[3]

Plaintiff's contention that there is no privity because it did not receive "formal notice" of the NYAG Action is mistaken. Under New York law, formal notice is not required to establish privity. *See Applied Card*, 894 N.E.2d at 13. And, in all events, Plaintiff cannot credibly claim it lacked notice of the NYAG Action as its complaint relied on NYAG's discredited allegations.

**NYAG Represented New York Residents and Non-Residents in Seeking Restitution Damages on Their Behalf.** NYAG sought restitution damages on behalf of Plaintiff and all putative class investors, which is another basis supporting privity. (Supp. Br. 21.) Plaintiff's contention that NYAG sought "mainly equitable relief" and not economic damages is thus wrong. (Opp. 9.) Plaintiff overlooks that NYAG had the authority to seek, as restitution, the same damages on behalf of investors and, in fact, did so. (App. 19, ¶ 21.)[4] As New York's highest court held in a case Defendants cited, but Plaintiff neglects to mention, the fact that NYAG did not suffer economic loss itself does not prevent privity here as NYAG had the power to represent putative class members as to the same type of compensatory relief. *Applied Card*, 894 N.E.2d at 13–15.[5]

---

[3] Plaintiff's other cases are distinguishable because they also involved non-representative first actions. *See Richards* v. *Jefferson Cty.*, 517 U.S. 793, 801 (1996); *Sherwyn Toppin Mktg. Consultants, Inc.* v. *New York State Liquor Auth.*, 958 N.Y.S.2d 794, 798 (N.Y. App. Div. 2013); *Farren* v. *Lisogorsky*, 928 N.Y.S.2d 765, 767 (N.Y. App. Div. 2011); *Green* v. *Santa Fe Indus., Inc.*, 514 N.E.2d 105, 108-09 (N.Y. 1987).

[4] Plaintiff also asserts that res judicata cannot apply because Defendants' expert, Dr. Ferrell, purportedly "conceded" that any recoverable damages stem from disclosures relating to the reserves de-booking at Kearl and RMDG impairment. (Opp. 20.) Not so. Dr. Ferrell opined that the purportedly corrective information that Plaintiff alleged was released to the market on these dates "was already impounded into ExxonMobil's stock price" because it was available to the market long before those dates, and "thus could not have had a price impact," indicating there are no recoverable damages. (ECF No. 98-12, Ex. 11 at App. 101 ¶ 11.)

[5] *Parker* v. *Blauvelt Volunteer Fire Co.*, 93 N.Y.2d 343, 349 (1999), which Plaintiff cites, is inapt because the first suit was a narrow statutory proceeding where damages claims were dismissed without prejudice to being asserted in a later plenary proceeding. Plaintiff's other cases are also inapt as they involved narrow habeas corpus actions where the available relief was not as broad as in a plenary lawsuit. *See Burgos* v. *Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994); *Brodsky* v. *Carter*, No. 15-CV-3469 (GBD) (DF), 2015 WL 13746671 (S.D.N.Y. Dec. 15, 2015).

4

II.   **NYAG Litigated or Could Have Litigated All of Plaintiff's Claims.**

Defendants showed that NYAG pursued securities claims under New York law arising from the same transactional facts that Plaintiff challenges here. (Supp. Br. 20–21.)  The fact that NYAG did not pursue the same federal securities claims Plaintiff asserts is of no consequence as settled New York law does not require that identical *legal claims* be asserted.  *See Chiara* v. *Town of New Castle*, 2 N.Y.S.3d 132, 141 (N.Y. App. Div. 2015) (applying res judicata and explaining that New York human rights claims are "'analytically identical'" to federal Title VII claims).

**Plaintiff's Claims Based on ExxonMobil's Use of Proxy Costs and GHG Costs Are Precluded.**   NYAG undeniably litigated the same allegations Plaintiff makes here that ExxonMobil's use of, and statements about, proxy costs of carbon and GHG costs were misleading, improper, and contrary to its own guidance. (Supp. Br. 13–15.)  Plaintiff makes no effort to argue otherwise.  These claims are thus precluded.

**Plaintiff's Claims Based on ExxonMobil's Use of Proxy Costs and GHG Costs in its Kearl Proved Reserves Estimates and RMDG Impairment Analyses Are Precluded.**  NYAG advanced allegations that ExxonMobil (i) deviated from its publicly represented proxy costs in determining its proved oil and gas reserves; and (ii) failed to use such proxy costs when projecting potential regulatory costs as part of all of its asset impairment analyses.  (*Id.* 12–13.)  These theories were investigated and abandoned by NYAG or otherwise failed at trial.  (*Id.*)

Plaintiff's opposition does not mention its allegations that ExxonMobil failed to timely de-book, and warn of the need to de-book, proved reserves at Kearl based on its use of proxy costs and GHG costs—implicitly conceding those claims are barred.  Indeed, Justice Ostrager found that ExxonMobil's public statements were "true and correct with respect to ExxonMobil's proved reserves." *People* v. *Exxon Mobil Corp.*, 2019 WL 6795771, at *19 (N.Y. Sup. Ct. Dec. 10, 2019).

As to the RMDG Impairment, Plaintiff now paints its proxy costs and GHG costs allegations as merely an "alternative theory." (Opp. 17–19.) Plaintiff is incorrect because, as shown, those allegations were *central* to its claim that the RMDG impairment should have been recognized sooner. (Supp. Br. 5–6, 11–12.) In any event, the NYAG Decision bars that "alternative theory" as New York res judicata law precludes not only claims that were actually litigated, but also those that could have been litigated in the prior suit. *See In re Hunter*, 827 N.E.2d at 274–75. NYAG thoroughly investigated whether the inclusion of GHG costs would have caused <u>any</u> ExxonMobil assets—including the RMDG assets—to have been impaired in 2015, and ultimately brought a claim only as to the Mobile Bay asset, which Justice Ostrager flatly rejected because, among other reasons, Justice Ostrager found that such costs were not required to be incorporated into the 2015 impairment assessments, and NYAG "failed to demonstrate that ExxonMobil's impairment disclosures and accounting practices in 2015 were inconsistent with GAAP." *Exxon Mobil Corp.*, 2019 WL 6795771, at *29–30.

Accordingly, all of Plaintiff's allegations relying on ExxonMobil's use of proxy costs of carbon and GHG costs are precluded because they were or could have been litigated by NYAG.

**Plaintiff's Other Accounting-Based Claims Are Precluded.** Defendants showed that NYAG could have brought the same accounting-based claims regarding declining energy prices and the actions of ExxonMobil's competitors that Plaintiff asserts here. (Supp. Br. 15–16.) In response, Plaintiff argues its allegations concerning an alleged three-month loss at the Canadian bitumen operations and the RMDG impairment are not precluded because they are not part of the same "transaction" that was at issue in the NYAG Action. Not so. All of these claims arise from the same set of challenged public statements and accounting determinations. Plaintiff ignores New York law holding that res judicata applies to claims that could have been litigated based on theories

"discernible from the documents filed in [the] prior proceedings"; "overlapping facts" that were "part of the same pattern of behavior by the [defendant]"; and facts that "form a convenient trial unit." (Supp. Br. 10); *Xiao Yang Chen* v. *Fischer*, 843 N.E.2d 723, 725 (N.Y. 2005).

Instead, Plaintiff incorrectly argues that res judicata applies only where a later action is founded on precisely the "same evidence" as a prior action. (Opp. 12–13.) But res judicata applies where the "essential facts" were *present* in the earlier action—even if not directly at issue. Indeed, the three cases Plaintiff cites for this proposition support Defendants' position. *See Paramount Pictures Corp.* v. *Allianz Risk Transfer AG*, 96 N.E.3d 737, 748 (N.Y. 2018) (holding that preclusion applied where the "essential facts" of the second action "were present in the first action"); *Waldman* v. *Vill. of Kiryas Joel*, 207 F.3d 105, 111 (2d Cir. 2000) (same); *Marchon Eyewear, Inc.* v. *Tura LP*, No. 98-CV-1932 (SJ), 2002 WL 31253199, at *11–12 (E.D.N.Y. Sep. 30, 2002) (preclusion inapplicable where two actions not based on "same transaction").[6]

Plaintiff's reliance on *Interoceanica Corp.* v. *Sound Pilots, Inc.*, 107 F.3d 86 (2d Cir. 1997) is thus unavailing. In *Interoceanica*, the Second Circuit held, under federal common law, that a later action was not precluded because the second case concerned a similar transaction that occurred **after and separately** from the transaction in the earlier action. *Id.* at 91. *Interoceanica* thus concerned (i) transactions that were "not related in time, space, or origin," and (ii) the same legal theory based on a *different* set of facts. *Id.* By contrast, Plaintiff asserts different legal theories based on the *same* transactional facts regarding ExxonMobil's impairment evaluations for the *same* period of time related to the *same* public statements NYAG investigated and sued on.[7]

---

6    Plaintiff mistakenly relies on *Specialized Realty Services* v. *Maikisch*, 999 N.Y.S.2d 430 (N.Y. App. Div. 2014). There, the court held res judicata inapplicable because the defendant town official was sued in his *official* capacity in the first suit, and his *personal* capacity in the second—not because the transactional facts differed. *Id.* at 432.

7    Plaintiff's reliance on *SEC* v. *Thompson*, 238 F. Supp. 3d 575 (S.D.N.Y. 2017), is similarly inapt. There, the SEC sought limited discovery in one action for the limited purpose of seeking injunctive relief. *Id.* at 593–94. In the second action, the SEC pursued plenary claims against the same defendants. *Id.* at 586. The court held it would

III.  **Preclusion Defeats Class Certification.**

**Because of Preclusion, Individualized Issues Defeat Predominance of Common Issues.**

Plaintiff mistakenly argues that individualized issues relating to preclusion are "irrelevant" and can be addressed through an "objective mechanism" like the claims administration process. (Opp. 22.)  On the contrary, individual preclusion issues will predominate here, including (i) whether each putative class member was a New York resident at the time of each purchase of ExxonMobil Stock, and (ii) whether non-New York putative class members made each stock purchase on a New York stock exchange or through a New York broker.  (Supp. Br. 22–23.)  That is because determining each class member's residency and manner of purchasing ExxonMobil stock during the proposed class period will necessarily turn on detailed factual inquiries and, especially as to residency, their *subjective* intent.  (*Id.*)  No "objective mechanism" can handle such issues.

Plaintiff's reliance on *Robinson* v. *Texas Automotive Dealers Ass'n*, 387 F.3d 416 (5th Cir. 2004), is unavailing.  The Fifth Circuit reversed class certification in *Robinson*.  In doing so, it made the unremarkable observation that class certification cannot be predicated on a "predominance of facts unrelated to the price-fixing claim," including "irrelevant matters such as geographic location."  *Id.* at 420, 423, 426.  By contrast, geography is highly relevant here as the claims of New York residents and those who transacted in New York are barred, and evaluating that issue will require individualized evidence preventing the claims of the class from being adjudicated based on evidence common to the class.

Plaintiff argues preclusion is a "secondary" issue that will not predominate over common issues, but cites no cases that have held preclusion is a secondary issue.  The Eighth Circuit has

---

be "inappropriate to invoke res judicata to bar [the second] action based exclusively on discovery admitted for purposes of **fashioning relief**, but not **establishing liability**, in the prior action."  *Id.* at 594 (emphasis added). The same is not true here.  Both NYAG and Plaintiff seek to establish liability from the same facts and sought the same relief: damages for ExxonMobil stock purchasers.

8

squarely rejected Plaintiff's position.  In *Powers* v. *Credit Mgmt. Servs., Inc.*, 776 F.3d 567, 572 n.3 (8th Cir. 2015), the court *reversed* class certification, finding that the *issue-preclusive effect* of prior state court judgments as to putative class members "fatally undermine[d] the . . . analysis of . . . predominance."  As in *Powers*, individualized preclusion issues here defeat predominance.[8]

**Preclusion Defeats Numerosity.**  Preclusion bars the claims of all putative class members who (i) are New York residents; (ii) purchased ExxonMobil stock on New York stock exchanges or through New York-based brokers; or (iii) were harmed by allegedly misleading statements emanating from New York.  (Supp. Br. 23–24.)  To meet its burden, Plaintiff must show there are sufficiently numerous investors whose claims would *not* be precluded.  Plaintiff does not attempt to do so, failing to identify a *single* class member whose claims are not barred.  (Opp. 23–24.)[9]

**Preclusion Defeats Adequacy.**  Defendants showed that a plaintiff whose own claims are barred by res judicata is not an adequate representative, as the court recognized in *Newton* v. *Southern Wood Piedmont Co.*, 163 F.R.D. 625, 633–35 (S.D. Ga. 1995), *aff'd*, 95 F.3d 59 (11th Cir. 1996) (TABLE). (Supp. Br. 24.) Tacitly acknowledging that all of ***its*** purchases were made on the New York Stock Exchange, Plaintiff does not dispute that preclusion defeats adequacy or even mention *Newton*.  Plaintiff argues only that preclusion does not apply (Opp. 22 n.10), but Plaintiff is incorrect as shown above.  Preclusion thus defeats Plaintiff's ability to show adequacy.

**Preclusion Is a Class-Certification Issue.**  Plaintiff contends that the preclusive effect of the NYAG Decision should not be considered because it is "merits-based."  (*Id.* 20.)  Plaintiff is wrong.  As shown above, courts have considered preclusion issues when assessing predominance and adequacy and, by extension, such issues also bear on numerosity.  Plaintiff cites no contrary

---

8    Under Fifth Circuit case law, even a single individual issue like damages can defeat class certification, despite the presence of common issues.  *E.g.*, *Bell Atl. Corp.* v. *AT&T Corp.*, 339 F.3d 294, 307 (5th Cir. 2003).

9    Plaintiff's reliance on the total number of shares or estimated number of shareholders does not address the preclusion issue that significantly impacts the number of putative class members.

case law.  To meaningfully address those class-certification issues, this Court must necessarily consider the scope of the NYAG Decision's preclusive effect and whether, based on detailed individualized inquiries, putative class members' claims are barred.

The principal case Plaintiff cites actually supports Defendants' position. In *Unger* v. *Amedisys Inc.*, 401 F.3d 316 (5th Cir. 2005), the Fifth Circuit explained that the class certification analysis is not a shallow inquiry, but requires the court to go "'beyond the pleadings'" to "'understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues.'" *Id.* at 321. Plaintiff's other cases are inapt because the *common issues* of materiality, loss causation, and traceability would largely rise or fall on *common facts*.  By contrast, whether class members' individual claims are precluded requires a detailed review of individual facts, often including putative class members' subjective intent.

**At a Minimum, Preclusion Warrants Narrowing the Class Period.** Plaintiff's opposition only highlights that any proposed class should exclude alleged misstatements and purported corrective disclosures concerning ExxonMobil's use of proxy costs and GHG costs, including in its proved reserves estimates and asset impairment analyses.  As Defendants showed (Supp. Br. 25), no class can be certified before February 24, 2016, and Plaintiff cannot rely on the alleged corrective disclosure dates of November 9, 2015, January 20, 2016, or August 10, 2016.

## CONCLUSION

Plaintiff's motion for class certification should be denied because the preclusive effect of the NYAG Decision defeats Plaintiff's ability to establish predominance, numerosity, or adequacy.

Dated:  _____, 2020

Respectfully submitted,


<u>/s/ Daniel J. Kramer</u>

Theodore V. Wells, Jr. (*pro hac vice*)
Daniel J. Kramer (*pro hac vice*)
Daniel J. Toal (*pro hac vice*)
Justin Anderson (*pro hac vice*)
Matthew D. Stachel (*pro hac vice*)
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY  10019-6064
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
twells@paulweiss.com
dkramer@paulweiss.com
dtoal@paulweiss.com
janderson@paulweiss.com
mstachel@paulweiss.com


<u>/s/ Nina Cortell</u>

Nina Cortell
Texas State Bar No. 04844500
Daniel H. Gold
Texas State Bar No. 24053230
HAYNES AND BOONE, LLP
2323 Victory Avenue, Suite 700
Dallas, TX 75219
Telephone: (214) 651-5000
Facsimile: (214) 651-5940
nina.cortell@haynesboone.com
daniel.gold@haynesboone.com

*Counsel for Exxon Mobil Corporation,*
*Andrew P. Swiger, Jeffrey J. Woodbury,*
*and David S. Rosenthal*


<u>/s/ D. Patrick Long</u>

D. Patrick Long
Texas State Bar No. 12515500
Brian M. Gillett
Texas State Bar No. 24069785
SQUIRE PATTON BOGGS
2000 McKinney Ave., Suite 1700
Dallas, TX 75201
Telephone: (214) 758-1505
Facsimile: (214) 758-1550
patrick.long@squirepb.com
brian.gillett@squirepb.com

*Counsel for Rex W. Tillerson*

11

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been

served by electronic CM/ECF filing, on this __th day of _____, 2020.


/s/ Daniel J. Kramer
Daniel J. Kramer