IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| PEDRO RAMIREZ, JR., Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>    v.<br><br>EXXON MOBIL CORPORATION, REX W. TILLERSON, ANDREW P. SWIGER, and DAVID S. ROSENTHAL,<br><br>    Defendants. | Case No. 3:16-cv-03111-K<br><br>CLASS ACTION |

**DEFENDANTS' BRIEF IN SUPPORT OF THEIR
MOTION TO EXCLUDE TESTIMONY OF D. PAUL REGAN**

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
(212) 373-3000

HAYNES AND BOONE, LLP
2801 N. Harwood Street, Suite 2300
Dallas, TX 75219
(214) 651-5000

*Counsel for Exxon Mobil Corporation, Andrew P.
Swiger, and David S. Rosenthal*

SQUIRE PATTON BOGGS
2200 Ross Avenue, Suite 4100W
Dallas, TX 75201
(214) 758-1505

*Counsel for Rex W. Tillerson*

**TABLE OF CONTENTS**

Page

SUMMARY OF ARGUMENT ............................................................................................... 1

LEGAL STANDARDS ......................................................................................................... 3

ARGUMENT ....................................................................................................................... 4

I.    Regan's Kearl Reserves Opinion Is Irrelevant Because It Does Not Relate to Any of Plaintiff's Claims and Because He Does Not Apply Relevant Standards in Reaching His Conclusions ................................................................................................................ 4

II.   Regan's Opinion Regarding the 2015 MD&A Is an Improper Legal Conclusion That Is Irrelevant to This Case ................................................................................................. 8

III.  Regan's RMDG Impairment Opinion Should Be Excluded Because It Is Not Based on GAAP in Material Respects ...................................................................................... 10

CONCLUSION ................................................................................................................... 12

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Aubrey* v. *Barlin*,
No. 1:10-CV-076-DAE, 2015 WL 6002260 (W.D. Tex. Oct. 14, 2015) ..................................9

*Daubert* v. *Merrell Dow Pharm., Inc.*,
509 U.S. 579 (1993)...................................................................................................1, 3, 5

*Est. of Sowell* v. *United States*,
198 F.3d 169 (5th Cir. 1999) ...............................................................................................8

*Goodman* v. *Harris Cnty.*,
571 F.3d 388 (5th Cir. 2009) ............................................................................................4, 8

*Hicks* v. *Baylor Univ. Med. Ctr. Dallas*,
No. 3:22-CV-00072-E, 2024 WL 3513471 (N.D. Tex. July 22, 2024) ....................................4

*Highland Cap. Mgmt., L.P.* v. *Schneider*,
379 F. Supp. 2d 461 (S.D.N.Y. 2005)....................................................................................9

*J&M Indus., Inc.* v. *Raven Indus., Inc.*,
457 F. Supp. 3d 1022 (D. Kan. 2020)...................................................................................10

*Knight* v. *Kirby Inland Marine Inc.*,
482 F.3d 347 (5th Cir. 2007) ...............................................................................................3

*SEC* v. *Life Partners Holdings, Inc.*,
No. 1-12-CV-00033-JRN, 2013 WL 12076933 (W.D. Tex. Oct. 23, 2013) ...........................8

*In re Novatel Wireless Sec. Litig.*,
No. 08CV1689 AJB RBB, 2011 WL 5827198 (S.D. Cal. Nov. 17, 2011)................................9

*Parrish* v. *Freightliner, LLC*,
471 F. Supp. 2d 1262 (M.D. Fla. 2006) ................................................................................5

*Pipitone* v. *Biomatrix, Inc.*,
288 F.3d 239 (5th Cir. 2002) .........................................................................................4, 10

*In re Refco Inc. Sec. Litig.*,
No. 07-MD-1902 JSR, 2012 WL 7007795 (S.D.N.Y. Nov. 29, 2012), *report
and recommendation adopted sub nom. In re Refco Sec. Litig.*, No. 07-MD-
1902 JSR, 2013 WL 452400 (S.D.N.Y. Feb. 6, 2013) .........................................................10

*Rolex Watch U.S.A., Inc.* v. *Capetown Diamond Corp.*,
No. 1:03-CV-3001-CC, 2009 WL 10669248 (N.D. Ga. Mar. 30, 2009).................................5

**CASES** **Page(s)**

*Smilovits* v. *First Solar, Inc.*,
   No. CV12-00555-PHX-DGC, 2019 WL 6875492 (D. Ariz. Dec. 17, 2019) ........................3, 9

**OTHER AUTHORITIES**

Federal Rule of Evidence 702 ...................................................................................1, 3, 4

Rule 4-10...............................................................................................................1, 3, 5, 6

iii

Pursuant to *Daubert* v. *Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993) and Federal Rule of Evidence 702, Defendants Exxon Mobil Corporation ("ExxonMobil"), Rex W. Tillerson, Andrew P. Swiger, and David S. Rosenthal (the "Individual Defendants" and, with ExxonMobil, the "Defendants") hereby move the Court to exclude the testimony of D. Paul Regan.

### SUMMARY OF ARGUMENT

Plaintiff's accounting expert, D. Paul Regan, seeks to offer opinions that are (i) irrelevant to Plaintiff's theories of liability, (ii) legal in nature, and (iii) otherwise unreliable. These opinions should be excluded from the case and thus should not be considered at summary judgment.

Plaintiff offers Regan as an expert on Generally Accepted Accounting Principles ("GAAP") and Securities and Exchange Commission ("SEC") disclosure requirements. Specifically, Regan was asked to evaluate (i) whether ExxonMobil "appropriately complied" with disclosure requirements contained in ASC 932-10-S99[1] when it reported proved reserves at Kearl in the company's 2015 Form 10-K; (ii) whether the Management's Discussion and Analysis ("MD&A") in ExxonMobil's 2015 Form 10-K "appropriately complied" with Item 303 of Regulation S-K; and (iii) whether ExxonMobil "appropriately complied" with GAAP in determining that its Rocky Mountain Dry Gas ("RMDG") assets were not impaired as of year-end 2015. App. 7–9. In each instance, Regan opines that ExxonMobil failed to comply with the applicable standard. But his opinions are inadmissible for multiple reasons.

*First*, Regan's opinion that ExxonMobil should have de-booked its Kearl proved reserves at year-end 2015 should be excluded because it is doubly irrelevant. Plaintiff has not pleaded that

---

[1] ASC 932-10-S99 incorporates SEC Regulation S-X, Rule 4-10 ("Rule 4-10") verbatim. *See* App. 479–95. Rule 4-10 prescribes certain key parameters for estimating proved reserves and related reporting (*i.e.*, the parameters for determining "the average price during the 12-month period prior to the ending date of the report, determined as an unweighted arithmetic average of the first-day-of-the-month price for each month within such period," and the costs of operation).

Defendants misled investors by failing to de-book its Kearl proved reserves at year-end 2015. To the contrary, Plaintiff's pleaded theory is that it was a "virtual certainty" that ExxonMobil would have to de-book those reserves at year-end *2016*, but failed to adequately warn investors of that in February 2016, when it warned that de-bookings of ExxonMobil's Canadian oil sands reserves might be required if prices stayed at the levels seen in late 2015 and early 2016. Regan has not analyzed, and expresses no opinion, whether the February 2016 disclosure was appropriate in light of the information known to Defendants at the time. Because Regan's opinion is irrelevant to Plaintiff's pleaded theory, it should be excluded.

And even if it were possible to set aside that fatal deficiency, Regan's opinion is also irrelevant to the unpled theory that Plaintiff improperly has tried to inject into this case. In fact, contrary to his assignment, Regan admittedly did not actually interpret or apply ASC 932-10-S99 in reaching his conclusions. ExxonMobil concluded that its resources at Kearl qualified as "proved reserves" under the SEC's standards in 2015. In 2016, ExxonMobil and its Canadian affiliate, Imperial Oil Limited ("Imperial"), updated the methodology used to estimate Kearl's proved reserves for SEC disclosure purposes to account for changing market dynamics for Kearl sales. Rather than interpret or apply the SEC pricing rules as incorporated by ASC 932-10-S99, Regan merely "assumed" that ExxonMobil's 2016 methodology reflected an "appropriate operationalization of the SEC pricing rules," App. 379 at 112:18–113:5, and purported to apply it retroactively to certain 2015 data regarding Kearl. After applying the *2016* methodology to certain *2015* data, Regan concluded that ExxonMobil should have de-booked its Kearl proved reserves at year-end 2015. But Regan does not opine that ASC 932-10-S99 *prohibited* the proved reserves estimate that was actually performed in 2015. Regan therefore offers no opinion as to whether ASC 932-10-S99 required ExxonMobil to de-book Kearl from its SEC proved reserves in 2015.

To the contrary, although Regan acknowledges that Rule 4-10, as incorporated by ASC 932-10-S99, prescribes certain key parameters for estimating proved reserves, he conceded that he did not investigate whether ExxonMobil applied Rule 4-10 or ASC 932-10-S99 reasonably in 2015.

*Second*, Regan's opinions regarding ExxonMobil's purported obligations under Item 303 of Regulation S-K also should be excluded. This Court has already dismissed Plaintiff's claim based on Item 303, so Regan's opinion is irrelevant to any issue that remains in the case. And, in all events, Regan's opinion should also be excluded because his determination that Kearl's profitability was purportedly "material" for purposes of Item 303 is an impermissible legal conclusion. Courts previously have excluded similar opinions that Regan sought to offer related to Item 303, and this Court should do the same. *See Smilovits* v. *First Solar, Inc.*, No. CV12-00555-PHX-DGC, 2019 WL 6875492, at *9 (D. Ariz. Dec. 17, 2019).

*Finally*, Regan's opinions regarding ExxonMobil's impairment analysis of its RMDG assets should be excluded because, in critical part, Regan disregards the GAAP rules he purports to apply. Regan opines that the price projections ExxonMobil used in conducting its recoverability analysis were "not realistic or defendable." App. 114 ¶ 216. But Regan conceded at his deposition that ExxonMobil's use of its internal price projections was at least "permissible under the rules"— *i.e.*, allowed under GAAP. App. 396 at 252:22–253:19. Regan's assertion that ExxonMobil nevertheless should have used some different set of projections for long-term natural gas prices— a topic on which he concededly is not an expert, *see* App. 391 at 226:11–14—is thus irrelevant to whether ExxonMobil "appropriately complied" with GAAP.

## LEGAL STANDARDS

Federal Rule of Evidence 702 "assign[s] to the trial judge the task of ensuring that an expert's testimony both rests on a *reliable* foundation and is *relevant* to the task at hand." *Daubert* v. *Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993) (emphasis added); *Knight* v. *Kirby Inland*

3

*Marine Inc.*, 482 F.3d 347, 352 (5th Cir. 2007). To be reliable, expert testimony must be "the product of reliable principles and methods," and "reflect[] a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702. "Expert evidence is relevant . . . if it helps the trier of fact understand the evidence in the case or determine a fact at issue," and "if the reasoning or methodology used by the expert can properly be applied to the facts in the case." *Hicks* v. *Baylor Univ. Med. Ctr. Dallas*, No. 3:22-CV-00072-E, 2024 WL 3513471, at *5 (N.D. Tex. July 22, 2024); *see also Pipitone* v. *Biomatrix, Inc.*, 288 F.3d 239, 244–45 (5th Cir. 2002). "[A]n expert may never render conclusions of law." *Goodman* v. *Harris Cnty.*, 571 F.3d 388, 399 (5th Cir. 2009).

## ARGUMENT

**I.     Regan's Kearl Reserves Opinion Is Irrelevant Because It Does Not Relate to Any of Plaintiff's Claims and Because He Does Not Apply Relevant Standards in Reaching His Conclusions**

Plaintiffs retained Regan to opine on "whether ExxonMobil . . . appropriately complied with . . . ASC 932-10-S99" when it reported proved reserves for Kearl in its 2015 Form 10-K. App. 7. His opinion in answer to that question is irrelevant, and should be excluded, for two separate reasons.

*First*, whether ExxonMobil was required to de-book proved reserves at Kearl at year-end *2015* is irrelevant to any claim that Plaintiff pleaded in its complaint. As Defendants explain in their accompanying Motion for Summary Judgment ("Defs.' Mot. Sum. J."), Plaintiff's pleaded theory is that Defendants misled the market by supposedly giving a "tepid" warning in February 2016 that it might be necessary to de-book Kearl proved reserves at year-end *2016* when, according to Plaintiff, it was a near certainty that such a de-booking would be necessary. Compl. ¶ 184, Dkt. No. 36; *see also id.* ¶¶ 247(iv), 286, 348; Dkt. No. 53 at 7; Dkt. No. 178 at 9. That claim fails as a matter of law and undisputed fact for several reasons. *See* Defs.' Mot. Sum. J. at 9–23. But what

4

matters for purposes of *this* motion is that Regan simply has *nothing* to say on the subject. Plaintiff's counsel evidently did not ask Regan to analyze whether it would have appeared to be a "near certainty" to Defendants, as of February 2016, that ExxonMobil would have to de-book its Kearl proved reserves at year-end.  Regan's opinion thus is not relevant to Plaintiff's pleaded claim and therefore must be excluded.  *See Rolex Watch U.S.A., Inc.* v. *Capetown Diamond Corp.*, No. 1:03-CV-3001-CC, 2009 WL 10669248, at *7 (N.D. Ga. Mar. 30, 2009) (finding that expert report addressing unpled theory of liability was irrelevant and granting motion to exclude); *see also Daubert*, 509 U.S. at 591 ("Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." (internal quotation marks omitted)); *Parrish* v. *Freightliner, LLC*, 471 F. Supp. 2d 1262, 1266 (M.D. Fla. 2006) (excluding expert report where "[t]hrough [the] expert report, plaintiff entirely changed her theory of the case").

*Second*, Regan's opinion is also irrelevant to the unpled theory that Plaintiff improperly has attempted to inject into this case.  That is because, contrary to his assignment, Regan did not actually analyze whether ASC 932-10-S99 required ExxonMobil to de-book its Kearl proved reserves at year-end 2015.  ASC 932-10-S99, a GAAP standard, incorporates the text of Rule 4-10, which contains the SEC's regulations for estimating SEC proved reserves.  *See* App. 479–95. The question that Plaintiff apparently asked Regan to answer is whether ExxonMobil complied with ASC 932-10-S99 in estimating and disclosing proved reserves at Kearl in 2015.  But Regan admittedly did not answer that question.  His opinion as to ExxonMobil's reporting of Kearl proved reserves at year-end 2015 should be excluded on that basis as well.

Regan testified repeatedly that he did not offer an opinion on what the SEC rules incorporated by ASC 932-10-S99 require and that he instead premised his opinion on how ExxonMobil "operationalized" those rules *in 2016.  See, e.g.*, App. 372–74 at 71:8–78:12; App.

5

375 at 82:5–83:1; App. 378–79 at 107:17–113:22.  Regan observed that Imperial's reserves group, with oversight from ExxonMobil's Global Reserves Group, updated the methodology it used to estimate Kearl's proved reserves in 2016 to account for changing market dynamics for Kearl sales. App. 44 ¶ 89.  Regan then assumed that it would have been appropriate to apply this updated methodology when estimating Kearl's proved reserves *in 2015*.  App. 44–45 ¶ 90.  Purporting to apply the 2016 methodology to certain data from 2015, Regan concluded that Kearl's reserves did not qualify as "proved" as of year-end 2015.  App. 45 ¶ 92.

But how ExxonMobil "operationalized" the rules governing proved reserves estimations in 2016 is not the question the trier of fact must assess.  Instead, the question Regan was retained to opine on is whether ExxonMobil complied with the rules set forth in ASC 932-10-S99 when making its SEC proved reserves estimations and related disclosures for Kearl in 2015.  Answering *that* question requires applying ASC 932-10-S99 to the facts as they existed in 2015 to determine whether Kearl's "SEC price"—defined as "the average price during the 12-month period prior to the ending date of the period covered by the report, determined as an unweighted arithmetic average of the first-day-of-the-month price for each month within such period," App. 485 (ASC 932-10-S99 (citing 17 C.F.R. § 210.4-10(a)(22)(v)))—exceeds the costs of operation, which are not defined by either Rule 4-10 or ASC 932-10-S99.  App. 481.  Regan admitted that he did not undertake that analysis.  *See, e.g.*, App. 379 at 113:6–22 (admitting that he "relied on Exxon" for "the complexities associated with determining the amount realized" when calculating the SEC price); App. 386 at 169:17–170:7 (admitting that his report "doesn't address" whether certain costs "should be included under the SEC regulations" and instead "accepts what Exxon itself calculated as lifting costs" in 2016).

6

For example, ASC 932-10-S99 dictates that the SEC price must be determined based on the "terminal point of oil and gas producing activities" because that is where "the value of the products that generate revenue" should be assessed. *See* App. 481 (ASC 932-10-S99 (citing 17 C.F.R. § 210.4-10(a)(10))). When asked what he considered to be Kearl's "terminal point" in 2015, Regan testified that he looked at how ExxonMobil "operationalized the rules" in 2016, but did not otherwise answer the question. *See* App. 373 at 76:18–77:20. And Regan admits that he does not know and did not investigate the initial point of sale for any Kearl sales in 2015. *See id.* at 135:11–25.

In calculating the SEC price, ASC 932-10-S99 prohibits incorporating profits or losses downstream of the plant gate. *See* App. 481 (ASC 932-10-S99 (citing 17 C.F.R. § 210.4-10(a)(10)) (requiring that the "value of the products that generate revenue . . . be determined *at the terminal point* of oil and gas producing activities" (emphasis added))). But, again, Regan admits that he did not consider how this aspect of ASC 932-10-S99 applied in 2015. *See* App. 379 at 112:4–113:5. He simply assumed that the 2016 formula was an "appropriate operationalization of the SEC pricing rules" that could be applied retroactively to 2015, App. 379 at 113:3–5, even though he had not "dug into how Exxon interpreted the various complexities of the SEC pricing." App. 379 at 111:18–23.

In effect, Regan's opinion boils down to little more than arithmetic—simply applying methods ExxonMobil used in one year to data from another. Regan, however, fails to demonstrate that his retroactive application of the 2016 methodology to 2015 data is a reliable method for determining whether ExxonMobil's proved reserves estimate for 2015 complied with ASC 932-10-S99 based on the circumstances that existed in 2015. As Regan admittedly did not analyze or offer an opinion on that question, his proved reserves opinions should be excluded.

*SEC* v. *Life Partners Holdings, Inc.*, No. 1-12-CV-00033-JRN, 2013 WL 12076933, at \*2 (W.D. Tex. Oct. 23, 2013), is instructive.  In that case, the court excluded as irrelevant an expert's "opinion about an accounting regime that Defendants did not actually implement or use during the time period at issue," but allowed the same expert to opine, based on his experience and training, as to whether a change in accounting practices complied with applicable regulations.  *Id.*  Here, however, Regan admits that he simply *assumed* that the 2016 methodology complied with applicable regulations, and *further assumed* that the 2016 methodology should have been applied to the different facts that existed in 2015—notwithstanding that ExxonMobil and Imperial did not actually implement or use the 2016 methodology in 2015.  As in *Life Partners*, the Court should not allow Regan to opine on the hypothetical application of a methodology that ExxonMobil and Imperial did not use during 2015, the time period at issue.  *Id.*  Particularly not where, as here, Regan admits that he did not analyze whether either the 2015 or 2016 methodologies actually comply with the rules set forth in ASC 932-10-S99.

II.   **Regan's Opinion Regarding the 2015 MD&A Is an Improper Legal Conclusion That Is Irrelevant to This Case**

Regan opines that details regarding Kearl's profitability were "material" under Regulation S-K, Item 303 and therefore should have been included in the 2015 Form 10-K's MD&A discussion.  *See* App. 87–90 ¶¶ 163–68.

The Court should exclude that opinion because it is an impermissible legal opinion.  It is the role of the court—not a party's expert witness—to instruct the jury on the applicable law. *Est. of Sowell* v. *United States*, 198 F.3d 169, 172 (5th Cir. 1999) (affirming exclusion of expert's opinion where it "would constitute a legal opinion telling the trier of fact what to decide" (cleaned up)); *see also Goodman* v. *Harris Cnty.*, 571 F.3d 388, 399 (5th Cir. 2009) ("[A]n expert may never render conclusions of law.").  In concluding that allegedly omitted information regarding

Kearl's profitability was "material," Regan is necessarily offering the opinion that ExxonMobil violated Regulation S-K, Item 303 by failing to discuss Kearl in the Form 10-K MD&A. Expert opinions that a company has violated a securities law are impermissible legal opinions and must be excluded. *See, e.g.*, *Aubrey* v. *Barlin*, No. 1:10-CV-076-DAE, 2015 WL 6002260, at *13 (W.D. Tex. Oct. 14, 2015) (excluding expert's testimony that "amount[ed] to his application of the facts to the relevant securities laws"); *Highland Cap. Mgmt., L.P.* v. *Schneider*, 379 F. Supp. 2d 461, 470-73 (S.D.N.Y. 2005) (similar); *see also In re Novatel Wireless Sec. Litig.*, No. 08CV1689 AJB RBB, 2011 WL 5827198, at *9 (S.D. Cal. Nov. 17, 2011) (excluding opinion that defendant's conduct was "actionable").

This is not the first time that Regan has attempted to offer inadmissible legal opinions that a company had failed to disclose certain information he deemed "material" under Item 303. In *Smilovits* v. *First Solar, Inc.*, the court excluded Regan's opinion regarding the defendant company's supposed obligations under Regulation S-K, Item 303. No. CV12-00555-PHX-DGC, 2019 WL 6875492, at *9 (D. Ariz. Dec. 17, 2019) ("The Court will grant Defendants' motion in this regard and preclude Regan from testifying at trial about SEC disclosure rules and MD&A.").[2] And in *In re Under Armour Securities Litigation*, plaintiffs conceded that Regan's proffered "materiality" opinions under Item 303 should be excluded. *See* 730 F. Supp. 3d 172, 180 (D. Md. 2024) ("During oral argument, Plaintiffs confirmed Regan's Item 303 materiality opinions . . . will be excluded."). Those same "materiality" opinions are equally improper, and should be excluded, in this case.

---

[2] Plaintiffs in *Smilovits* apparently agreed not "to elicit testimony regarding the requirements of MD&A or whether defendants complied with those requirements from Mr. Regan at trial." *Smilovits*, 2019 WL 6875492, at *9. But the *Smilovits* court nonetheless excluded his proffered opinion on this subject. *Id.*

Regan's "materiality" opinion under Item 303 is doubly improper in this case because it is also irrelevant to any issue in this case.  *See Pipitone*, 288 F.3d at 244–45 (holding that expert testimony not relevant to the issues at hand is "not helpful to the fact-finder").  In ruling on the motion to dismiss, this Court held that Plaintiff had not "plead[ed] a material misstatement based on ExxonMobil's alleged failure to comply with Item 303."  Dkt. No. 62 at 24 (citing *Kapps* v. *Torch Offshore, Inc.*, 379 F.3d 207, 221 (5th Cir. 2004)).  Accordingly, Regan's opinion that ExxonMobil should have disclosed information regarding Kearl's profitability pursuant to Item 303 is not relevant to any claim in the case.  *See, e.g.*, *In re Refco Inc. Sec. Litig.*, No. 07-MD-1902 JSR, 2012 WL 7007795, at *4–5 (S.D.N.Y. Nov. 29, 2012) ("To the extent the experts here are opining about the *merits* of dismissed claims, they fail the *Daubert* 'fit' requirement for the simple reason that those merits have already been determined and are no longer relevant to the proceedings." (emphasis in original)), *report and recommendation adopted sub nom. In re Refco Sec. Litig.*, No. 07-MD-1902 JSR, 2013 WL 452400 (S.D.N.Y. Feb. 6, 2013); *J&M Indus., Inc.* v. *Raven Indus., Inc.*, 457 F. Supp. 3d 1022, 1043 (D. Kan. 2020) (expert opinion about alleged patent infringement excluded as irrelevant because patent infringement claims had been dismissed).  The Court's motion to dismiss ruling cabining the claims in this case is an independent basis to exclude Regan's Item 303 opinion.

## III.   Regan's RMDG Impairment Opinion Should Be Excluded Because It Is Not Based on GAAP in Material Respects

Regan opines that "Exxon did not comply with GAAP when it failed to properly record the impairment of certain XTO-related long-lived assets as of and for the year ended December 31, 2015."  App. 93 ¶ 174.  But his opinion is unreliable because he fails to apply a key, relevant GAAP provision, and should therefore be excluded.

In conducting its impairment analysis, all sides agree that ExxonMobil was required to follow the three-step process set forth in ASC 360-10-35.  Regan opines (among other things) that ExxonMobil's 2015 analysis failed to comply with the second step of ASC 360-10-35 because, in his view, ExxonMobil used price projections that were "not realistic or defendable" when analyzing whether the future undiscounted cash flows of the RMDG assets exceeded their carrying value.    App. 114–21 ¶ 216.    But ASC 360-10-35 expressly required ExxonMobil to use "assumptions . . . reasonable in relation to the assumptions used in developing other information used by the entity for comparable periods, such as ***internal budgets and projections***."  App. 500 (emphasis added).  And there is no dispute that ExxonMobil conducted its recoverability analysis using its own price projections developed as part of the annual corporate planning process that ExxonMobil relies on to evaluate business opportunities.  *See* Defs.' Mot. Sum. J. at 27.

Regan admitted in his deposition that ExxonMobil's use of those internal price projections was "permissible under the rules," App. 396 at 252:22–253:19, and that concession shreds his opinion.  But ExxonMobil's use of its internal projections was not just "permissible," as Regan admits—it was *mandated* by ASC 360-10-35.  App. 500.  Regan's opinion that the future undiscounted cash flows of the RMDG assets did not exceed their carrying value under a *different* set of price projections is wholly irrelevant.[3]  Regan should not be allowed to offer an opinion regarding ExxonMobil's compliance with GAAP that ignores what GAAP actually requires.

Regan attempts to defend his departure from GAAP principles by suggesting that ExxonMobil did not "consider all available information" when setting its internal price projections.

---

[3] Regan opines that ExxonMobil should have used either NYMEX Henry Hub futures or "strip" prices, or Regan's own price projections (*i.e.*, Henry Hub price projections from Wood Mackenzie, IHS, and NYMEX Henry Hub futures for 2015–2020, with a 2.5% inflation factor applied thereafter) in its 2015 recoverability analysis instead of the internal price projections ExxonMobil had developed for investment purposes.  App. 134–39 ¶¶ 244–58.

11

App. 270 ¶ 85 (internal quotation marks omitted).  But ExxonMobil developed its price projections as part of a "detailed worldwide forecast for future energy supply and demand" and those projections were "consistent, or even conservative, when compared to long-term price forecasts published by several reputable industry groups." App. 403, 405.  Regan conceded at his deposition that he was not aware of any instance in which ExxonMobil failed to use its internal price projections to evaluate investment opportunities, and admitted he had not analyzed that issue.  App. 393 at 236:9–19.  And, in any event, Regan admits that *he* is not an expert in forecasting natural gas prices, *see* App. 391 at 226:11–14 ("Q. Have you ever held yourself out as an expert in forecasting natural gas prices? A. I don't hold myself out as [anything] other than an expert in GAAP and GAAS."), and that he has never offered an expert opinion in which he forecasted natural gas prices.  App. 390–91 at 224:12–226:10.  The Court should not allow Regan to substitute his uninformed judgment about future prices for the actual projections that ExxonMobil developed and relied upon in the ordinary operation of its business, and which GAAP *required* ExxonMobil to apply in conducting its recoverability analysis.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant this Motion in its entirety and exclude the report, opinions, and testimony of D. Paul Regan from this case.

12

Dated:  February 21, 2025

Respectfully submitted,


/s/ Daniel J. Toal                                          /s/ D. Patrick Long
Theodore V. Wells, Jr. (*pro hac vice*)          D. Patrick Long
Daniel J. Kramer (*pro hac vice*)                  Texas State Bar No. 12515500
Daniel J. Toal (*pro hac vice*)                      SQUIRE PATTON BOGGS
Audra J. Soloway (*pro hac vice*)                 2000 McKinney Ave., Suite 1700
Paul Brachman (*pro hac vice*)                     Dallas, TX 75201
Matthew D. Stachel (*pro hac vice*)             Telephone: (214) 758-1505
Samuel Kleiner (*pro hac vice*)                    Facsimile: (214) 758-1550
Lyuba Shamailova (*pro hac vice*)               patrick.long@squirepb.com
PAUL, WEISS, RIFKIND,
   WHARTON & GARRISON LLP                  *Counsel for Rex W. Tillerson*
1285 Avenue of the Americas
New York, NY  10019-6064
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
twells@paulweiss.com
dkramer@paulweiss.com
dtoal@paulweiss.com
asoloway@paulweiss.com
pbrachman@paulweiss.com
mstachel@paulweiss.com
skleiner@paulweiss.com
lshamailova@paulweiss.com




/s/ Jason Bloom
Nina Cortell
Texas State Bar No. 04844500
Jason Bloom
Texas State Bar No. 24045511
HAYNES AND BOONE, LLP
2323 Victory Avenue, Suite 700
Dallas, TX 75219
Telephone: (214) 651-5000
Facsimile: (214) 651-5940
nina.cortell@haynesboone.com
jason.bloom@haynesboone.com

*Counsel for Exxon Mobil Corporation,*
*Andrew P. Swiger, and David S. Rosenthal*


13

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been served by electronic CM/ECF filing, on this 21st day of February, 2025.

/s/ Daniel J. Toal
Daniel J. Toal