IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

|  |  |
|---|---|
| PEDRO RAMIREZ, JR., Individually and on Behalf of All Others Similarly Situated,<br><br>            Plaintiff,<br><br>        v.<br><br>EXXON MOBIL CORPORATION, REX W. TILLERSON, ANDREW P. SWIGER, and DAVID S. ROSENTHAL,<br><br>            Defendants. | Case No. 3:16-cv-3111-K |

### DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION
### TO EXCLUDE THE TESTIMONY OF STEVEN P. FEINSTEIN

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
(212) 373-3000

HAYNES AND BOONE, LLP
2801 N. Harwood Street, Suite 2300
Dallas, TX 75219
(214) 651-5000

*Counsel for Exxon Mobil Corporation, Andrew P. Swiger, and David S. Rosenthal*

SQUIRE PATTON BOGGS
2200 Ross Avenue, Suite 4100W
Dallas, TX 75201
(214) 758-1505

*Counsel for Rex W. Tillerson*

**Table of Contents**

**Page**

PRELIMINARY STATEMENT ..................................................................................... 1

ARGUMENT.............................................................................................................. 2

I.      Feinstein's Opinions Cannot Reliably Show Loss Causation or Damages for
        Disclosures Relating to the RMDG Impairment............................................... 2

        A.      The Class Certification Ruling Forecloses Feinstein's RMDG Opinions ............ 2

        B.      Feinstein Fails to Conduct a Causation Analysis of the Impairment Theory......... 4

        C.      Feinstein's Event Study Methodology Is Unreliable .......................................... 4

II.     Feinstein's Opinions Cannot Reliably Show Loss Causation or Damages for
        Disclosures Relating to Kearl Proved Reserves............................................... 5

        A.      Feinstein's Opinions Regarding Kearl Are Not Relevant Because They
                Are Premised on an Unpled Theory .................................................................. 5

        B.      Feinstein Fails to Conduct a Causation Analysis of Plaintiff's Kearl
                Theory............................................................................................................... 7

III.    Feinstein Fails to Reliably Disaggregate Confounding Information for Either
        Alleged Corrective Disclosure Date................................................................. 8

IV.     Feinstein's Opinions Regarding the Purported Cost of a Credit Rating Downgrade
        Are Irrelevant and Unreliable.......................................................................... 9

CONCLUSION........................................................................................................... 10

**Table of Authorities**

**Page(s)**

**Cases**

*Alaska Elec. Pension Fund* v. *Flowserve Corp.*,
   572 F.3d 221 (5th Cir. 2009)................................................................................. 1, 2, 3

*Bell* v. *Ascendant Sols., Inc.*,
   422 F.3d 307 (5th Cir. 2005)....................................................................................... 3

*Bricklayers & Trowel Trades Int'l Pension Fund* v. *Credit Suisse Sec.(USA) LLC*,
   752 F.3d 82 (1st Cir. 2014) ......................................................................................... 9

*Buettgen* v. *Harless*,
   2011 WL 1938130 (N.D. Tex. May 19, 2011)............................................................. 9

*Finkelstein* v. *Liberty Digit., Inc.*,
   2005 WL 1074364 (Del. Ch. Apr. 25, 2005) ............................................................... 1

*Erica P. John Fund, Inc.* v. *Halliburton Co.*,
   563 U.S. 804 (2011)..................................................................................................... 3

*Fosbre* v. *Las Vegas Sands Corp.*,
   2017 WL 55878 (D. Nevada Jan. 3, 2017) ................................................................... 1

*In re Groupon, Inc. Sec. Litig.*,
   2015 WL 1043321 (N.D. Ill. Mar. 5, 2015)................................................................. 9

*Halliburton Co.* v. *Erica P. John Fund, Inc.*,
   573 U.S. 258 (2014)..................................................................................................... 3

*Krim* v. *pcOrder.com, Inc.*,
   212 F.R.D. 329 (W.D. Tex. 2002) ............................................................................... 3

*Ohio Pub. Emps. Ret. Sys.* v. *Fed. Home Loan Mortg. Corp.*,
   2018 WL 3861840 (N.D. Ohio Aug. 14, 2018) ........................................................... 1

*In re Oracle Corp. Sec. Litig.*,
   2009 WL 1709050 (N.D. Cal. June 19, 2009) .............................................................. 7

*Oscar Priv. Equity Invest.* v. *Allegiance Telecom, Inc*,
   487 F.3d 261 (5th Cir. 2007)................................................................................... 8, 9

*Puga* v. *RCX Sols., Inc.*,
   922 F.3d 285 (5th Cir. 2019)....................................................................................... 9

*In re Sci. Atlanta, Inc. Sec. Litig.*,
754 F. Supp. 2d 1339 (N.D. Ga. 2010) .............................................................................. 9

*Smilovits* v. *First Solar, Inc.*,
2019 WL 7282026 (D. Ariz. Dec. 27, 2019) ....................................................................... 9

*In re Twitter, Inc. Sec. Litig.*,
2020 WL 13863616 (N.D. Cal. Jan. 28, 2020) ................................................................ 7, 9

*Unger* v. *Amedisys Inc.*,
401 F.3d 316 (5th Cir. 2005) .............................................................................................. 3

*In re Vale S.A. Sec. Litig.*,
2022 WL 122593 (E.D.N.Y. Jan. 11, 2022) ....................................................................... 1

*In re Zonagen, Inc. Sec. Litig.*,
322 F. Supp. 2d 764 (S.D. Tex. 2003) ................................................................................ 7

## **PRELIMINARY STATEMENT**

Plaintiff's Opposition ("Opp.", Dkt. 244) fails to resuscitate Feinstein's opinions, which are neither relevant nor reliable.[1]

**RMDG Impairment Analysis**.  Plaintiff does not dispute that Feinstein's opinions for the alleged RMDG-related fraud rely entirely on the alleged stock drop following January 31, 2017 (the "January 31 Disclosure"), which the Court excluded in its class certification ruling.  Plaintiff incorrectly contends that the Fifth Circuit decision in *Alaska Elec. Pension Fund* v. *Flowserve Corp.*, 572 F.3d 221 (5th Cir. 2009), requires the Court to ignore its prior ruling—but *Flowserve* says no such thing.  The Opposition also ignores that Feinstein's causation opinion improperly assumes causation without any methodological support, conflating the year-end 2016 impairment analysis with 2015—another basis for its exclusion.  And, even if Feinstein's opinions were relevant, they are unreliable:  Plaintiff does not refute that Feinstein's model (1) is inferior to that used by both Plaintiff's prior expert Torchio and Defendants' expert Dr. Ferrell, (2) that Feinstein finds no statistical significance on a close-to-open basis, and (3) that Feinstein applies no

---

[1]    While Defendants did not challenge Feinstein's qualifications, Plaintiff is wrong that his credentials are "beyond reproach." Opp. 1.  Feinstein has made an entire career of serving as an expert witness for plaintiffs in securities cases like this one.  His expert consulting business, Crowninshield Financial Research, accounts for 80% to 90% of his total annual income, with approximately one-third coming from engagements specifically with Robbins, Geller, Rudman & Dowd, lead counsel for Plaintiff in this case. Pl.'s App. 25–26 at 24:18–25:7, 25:24–26:17.  And multiple courts have found Feinstein's opinions to be methodologically unsound.  *See In re Vale S.A. Sec. Litig.*, 2022 WL 122593, at *12 (E.D.N.Y. Jan. 11, 2022), *report and recommendation adopted*, 2022 WL 969724 (E.D.N.Y. Mar. 31, 2022) (finding that Feinstein "provides no framework—other than a vague, qualitative description he provided in his deposition—for how he assessed whether the news on each day was unexpected and/or on balance either positive or negative" and that "[w]ithout providing such a framework, his selection of dates is not replicable or verifiable and is thus inappropriate"); *Ohio Pub. Emps. Ret. Sys.* v. *Fed. Home Loan Mortg. Corp.*, 2018 WL 3861840, at *19 (N.D. Ohio Aug. 14, 2018), *rev'd and remanded on other grounds*, 64 F.4th 731 (6th Cir. 2023) ("Dr. Feinstein's proposed damages approach is general and vague."); *Fosbre* v. *Las Vegas Sands Corp.*, 2017 WL 55878, at *8, *14, *18 (D. Nevada Jan. 3, 2017), *aff'd sub nom. Pompano Beach Police & Firefighters' Ret. Sys.* v. *Las Vegas Sands Corp.*, 732 F. App'x 543 (9th Cir. 2018) (rejecting Feinstein's opinion on loss causation where dates on which corrective information was revealed were "not identified as disclosure events in Feinstein's event study"); *Finkelstein* v. *Liberty Digit., Inc.*, 2005 WL 1074364, at *15 (Del. Ch. Apr. 25, 2005) ("The problems with [Feinstein's] analysis are so pervasive and numerous that it is impossible to describe all of them.").

methodology to disaggregate fraud- and non-fraud-related losses, as required under controlling Fifth Circuit law.

**Kearl Analysis**.  Plaintiff concedes that Feinstein's opinions regarding the Kearl assets are premised on the theory that ExxonMobil misstated its 2015 proved reserves—an unpled theory. Plaintiff also cannot identify any causation analysis by Feinstein that purportedly supports his assumption that ExxonMobil's allegedly corrective October 28, 2016 disclosure (the "October 28 Disclosure") about *2016* proved reserves is causally related to, or corrected, its earlier disclosure about *2015* proved reserves.  Nor, again, does Feinstein satisfy Fifth Circuit law by proposing a reliable disaggregation methodology.

**Additional Interest Calculation**.  Plaintiff does not refute that Feinstein's interest calculation is premised on imprecise linear interpolation, nor does Plaintiff identify support for using linear interpolation for non-linear corporate bond yields.  Plaintiff also concedes that Feinstein's methodology ignores the fundamental principle of the time/value of money.

## ARGUMENT

**I.    Feinstein's Opinions Cannot Reliably Show Loss Causation or Damages for Disclosures Relating to the RMDG Impairment**

### A.    The Class Certification Ruling Forecloses Feinstein's RMDG Opinions

Plaintiff does not dispute that this Court's class certification ruling held that Defendants had rebutted the presumption of reliance, finding no price impact, to the extent measured by the January 31 Disclosure.  Plaintiff also does not dispute that the certified class excluded any price impact purportedly measured by the January 31 Disclosure.  Plaintiff instead contends that the class certification ruling has "no effect," citing the Fifth Circuit's decision in *Alaska Elec. Pension Fund* v. *Flowserve Corp.*, 572 F.3d 221 (5th Cir. 2009).  Opp. 14–15.

*Flowserve* does not support Plaintiff's argument.  The narrow issue addressed in *Flowserve* was whether the district court had jurisdiction to decide summary judgment while its earlier

2

decision denying class certification was on appeal. *Flowserve,* 572 F.3d at 224–25, 233. The plaintiffs argued that because class certification was denied for failure to establish loss causation, the district court could not rule on the merits of loss causation while the appeal was pending. *Id.* at 233. The Fifth Circuit disagreed because a class certification ruling does "not resolve loss-causation issues on the merits, even when—as here—the two issues are practically identical." *Id.*

By contrast, here, the Court held that Defendants successfully rebutted the presumption of *reliance* by showing a *lack of price impact* to the extent measured by the January 31 Disclosure. Reliance is a different element from loss causation, and, because it was successfully rebutted, the classwide claims do not include the January 31 Disclosure. *Flowserve* is therefore inapposite.[2] Unsurprisingly, Plaintiff cites no case interpreting *Flowserve* to say that a plaintiff may re-litigate at summary judgment a portion of a claim that was excluded at class certification on reliance grounds—as Plaintiff here advocates. And Plaintiff has not moved this Court to reconsider its class certification ruling, and thus the limits imposed by that ruling remain in place. *See Krim* v. *pcOrder.com, Inc.*, 212 F.R.D. 329, 331–32 (W.D. Tex. 2002) (requiring a motion to reconsider where a party seeks to change class certification decision). Plaintiff cannot now revive the January 31 Disclosure that this Court already excluded. Accordingly, Feinstein's opinion seeking to reintroduce the January 31 Disclosure is not relevant in support of classwide claims.

Plaintiff additionally argues that the fact that the January 31 Disclosure post-dates the class period does not preclude its use to establish loss causation. But Plaintiff does not meaningfully

---

[2]   Indeed, since *Flowserve* was decided, the U.S. Supreme Court has clarified that plaintiffs are not required to prove loss causation at the class certification stage—further limiting the import of *Flowserve. Erica P. John Fund, Inc.* v. *Halliburton Co.*, 563 U.S. 804, 812–13 (2011) ("The Court of Appeals erred by requiring [the plaintiff] to show loss causation as a condition of obtaining class certification."); *see also Halliburton Co.* v. *Erica P. John Fund, Inc.*, 573 U.S. 258, 283 (2014) ("Defendants may seek to defeat the *Basic* presumption at [class certification] through direct as well as indirect price impact evidence."). Plaintiff's other citations to *Bell* v. *Ascendant Sols., Inc.*, 422 F.3d 307, 312 (5th Cir. 2005) and *Unger* v. *Amedisys Inc.*, 401 F.3d 316, 323 (5th Cir. 2005) are similarly unavailing, as both hold merely that a court must make factual findings in adjudicating class certification even where issues overlap with merits issues.

3

dispute that a post-class period disclosure can be corrective only where partial corrective disclosures during the class period began to reveal the alleged fraud. Opp. 15–16 & n.12. To fit this rubric, Plaintiff now says that the truth about the RMDG impairment began to leak in the October 28 Disclosure. *Id.* But that is not Feinstein's theory: he plainly stated the opposite. Defs.' App. 218 at 89:9–14 ("Q. To your understanding, is the October 28, 2016 disclosure by Exxon a corrective disclosure of . . . the Rocky Mountain Dry Gas impairment issue? A. No, it is not."). Plaintiff cannot support Feinstein's opinion with a leakage theory that Feinstein himself rejects.

### B.    Feinstein Fails to Conduct a Causation Analysis of the Impairment Theory

In their moving brief, Defendants showed that Feinstein's opinion should be excluded because he assumes—without analysis or methodology—that the year-end *2016* impairment disclosure is corrective of the earlier-disclosed year-end *2015* impairment analysis. Br. 10–11.[3] In Opposition, Plaintiff does not respond, thus conceding that Feinstein has employed no causation methodology. This too warrants exclusion of Feinstein's RMDG impairment-related opinions.

### C.    Feinstein's Event Study Methodology Is Unreliable

Even if the January 31 Disclosure were considered, Feinstein's event study methodology is unreliable. Plaintiff does not dispute that Feinstein designed his event study knowing that Plaintiff's class certification expert, Torchio, had previously identified no statistically significant price movement from the January 31 Disclosure. And although Plaintiff argues, as a general matter, that there is nothing inherently wrong with Feinstein's selection of a company's self-identified industry peers as the industry control index, Plaintiff does not dispute that *in this case* Feinstein's industry index results in a lower adjusted "R-squared" value than the index Torchio and Dr. Ferrell used, meaning that it is an inferior model. Opp. 16–18. It is therefore undisputed

---

[3]    "Br." refers to Defendants' moving Brief in Support of their Motion to Exclude the Testimony of Steven P. Feinstein (Dkt. 225). "MSJ Reply" refers to Defendants' concurrently filed Reply Brief in Support of Their Motion for Summary Judgment.

that Feinstein selected an inferior industry index for his event study, after already knowing that Torchio's index resulted in an unfavorable outcome.  This is not a reliable methodology.

Plaintiff also does not dispute that, measured on a close-to-open basis, even Feinstein's methodology shows no statistically significant price movement.  It instead argues that the use of a close-to-close event window is "customary." Opp. 18–19.  But this argument ignores the evidence presented to, and accepted by, this Court at class certification showing that the market for ExxonMobil securities is among the most efficient in the world.  Dkt. 176 at 123:24–124:6.  As Dr. Ferrell explained, a significant academic study showed that new information released after trading hours is incorporated into the price of ExxonMobil stock as of the open.  Dkt. 176 at 114:15–19, 121:17–122:2, 132:1.  Accordingly—as to ExxonMobil stock specifically—the Court found that "[i]f the use of a close-to-open window is ever appropriate, it would probably be for something like the alleged January 20, 2016, Corrective Disclosure—a short, easily digestible article issued hours before the market opened."  Dkt. 178 at 40.  And, contrary to Plaintiff's contention, the Court did not limit this holding to only the January 20, 2016 disclosure.  *See id.* The Court also specifically addressed the January 31 Disclosure, describing it as "the only earnings release alleged to be a Corrective Disclosure that is not associated with a statistically significant negative price reaction *on a close-to-open basis* or even a close-to-close basis."  Dkt. 178 at 52. (emphasis added).  Plaintiff is simply wrong that the Court did not address the close-to-open window for the January 31 Disclosure, and Plaintiff offers no basis to depart from that ruling now.

II.    **Feinstein's Opinions Cannot Reliably Show Loss Causation or Damages for Disclosures Relating to Kearl Proved Reserves**

A.    **Feinstein's Opinions Regarding Kearl Are Not Relevant Because They Are Premised on an Unpled Theory**

As explained in Defendants' opening brief, Feinstein's Kearl-related opinions are premised on the theory that the Kearl assets did not qualify as proved reserves as of year-end 2015—a theory

Plaintiff has not pleaded, and in fact, has specifically disclaimed. Br. 12. In Opposition, Plaintiff *concedes* that Feinstein assumed that Plaintiff would prevail on this fraud theory. Opp. 7, 10. Plaintiff thus cannot salvage any portion of Feinstein's Kearl-related opinion because he inextricably intertwines all Kearl-related fraud theories and identifies only one Kearl-related corrective disclosure. Pl.'s App. 62–64 at 62:7–64:16, 72–73 at 72:7–73:8.

Plaintiff offers three arguments in support of relevance, notwithstanding Feinstein's assumption that Plaintiff may pursue the unpled Kearl proved reserves theory. All fail:

*First*, Plaintiff points out that Feinstein's Kearl-related analysis *also* included a second fraud theory, namely, that Defendants misrepresented Kearl's profitability for year-end 2015. This hardly fixes the problem, since this theory was also unpled. The Complaint focused on whether disclosures of the *Canadian bitumen operation* violated ASC 275, and made no allegation that Defendants misrepresented the profitability of *Kearl* specifically. MSJ Reply at 8–9.

*Second*, Plaintiff contends that it is permitted to pursue its unpled theory because Defendants had notice of it prior to Plaintiff's summary judgment opposition. This argument fails for the reasons explained in Defendants' Summary Judgment Reply. MSJ Reply 18–19.

*Third*, in an attempt to revert to its original "tepid warning" theory, Plaintiff argues that the "tepid warning" was false because Kearl did not qualify as a proved reserve at year-end 2015. Again, this argument simply confirms that Plaintiff's "tepid warning" theory now rests entirely on the new, unpled theory that ExxonMobil's *2015* proved reserves disclosure was inaccurate. MSJ Reply 16–17. In any event, this is not the theory that Feinstein analyzed—in fact, nowhere in his report does he address the so-called "tepid warning" that was the basis for Plaintiff's pleaded claim.

Because Feinstein analyzed unpled Kearl theories, his Kearl-related opinions are irrelevant.

6

**B.      Feinstein Fails to Conduct a Causation Analysis of Plaintiff's Kearl Theory**

Defendants showed in their opening brief that Feinstein's Kearl-related opinions should be excluded because he assumes, without applying any actual methodology, that the October 28 Disclosure about *2016* proved reserves corrected an earlier disclosure about *2015* proved reserves. Br. 13–15.  In response, Plaintiff repeatedly says that Feinstein conducted an event study that applied a regression analysis. Opp. 5–7, 10–13.  But that is exactly the problem:  Feinstein's event study merely ascertained *whether* there was a statistically significant stock price movement; it did not explain *why* that movement occurred (i.e., what *caused* the decline)—much less establish a causal relationship between reported 2015 proved reserves and a 2016 "corrective" disclosure.

In Opposition, Plaintiff is unable to identify any methodology actually applied by Feinstein to support his untested assumption that the alleged misstatements actually ***caused*** the October 28 decline.  Plaintiff says only that Feinstein offered "evidence" in the form of "(1) application of fundamental financial principles; (2) examination of public statements by Exxon and market participants; and (3) empirical analysis employing the widely accepted event study methodology." Opp. 11–12.  It is telling that Plaintiff cannot explain with any detail any actual analysis or methodology that addresses ***causation*** specifically—because Feinstein performed none.  That makes this case like *In re Zonagen, Inc. Sec. Litig.*, 322 F. Supp. 2d 764 (S.D. Tex. 2003) and *In re Oracle Corp. Sec. Litig.*, 2009 WL 1709050 (N.D. Cal. June 19, 2009), which Plaintiff tries unsuccessfully to distinguish.  Plaintiff relies on the out-of-circuit decision in *In re Twitter, Inc. Securities Litigation*, but the court there found, without elaboration, that Feinstein's causation analysis was supported by "*t*-Tests, F-Tests, and Ansari-Bradley tests." 2020 WL 13863616, at *9 (N.D. Cal. Jan. 28, 2020).  Here, Plaintiff does not explain how ***any*** methodology that Feinstein employed could reliably have measured causation, much less that alleged corrective information about *2016* proved reserves is causally related to disclosures about *2015* proved reserves.

7

### III. Feinstein Fails to Reliably Disaggregate Confounding Information for Either Alleged Corrective Disclosure Date

As Defendants showed in their moving brief, Feinstein's disaggregation analysis for both the October 28 Disclosure and the January 31 Disclosure is *ipse dixit* and unsupported by any reliable methodology. Br. 16–20. Binding Fifth Circuit precedent, *Oscar Priv. Equity Invest.* v. *Allegiance Telecom, Inc*, specifically proscribes what Feinstein has done here: reading market commentary and concluding, without applying any actual methodology, that the commentary supports his opinion that confounding information was not responsible for stock declines. 487 F.3d 261, 271 (5th Cir. 2007). Plaintiff makes a cursory attempt to distinguish *Oscar* by arguing that, unlike the expert in that case, Feinstein conducted "a thorough empirical analysis, based on widely accepted methodologies." Opp. 21 n.20. But tellingly, Plaintiff cannot explain what Feinstein did to disaggregate confounding information or why his approach is reliable. It is plainly insufficient to say that Feinstein's decision not to disaggregate confounding factors is based on his "expertise and specialized knowledge of fundamental financial principles," or that he conducted a "comprehensive analysis"—without actual details of that purported methodology. *See* Opp. 20.

Plaintiff's inability to explain Feinstein's methodology is hardly surprising, because he used none. Plaintiff does not refute that Feinstein cherry-picked the analyst reports that he credited in reaching his conclusion that there was minimal or no negative confounding information disclosed on each of the alleged corrective disclosure dates. Nor does Plaintiff attempt to defend Feinstein's decision to conclude, based on only one quarter of analyst estimates, that the impact of confounding information was non-recurring. Br. 16–20.

Ultimately, Plaintiff resorts to arguing that Feinstein's undisputed failure to disaggregate confounding information goes to the weight of his opinions, not exclusion. Opp. 20–21. Plaintiff is incorrect. The failure of Plaintiff's expert to disaggregate confounding information is fatal under

8

*Oscar*, which makes clear that an expert cannot simply read analyst commentaries and opine that they support his opinion. 487 F.3d at 271. Failure to disaggregate requires summary judgment in favor of Defendants. *See Bricklayers & Trowel Trades Int'l Pension Fund* v. *Credit Suisse Sec. (USA) LLC*, 752 F.3d 82, 95 (1st Cir. 2014) (excluding opinions where expert "made a judgment call as to confounding information without any methodological underpinning"); *In re Sci. Atlanta, Inc. Sec. Litig.*, 754 F. Supp. 2d 1339, 1371–76 (N.D. Ga. 2010) ("[T]o defeat summary judgment, plaintiffs in a securities fraud case must present evidence disaggregating the fraud and non-fraud-related causes of the plaintiff's loss."). Notably, Plaintiff cites out-of-circuit cases for the proposition that disaggregation goes to weight rather than admissibility. *See Smilovits* v. *First Solar, Inc.*, 2019 WL 7282026 (D. Ariz. Dec. 27, 2019); *In re Groupon, Inc. Sec. Litig.*, 2015 WL 1043321 (N.D. Ill. Mar. 5, 2015); *Twitter*, 2020 WL 13863616.[4]

## IV. Feinstein's Opinions Regarding the Purported Cost of a Credit Rating Downgrade Are Irrelevant and Unreliable

Defendants showed that Feinstein's opinions regarding the purported additional interest expense of a credit rating downgrade are both unreliable and irrelevant. Br. 20–23. In response, Plaintiff fails to rebut the significant flaws in Feinstein's analysis that Defendants identified.

*First*, Plaintiff admits that Feinstein applies linear interpolation to estimate the interest rates for AA+ rated bonds (i.e., he assumes that the interest rate for AA+ bonds lies at the midpoint of AAA- and AA-rated bonds). Opp. 22. But, as Defendants' expert Saunders explains, corporate bond yields are not linear, and *none of* the sources on which Feinstein relies endorses the use of linear interpolation for corporate bonds. Br. 21. While Plaintiff contends that Feinstein's approach

---

[4] The two in-Circuit cases Plaintiff cites are also inapposite. In *Buettgen* v. *Harless*, Feinstein "provide[d] sufficient analysis and explanation as to why significant portions of the decline in Idearc's share price following corrective disclosures … were related to the disclosures." 2011 WL 1938130, at *8 (N.D. Tex. May 19, 2011). Feinstein provides no such analysis here. And *Puga* v. *RCX Sols., Inc.*, is not a securities case and has nothing whatsoever to do with loss causation or disaggregation. 922 F.3d 285, 295–96 (5th Cir. 2019).

is "supported by references to academic literature and industry practices," Opp. 24, Plaintiff does not—and cannot—refute Feinstein's sources do not address corporate bonds of the type ExxonMobil issued. Plaintiff also points to a textbook Saunders cites in his report, but as Saunders explained at his deposition, that analysis "control[led] for the maturity of the bonds and the . . . nonlinear[ity of the] yield curves" and then calculated an average yield between the two non-linear curves. Pl.'s App. 503–04 at 191:2–192:14. That is not the analysis Feinstein performed. Because Plaintiff cannot rebut this critique, Plaintiff seeks to minimize it by characterizing Defendants' criticism as "hairsplitting." Opp. 24 n.21. But this is not "hairsplitting" because Plaintiff's entire interest calculation of hundreds of millions of dollars hinges on this linear interpolation issue, and even Feinstein admits that using nonlinear interpolation provides "greater precision"—yet he did not undertake that analysis here. Br. 21; Opp. 24 n.21.

*Second*, Plaintiff concedes that Feinstein's additional interest expense calculation does not account for the time/value of money and instead adds the alleged additional interest over a 30-year period as if all of it were due on day one. Br. 22; Opp. 21–23. The resulting figure is an inaccurate reflection of the present-day value of the purported additional income expense that defies the fundamental principle of finance that a dollar today is worth more than a future dollar. Br. 22. Plaintiff offers no explanation for ignoring this fundamental principle, which plainly renders Feinstein's methodology unreliable and unfit for presentation to a jury.

Finally, because Plaintiff's motive theory (to which the additional interest expense is purportedly relevant) is pure speculation, this evidence is irrelevant. *See* MSJ Reply at 12–14 (addressing lack of evidence of pleaded motive theory).

## CONCLUSION

For the foregoing reasons and those set forth in Defendants' moving brief, Defendants respectfully request that the Court grant their Motion in its entirety.

10

Dated:  March 28, 2025

Respectfully submitted,


/s/ Daniel J. Toal

Theodore V. Wells, Jr. (*pro hac vice*)
Daniel J. Kramer (*pro hac vice*)
Daniel J. Toal (*pro hac vice*)
Audra J. Soloway (*pro hac vice*)
Paul Brachman (*pro hac vice*)
Matthew D. Stachel (*pro hac vice*)
Samuel Kleiner (*pro hac vice*)
Lyuba Shamailova (*pro hac vice*)
PAUL, WEISS, RIFKIND,
   WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY  10019-6064
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
twells@paulweiss.com
dkramer@paulweiss.com
dtoal@paulweiss.com
asoloway@paulweiss.com
pbrachman@paulweiss.com
mstachel@paulweiss.com
skleiner@paulweiss.com
lshamailova@paulweiss.com


/s/ Jason Bloom

Nina Cortell
Texas State Bar No. 04844500
Jason Bloom
Texas State Bar No. 24045511
HAYNES AND BOONE, LLP
2323 Victory Avenue, Suite 700
Dallas, TX 75219
Telephone: (214) 651-5000
Facsimile: (214) 651-5940
nina.cortell@haynesboone.com
jason.bloom@haynesboone.com

*Counsel for Exxon Mobil Corporation,*
*Andrew P. Swiger, and David S. Rosenthal*

/s/ D. Patrick Long

D. Patrick Long
Texas State Bar No. 12515500
SQUIRE PATTON BOGGS
2000 McKinney Ave., Suite 1700
Dallas, TX 75201
Telephone: (214) 758-1505
Facsimile: (214) 758-1550
patrick.long@squirepb.com

*Counsel for Rex W. Tillerson*

11

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been served by electronic CM/ECF filing, on this twenty-eighth day of March, 2025.

/s/ Daniel J. Toal
Daniel J. Toal

12