IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

|  |  |
|---|---|
| PEDRO RAMIREZ, JR., Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> EXXON MOBIL CORPORATION, REX W. TILLERSON, ANDREW P. SWIGER, and DAVID S. ROSENTHAL, <br><br> Defendants. | Case No. 3:16-cv-03111-K <br><br><br> CLASS ACTION |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO EXCLUDE CERTAIN TESTIMONY OF PLAINTIFF'S PROFFERED EXPERT D. PAUL REGAN**

**TABLE OF CONTENTS**

Page

ARGUMENT ......................................................................................................................... 1

I.    Regan's Kearl Reserves Opinion Is Irrelevant .......................................................... 1

      A.    Regan's Kearl Reserves Opinion Is Irrelevant to Plaintiff's Pleaded Theory ................. 1

      B.    Regan's Kearl Reserves Opinion Is Irrelevant Because He Does Not Apply the
            Applicable Regulatory Framework ...................................................................... 3

II.   Regan's Item 303 Opinion On a Dismissed Claim Is an Irrelevant Legal Conclusion ........... 5

III.  Regan Admits It Was Permissible for ExxonMobil to Use Its Internal Price Projections So
      His RMDG Impairment Opinion Fails to Reliably Apply GAAP ......................................... 9

CONCLUSION ....................................................................................................................... 10

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Carvelli* v. *Ocwen Fin. Corp.*,
    934 F.3d 1307 (11th Cir. 2019) ..................................................................................6

*SEC* v. *Conaway*,
    2007 WL 1583546 (E.D. Mich. June 5, 2009)...........................................................7

*In re Daou Sys., Inc., Sec. Litig.*,
    2008 WL 11508932 (S.D. Cal. May 13, 2008)...........................................................8

*Daubert* v. *Merrell Dow Pharm., Inc.*,
    509 U.S. 579 (1993)....................................................................................................2

*Davis* v. *Cisneros*,
    2024 WL 3799461 (W.D. Tex. Aug. 12, 2024)....................................................9, 10

*In re: DePuy Orthopaedics, Inc.*,
    2016 WL 6271474 (N.D. Tex. Jan. 5, 2016) ..............................................................8

*In re: DePuy Orthopaedics, Inc. Pinnacle Hip Implant Products*,
    2014 WL 12576294 (N.D. Tex. Sept. 16, 2014)........................................................5

*Gansman* v. *Tanenbaum*,
    2024 WL 694111 (N.D. Cal. Feb. 20, 2024) ..............................................................6

*Goode* v. *City of Southaven*,
    2019 WL 1089510 (N.D. Miss. Mar. 7, 2019) ...........................................................2

*United States* v. *Hatfield*,
    2010 WL 1948236 (E.D.N.Y. May 12, 2010) .........................................................6, 8

*Leonard* v. *Nationwide Mut. Ins. Co.*,
    499 F.3d 419 (5th Cir. 2007) ......................................................................................6

*United States* v. *Martoma*,
    993 F. Supp. 2d 452 (S.D.N.Y. 2014).........................................................................8

*In re NVIDIA Corp. Sec. Litig.*,
    768 F.3d 1046 (9th Cir. 2014) ....................................................................................6

*In re REMEC Inc. Sec. Litig.*,
    702 F. Supp. 2d 1202 (S.D. Cal. 2010)..............................................................5, 9, 10

CASES  Page(s)

*Renfroe* v. *Parker*,
974 F.3d 594 (5th Cir. 2020) ................................................................................6

*Smilovits* v. *First Solar, Inc.*,
2019 WL 6875492 (D. Ariz. Dec. 17, 2019) ........................................................7

*SEC* v. *Stansbury Holdings Corp.*,
2007 WL 1970531 (D. Colo. June 29, 2007)........................................................8

*SEC* v. *Todd*,
2006 WL 5201386, *3 (S.D. Cal. Oct. 17, 2006) ..................................................7

*Truck Ins. Exch.* v. *MagneTek, Inc.*,
360 F.3d 1206 (10th Cir. 2004) ............................................................................9

*In re Twitter, Inc. Sec. Litig.*,
2020 WL 9073168 (N.D. Cal. Apr. 20, 2020) .......................................................7

*In re Under Armour Sec. Litig.*,
730 F. Supp. 3d 172 (D. Md. 2024)......................................................................7

Plaintiff argues in its Opposition[1] that the opinions of its accounting expert, Regan, are admissible because they are "based upon his 50 years of experience in the accounting field" and will "help the jury understand unfamiliar accounting concepts." Opp. at 1–2. That is beside the point. No expert, regardless of his experience, may offer irrelevant opinions that do not fit the plaintiff's theory of liability. No amount of experience in the accounting field qualifies Regan to offer a legal opinion. And accounting opinions, like Regan's, that do not apply the "relevant accounting standards and literature," Opp. at 2, are not admissible because they are neither relevant nor reliable. Regan's opinions should be excluded for those reasons.

## ARGUMENT

### I.    Regan's Kearl Reserves Opinion Is Irrelevant

Regan was asked to opine on whether ASC 932-10-S99 required ExxonMobil to de-book its Kearl proved reserves at year-end **2015**. Opp. at 5; App. 7. Defendants' Motion showed that Regan's answer to that question is irrelevant and should be excluded because (1) Plaintiff has not pleaded that Defendants misled investors by failing to de-book Kearl's proved reserves at year-end 2015, and (2) Regan did not actually interpret or apply ASC 932-10-S99 in reaching his conclusions. Mot. at 4–8. Plaintiff's Opposition does not show otherwise.

### A.    Regan's Kearl Reserves Opinion Is Irrelevant to Plaintiff's Pleaded Theory

Plaintiff's attempt to show that Regan's opinion relates to a theory of liability pleaded in the complaint, Opp. at 7, does not withstand scrutiny. Plaintiff's theory throughout this case has been that Defendants misled investors by giving a "tepid warning" in February 2016 that Kearl proved reserves might have to be de-booked at year-end 2016 because de-booking allegedly was

---

[1] Defendants refer to the motion to exclude certain testimony of Plaintiff's proffered expert, D. Paul Regan, as the "Motion" or "Mot.," Dkt. No. 228; to Plaintiff's opposition to the Motion as the "Opposition" or "Opp.," Dkt. No. 246; and to Defendants' reply in support of their motion for summary judgment as the "MSJ Reply." Abbreviated and capitalized terms have the same meaning as in the Motion.

all but certain by that time.  That is what Plaintiff pleaded in the complaint, Dkt. No. 36 ¶¶ 22, 231, 310, 347–48, and that is the theory the Court accepted at class certification, Dkt. No. 178 at 9.  Whether ExxonMobil was required to de-book its Kearl proved reserves at year-end *2015* (the question Regan was asked) has no bearing on that issue.  Because Regan's opinion does not fit Plaintiff's theory of liability, it is irrelevant and must be excluded.  *Daubert* v. *Merrell Dow Pharm., Inc.*, 509 U.S. 579, 591 (1993) ("Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." (internal quotation marks omitted)).

Plaintiff argues that Regan's opinion is relevant because Plaintiff supposedly alleged that ExxonMobil's 2015 reserves disclosure was misleading as a result of "Defendants' failure to disclose that, ***at the time***, the Canadian Bitumen Operations were operating at a loss."  Opp. at 7.[2] But Plaintiff admits that whether Kearl's reserves qualified as proved depends on the application of a "formula prescribed by the SEC," Opp. at 5–6, not whether ExxonMobil's operations were "operating at a loss."  And the complaint nowhere alleges that ExxonMobil's 2015 disclosure was misleading because Kearl's reserves did not qualify as proved under the SEC formula.  To the contrary, Plaintiff has expressly and unequivocally disclaimed that allegation:  "***Plaintiff does not allege that Exxon 'should have de-booked its proved reserves at Kearl as of year-end 2015.***"[3]

Plaintiff alternatively argues that Regan's opinion is relevant to its pleaded theory about *2016* reserves because his analysis shows that "it ***was*** certain in February 2016 that the Kearl reserves would have to be de-booked" at year-end 2016.  Opp. at 7.  That is flat wrong.  Regan acknowledges that the SEC formula explicitly requires estimations to be based on "the average

---

[2] Plaintiff cites *Goode* v. *City of Southaven*, 2019 WL 1089510 (N.D. Miss. Mar. 7, 2019), for the proposition that expert evidence is relevant if it relates to a theory on which the complaint provides "fair notice."  Opp. at 7.  Plaintiff's complaint does not provide such notice.  As discussed above, Plaintiff never alleged that ExxonMobil should have de-booked its Kearl assets in 2015 and expressly disclaimed that it was pursuing that theory.
[3] Dkt. No. 232 at 37 (emphasis added); MSJ Reply at 18.

2

price during the 12-month period prior to the ending date of the period covered by the report." App. 38. Kearl's 2015 data was thus irrelevant to whether it was "virtually certain" in February 2016 that Kearl reserves would not qualify as proved *at year-end 2016*, as Plaintiff alleges.[4]

> **B.  Regan's Kearl Reserves Opinion Is Irrelevant Because He Does Not Apply the Applicable Regulatory Framework**

Regan's opinion is irrelevant even to Plaintiff's unpled reserves theory because Regan repeatedly admitted that he did not assess whether ASC 932-10-S99 required ExxonMobil to de-book its Kearl proved reserves at year-end 2015. Mot. at 5–8. As the Motion explains, Regan calculates an "adjusted" SEC price for 2015 by purportedly applying the methodology ExxonMobil used in 2016 to 2015 data. App. 44–45 ¶¶ 89–90. Plaintiff argues this approach is valid because Regan "applied his accounting expertise to the relevant SEC rules and accounting standards and the evidence and ***opined*** that Exxon's 2016 calculations were proper and its 2015 calculations were improper." Opp. at 8. But that explanation appears nowhere in Regan's reports. Regan opined that the 2016 methodology "corrected for significant flaws in the . . . previous . . . methodology," but did not opine that those so-called "corrections" were required by ASC 932-10-S99.[5] App. 44, 51 ¶¶ 89, 102. And Regan disclaimed any such opinion during his deposition. Specifically, Regan admitted that he assumed the 2016 calculations reflected an "appropriate operationalization of the SEC pricing rules," App. 379 at 113:3–5, without "d[i]g[ging] into how Exxon interpreted the various complexities of the SEC pricing." App. 379 at 111:18–23. Regan thus merely *assumed* that ExxonMobil's 2016 calculation was correct under the SEC rules, and then applied the same approach retrospectively to 2015 data. That is not the same as *opining* that

---

[4] And, in February 2016, Defendants had at most two of the requisite twelve data points for 2016; thus, it was virtually unknowable at that point whether Kearl reserves would qualify as proved reserves at year-end 2016.

[5] ExxonMobil did not refer to the change as a "correction"; the differences between the 2016 and 2015 calculations were meant to account for Kearl's evolving market dynamics. *See* Mot. at 6.

3

ExxonMobil calculated the SEC price correctly in 2016 and incorrectly in 2015, as Plaintiff now argues.

Plaintiff tries to dismiss Regan's admissions as relating solely to how ExxonMobil determined the "actual costs" used in determining the SEC price—something Plaintiff claims "Regan was not required to calculate himself." Opp. at 10 n.4. But that is self-defeating. The determination of the "actual costs" to be used in calculating the SEC price was a function of ExxonMobil's interpretation of ASC 932-10-S99, as applied to the facts and circumstances in each year. For example, Regan acknowledges in his expert report that ExxonMobil was required to calculate the SEC price—incorporating associated costs of sale—"at the terminal point of oil and gas producing activities." App. 38; App. 481 (ASC 932-10-S99 (citing 17 C.F.R. § 210.4-10(a)(10))). But Regan expresses no opinion on Kearl's "terminal point" in 2015 (or 2016), and did not consider that issue in calculating his "adjusted" 2015 SEC price. App. 373, 384 at 76:18–77:20; 135:11–25.

Plaintiff calls these important methodological details "a red herring," Opp. at 9, but they are anything but. Given the ongoing changes in Kearl's production and sales during 2015 and into 2016, Regan was required to analyze and opine as to whether ASC 932-10-S99 required ExxonMobil to include all the same costs of sale in 2015 that it included in 2016—in other words, to "dig into" how the SEC rules should be interpreted and applied. Regan admits he did none of this, and Plaintiff does not suggest otherwise. Regan's assumption that ExxonMobil correctly "operationalized" ASC 932-10-S99 in 2016 does not answer whether ExxonMobil incorrectly "operationalized" the same rule in 2015—the very question Regan was asked to analyze.[6]

---

[6] Plaintiff's citations to testimony from Defendants' expert, Abington, Opp. at 10–11 & nn.5–6, cannot fill the gaps in Regan's report. Abington's testimony about what costs of sale ExxonMobil should or should not have included in calculating the SEC price based on hypothetical questions about Kearl's sales is not a substitute for analysis by Regan of what ASC 932-10-S99 actually required based on the facts and circumstances as they existed in 2015.

Because Regan's entire opinion is based on *assumption* rather than *analysis*, Plaintiff's cited cases miss the mark.  In *In re REMEC Inc. Sec. Litig.*, 702 F. Supp. 2d 1202 (S.D. Cal. 2010), for example, the court denied a motion to exclude an opinion from Regan because he "explain[ed] precisely why he believes REMEC used inappropriate assumptions and then support[ed] his reasons for selecting alternative inputs."  *Id*. at 1220.  Here, by contrast, the sum total of Regan's explanation is that ExxonMobil's calculation of the SEC price in 2015 did not include certain costs of sale that were included in 2016.  Unlike in *REMEC*, Regan does not "explain precisely" why the 2015 calculation was "inappropriate" under ASC 932-10-S99.[7]

This Court's decision in *In re: DePuy Orthopaedics, Inc. Pinnacle Hip Implant Products*, 2014 WL 12576294 (N.D. Tex. Sept. 16, 2014), Opp. at 10, supports, rather than rebuts, Defendants' argument.  In that case, the expert used an older testing model for measuring joint wear that had been replaced by a newer model.  *Id.* at *4.  The Court denied the motion to exclude because the expert opined that the older model was "more predictive of the actual wear" than the newer model.  *Id.*  Regan, by contrast, *assumes* that ExxonMobil's 2016 calculation should have been used in 2015 without opining that ASC 932-10-S99 required that result.

## II.      Regan's Item 303 Opinion On a Dismissed Claim Is an Irrelevant Legal Conclusion

Plaintiff acknowledges that "there is no claim for a violation of Item 303 currently in the case," Opp. at 15 n.9, but argues that Regan should nevertheless be permitted to offer the opinion that Defendants violated Item 303.  That makes no sense.  As Defendants explained in their Motion, Regan should not be allowed to offer an opinion on a dismissed claim, Mot. at 9–10, and should not be permitted to offer a legal opinion regarding compliance with Item 303.  *Id.* at 8–9.

---

[7] Indeed, the *REMEC* court excluded a portion of a second accounting expert's opinion as conclusory because the expert did not analyze how the relevant accounting rule applied to the facts of the case.  702 F. Supp. 2d  at 1219. Regan likewise fails to analyze how ASC 932-10-S99 applies to the facts as they existed in *2015*, and his assumption that ExxonMobil's "operationalization" of the rule in *2016* should govern is conclusory and irrelevant.

Plaintiff argues Regan's opinion is somehow relevant because the Court, despite dismissing the Item 303 claim, allowed Plaintiff to go forward on a theory that Defendants violated GAAP by failing to disclose three months of unprofitability at ExxonMobil's Canadian bitumen operations. Dkt. No. 62 at 24–25. But to support that theory of liability, Plaintiff would have needed to ask Regan to analyze whether ExxonMobil's disclosure violated *GAAP*. Plaintiff could have done so but did not. Indeed, Plaintiff acknowledges that "Defendants' . . . expert opines on whether Exxon's disclosures complied with ASC 275 – a GAAP provision **similar to Item 303**." Opp. at 15 (emphasis added). That just confirms Plaintiff asked Regan to analyze the wrong standard (on which the Court granted Defendants' motion to dismiss). Plaintiff also argues Regan's opinion is relevant because a violation of Item 303 could help prove its "remaining claims." Opp. at 15. But none of the cases Plaintiff cites holds that an expert opinion on a *dismissed* theory of liability should be admitted because the expert's opinion might shed light on a remaining claim.[8]

Plaintiff next argues that Regan's Item 303 opinion must not be an impermissible legal opinion because the Item 303 claim has been dismissed. But an expert opinion need not rise to the level of "tell[ing] the jury what result to reach," Opp. at 15 n.9 (internal quotation marks and citations omitted), to be an impermissible legal opinion. *See Renfroe* v. *Parker*, 974 F.3d 594, 598 (5th Cir. 2020) ("Experts cannot 'render conclusions of law' or provide opinions on legal issues."); *see also Leonard* v. *Nationwide Mut. Ins. Co.*, 499 F.3d 419, 428 (5th Cir. 2007) ("The interpretation of an insurance policy, like any contract, is a legal question . . . ."). An opinion that

---

[8] Neither *Carvelli* v. *Ocwen Fin. Corp.*, 934 F.3d 1307 (11th Cir. 2019), nor *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046 (9th Cir. 2014), involved a motion to exclude an expert's testimony. And neither *United States* v. *Hatfield* nor *Gansman* v. *Tanenbaum* admitted an expert's opinion on a dismissed claim on the basis that it was relevant to plaintiff's remaining claims. *See Hatfield*, 2010 WL 1948236, at *2 (E.D.N.Y. May 12, 2010) (generally noting that "compliance with applicable accounting standards may negate . . . intent to deceive"); *Gansman*, 2024 WL 694111, at *1 (N.D. Cal. Feb. 20, 2024) (allowing Regan to opine on GAAP because it was relevant to a finding of insolvency).

6

ExxonMobil omitted from its MD&A information that is "material" under Item 303 is an improper legal opinion that ExxonMobil violated SEC Regulation S-K, Item 303.  Mot. at 8–9.  And as Defendants explained in their Motion, courts routinely exclude opinions that a company has violated the securities laws.  *Id.* at 9 (citing cases).

Plaintiff dismisses Defendants' authorities as "inapposite," Opp. at 14 n.8, but Plaintiff's own brief shows they are not.  As Plaintiff concedes, each cited case involved an impermissible expert opinion about whether conduct violated a securities law or regulation.  *Id.*  Regan's opinion that ExxonMobil's disclosures "did not comply with financial reporting disclosure requirements established under SEC Item 303" is no different.  App. 8.  And while Plaintiff quibbles over the circumstances, Opp. at 14, it does not dispute that Regan's Item 303 opinions have been withdrawn or excluded in other cases.  *See In re Under Armour Sec. Litig.*, 730 F. Supp. 3d 172, 180 (D. Md. 2024) ("Plaintiffs confirmed Regan's Item 303 . . . opinions . . . will be excluded."); *Smilovits* v. *First Solar, Inc.*, 2019 WL 6875492, at *9 (D. Ariz. Dec. 17, 2019) (granting motion to "preclude Regan from testifying at trial about SEC disclosure rules and MD&A").

Plaintiff's discussion of an out-of-circuit case, *SEC* v. *Conaway*, wherein a court declined to exclude an expert's opinion on compliance with Item 303, is not instructive because the defendant's motion to exclude did not challenge the expert's opinion as an impermissible legal conclusion.  *See* 2007 WL 1583546 (E.D. Mich. June 5, 2009); Mot. to Exclude, *SEC* v. *Conaway*, No. 05-cv-40263 (E.D. Mich.), ECF No. 97.[9]  And other out-of-circuit cases have clearly held that an expert's opinion that Item 303 requires disclosure of certain information in a defendant company's MD&A is "an impermissible legal conclusion."  *See, e.g.*, *In re Twitter, Inc. Sec. Litig.*,

---

[9] Plaintiff's reliance on *SEC* v. *Todd* is misplaced because the expert there opined on whether a company violated Staff Accounting Bulletin 99's guidance which FASB incorporated as a GAAP standard, rather than Item 303's requirements generally as Regan does.  2006 WL 5201386, *3 (S.D. Cal. Oct. 17, 2006).

2020 WL 9073168, *8–9 (N.D. Cal. Apr. 20, 2020).  In *Twitter*, for example, defendants sought to exclude plaintiffs' expert's testimony, which concerned the defendant company's omission of a certain metric from its MD&A.  *Id.* at *8.  The court granted defendants' motion, ruling that an expert opinion regarding "whether *any SEC rule or regulation* requires the disclosure of any metric at issue in this case . . . would amount to an impermissible legal conclusion."  *Id.* at *9 (emphasis added).  The same is true here.

Plaintiff alternatively argues that Regan's legal opinion about compliance with Item 303 is really a permissible accounting opinion in disguise because "materiality is an accounting concept." Opp. at 13.  But none of the cases Plaintiff cites involved a motion to exclude an expert's opinion regarding materiality *under Item 303*.  *See SEC* v. *Stansbury Holdings Corp.*, 2007 WL 1970531, at *3 (D. Colo. June 29, 2007) (holding that expert's proposed testimony was admissible because the "discussion of materiality [was] made in relation to GAAP and . . . GAAS," and did "not mirror a materiality analysis under the securities laws"); *United States* v. *Hatfield*, 2010 WL 1948236, *1 (E.D.N.Y. May 12, 2010) (similar); *United States* v. *Martoma*, 993 F. Supp. 2d 452, 457–59 (S.D.N.Y. 2014) (discussing "expert testimony concerning materiality" generally but not involving an expert opinion based on Item 303 and ultimately excluding such testimony); *In re Daou Sys., Inc., Sec. Litig.*, 2008 WL 11508932, *3  (S.D. Cal. May 13, 2008) (approving settlement and noting that "a trial . . . would hinge on accounting expert opinions regarding proper accounting methods and [separately] the materiality of the alleged misreporting of revenues"); *In re: DePuy Orthopaedics, Inc.*, 2016 WL 6271474, *6–8 (N.D. Tex. Jan. 5, 2016) (Kinkeade, J.) (holding that expert's proposed testimony regarding "corporate duties and responsibilities [regarding] safe testing and sale of products as well as corporate awareness, compliance and communication of public health and safety issues related to their products" did not constitute legal conclusions).

**III.    Regan Admits It Was Permissible for ExxonMobil to Use Its Internal Price Projections So His RMDG Impairment Opinion Fails to Reliably Apply GAAP**

Regan's opinion regarding ExxonMobil's impairment analysis of its RMDG assets should be excluded because Regan failed to reliably apply the governing GAAP standard, ASC 360. *See* Mot. at 10–12. Regan opined that ExxonMobil should have conducted its recoverability analysis using price projections other than those the company developed for evaluating investment opportunities. That opinion does not reliably apply GAAP, which required ExxonMobil to use "assumptions . . . reasonable in relation to the assumptions used in developing other information used by the entity for comparable periods, such as ***internal budgets and projections***." App. 500 (emphasis added). And Regan himself acknowledged it was "permissible under the rules" for ExxonMobil to use its internal price projections. App. 396 at 252:22–253:19.

Plaintiff tries to recast Regan's failure to apply GAAP as a debate over the correctness of his opinion. Opp. at 17. Regan's conclusion *is* incorrect (because he admits ExxonMobil's analysis was permissible under GAAP, App. 252:22–253:19) but that is not the basis of Defendants' Motion. Regan's opinion is unreliable because he purports to opine on ExxonMobil's compliance with GAAP but ignores what GAAP requires. Mot. at 10–12. Where an expert "does not follow the standards he states he is applying," the expert's methodology is unreliable and should be excluded. *Davis* v. *Cisneros*, 2024 WL 3799461, at *9 (W.D. Tex. Aug. 12, 2024); *see also Truck Ins. Exch.* v. *MagneTek, Inc.*, 360 F.3d 1206, 1213 (10th Cir. 2004) (excluding opinion that "did not meet the standards" the expert claimed "he adhered to").

*In re REMEC Inc. Sec. Litig.*, Opp. at 17, does not dictate otherwise. There, the court declined to exclude Regan's opinion that the defendant used "inappropriate assumptions" for its impairment analyses. 702 F. Supp. 2d at 1220. But the court did not discuss whether, as here, the defendant used internal projections of the sort required by ASC 360, and Regan did not opine that

9

the defendant's use of those assumptions was "permissible under the rules." App. 396 at 252:22–253:19. To the contrary, the *REMEC* plaintiffs asserted that the defendant "***falsely*** assured the market it used assumptions that were 'consistent with the plans and estimates that we use to manage the underlying business.'" 702 F. Supp. 2d at 1215 (emphasis added). Here, Plaintiff does not dispute that ExxonMobil used the same projections to analyze the RMDG assets' potential impairment that it used to evaluate investment opportunities. Regan conceded at his deposition that he was not aware of any instance in which ExxonMobil failed to use its internal projections to evaluate investment opportunities. App. 393 at 236:9–19.

Plaintiff's attempt to reduce this issue to a "battle of the experts" also fails. The question is not, as Plaintiff suggests, whether Regan or Abington is correct, Opp. at 17–18, but rather—as Regan himself put it—whether ExxonMobil "appropriately complied with U.S. [GAAP]." App. 8–9. GAAP's ASC 360 required ExxonMobil to use assumptions reasonable in relation to those used in internal budgets and projections. App. 500. By substituting his own price projections for ExxonMobil's, Regan disregards GAAP's mandate. That fundamental methodological failure— ignoring the very standard Regan purports to apply—renders his opinion unreliable. *Cisneros*, 2024 WL 3799461, at *9. Regan's admission that he is not an expert in forecasting natural gas prices and never offered expert testimony forecasting such prices, *see* App. 390–91 at 224:12–226:14, only compounds the issue. That Regan has analyzed financial statements for oil and gas companies, Opp. at 19 (citing App. 12 ¶ 13), does not provide a basis for Regan to ignore what GAAP requires and substitute his non-expert opinion on future gas prices for the internal price projections that ExxonMobil developed—and used—in the ordinary course of its business.

## CONCLUSION

For the foregoing reasons and those identified in the Motion, this Court should grant this Motion and exclude Regan's opinions and proposed testimony.

10

Dated:  March 28, 2025

Respectfully submitted,

/s/ Daniel J. Toal
Theodore V. Wells, Jr. (*pro hac vice*)
Daniel J. Kramer (*pro hac vice*)
Daniel J. Toal (*pro hac vice*)
Audra J. Soloway (*pro hac vice*)
Paul Brachman (*pro hac vice*)
Matthew D. Stachel (*pro hac vice*)
Samuel Kleiner (*pro hac vice*)
Lyuba Shamailova (*pro hac vice*)
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY  10019-6064
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
twells@paulweiss.com
dkramer@paulweiss.com
dtoal@paulweiss.com
asoloway@paulweiss.com
pbrachman@paulweiss.com
mstachel@paulweiss.com
lshamailova@paulweiss.com

/s/ D. Patrick Long
D. Patrick Long
Texas State Bar No. 12515500
SQUIRE PATTON BOGGS
2000 McKinney Ave., Suite 1700
Dallas, TX 75201
Telephone: (214) 758-1505
Facsimile: (214) 758-1550
patrick.long@squirepb.com

*Counsel for Rex W. Tillerson*

/s/ Jason Bloom
Nina Cortell
Texas State Bar No. 04844500
Jason Bloom
Texas State Bar No. 24045511
HAYNES AND BOONE, LLP
2323 Victory Avenue, Suite 700
Dallas, TX 75219
Telephone: (214) 651-5000
Facsimile: (214) 651-5940
nina.cortell@haynesboone.com
jason.bloom@haynesboone.com

*Counsel for Exxon Mobil Corporation,*
*Andrew P. Swiger, and David S. Rosenthal*

11

12

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been

served by electronic CM/ECF filing, on this twenty-eighth day of March, 2025.

*/s/ Daniel J. Toal*
Daniel J. Toal